# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DANIEL WATKINS and JENNIFER SANCHEZ, On behalf of themselves and all others similarly situated, <br><br> PLAINTIFFS, <br><br> GATEWAY FIRST BANK, itself and as successor by merger to GATEWAY MORTGAGE GROUP, LLC <br><br> DEFENDANT. | Civil Action No. _____ <br><br> Jury Trial Demanded |

**PLAINTIFFS' ORIGINAL COMPLAINT - CLASS ACTION**

  Plaintiffs Daniel Watkins and Jennifer Sanchez, on behalf of themselves and all others similarly situated, file this their Original Complaint – Class Action against Defendant Gateway First Bank, itself and as successor by merger to Gateway Mortgage Group, LLC, and would show the Court as follows:

  1. Plaintiffs Daniel Watkins and Jennifer Sanchez, on behalf of themselves and all others similarly situated, allege violations of the Texas Debt Collection Act ("TDCA") and breaches of contract against Gateway First Bank, itself and as successor by merger to Gateway Mortgage Group, LLC ("Defendant" or "Gateway").

  2. Many borrowers in Texas struggle enough to make their regular mortgage payments without getting charged extra, illegal fees when they try to pay by phone or online ("Pay-to-Pay fees"). Federal and state debt collection laws strictly prohibit these charges unless expressly agreed

PLAINTIFFS' ORIGINAL COMPLAINT – CLASS ACTION    1

to by the borrower in the mortgage contract, but these Pay-to-Pay fees are found nowhere in any standard deed of trust. Here, Gateway charges borrowers between $3.50–$10.00 for making their mortgage payments online or over the phone. On information and belief, only a small fraction of the fee is paid to a third-party payment processor, and Gateway collects the remainder as profit.

3. Gateway services mortgages across the country and as such is aware that none of the standard loan agreements it services expressly allow Pay-to-Pay fees as a service fee that Gateway can charge.

4. Further, Plaintiff Sanchez's mortgage and those of the putative FHA Pay-to-Pay Class are guaranteed by the Federal Housing Administration ("FHA"). FHA rules and regulations, which are incorporated by reference into FHA-insured mortgages, prohibit FHA servicers, such as Gateway, from collecting any fee from the borrower that is not expressly allowed by the Department of Housing and Urban Development ("HUD"). HUD has not authorized the collection of Pay-to-Pay fees. And even for fees that are expressly allowed, FHA rules permit the mortgage servicer to pass along to the borrower only its out-of-pocket costs for providing the services.

5. Gateway's practice of charging, collecting, and profiting from Pay-to-Pay fees violates the TDCA and breaches the uniform provisions of FHA-insured mortgages.

I. PARTIES

6. Plaintiff Daniel Watkins is a citizen of the State of Texas.

7. Plaintiff Jennifer Sanchez is a citizen of the State of Texas.

8. Defendant Gateway First Bank is incorporated and has its principal place of business in the State of Oklahoma. On information and belief, based on public statements made by Defendant, Gateway Mortgage Group, LLC, which was also incorporated and had its principal

place of business in the State of Oklahoma, merged with Gateway First Bank in May 2019, and the successor entity is Gateway First Bank.

## II.     JURISDICTION AND VENUE

9. Gateway conducts business in the State of Texas, including servicing Plaintiffs' and other borrowers' mortgages, and its contacts in the State are sufficient such that this Court's exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice.

10. Venue is proper in this District because a substantial part of the acts or omissions giving rise to Plaintiffs' causes of action occurred in Dallas County, Texas, and Tom Green County, Texas.

11. As alleged above, minimal diversity exists between the parties in this action. Furthermore, on information and belief, the amount in controversy, exclusive of costs and interest, exceeds $5,000,000.00.

12. Gateway is one of the largest mortgage companies in the United States. The Classes in this lawsuit are believed to consist of hundreds of thousands of members. Each time one of Gateway's borrowers paid online or over the phone, Gateway collected a fee from the borrower of up to $10.00.

13. Thus, the amount in controversy in this action, exclusive of costs and interest, exceeds the amount-in-controversy requirement of 28 U.S.C. § 1332(d).

## III.     COMMON FACTUAL ALLEGATIONS

**The Texas Debt Collection Act**

14. The Texas Debt Collection Act ("TDCA") prohibits a debt collector from "us[ing] unfair or unconscionable means" in the collection of a consumer debt. Tex. Fin. Code § 392.303(a).

15. Gateway is a *debt collector* under the TDCA because it is "a person who directly or indirectly engages in debt collection . . .." *Id.* at § 392.001(6).

16. Gateway engages in *debt collection*, which the TDCA defines as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* at § 392.001(5).

17. A *consumer debt* under the TDCA is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." § 392.001(2).

18. As "an individual who has a consumer debt," each Plaintiff is a *consumer* under the TDCA. § 392.001(1).

19. As alleged above, the Pay-to-Pay fees Gateway collected are not authorized by Plaintiffs' deeds of trust—or, indeed, any standard deed of trust or mortgage.

20. By collecting those fees, Gateway engaged in the specifically enumerated "unfair or unconscionable means" of debt collection of "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer[.]" *Id.* at § 392.303(a)(2).

**FHA Servicing Rules Restrict Fees**

21. The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development ("HUD"), "provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories."[1] The FHA "is

---

[1] HUD.gov – The Federal Housing Administration, https://www.hud.gov/program_offices/housing/fhahistory (last visited on July 30, 2020).

PLAINTIFFS' ORIGINAL COMPLAINT – CLASS ACTION                                         4

one of the largest insurers of mortgages in the world, insuring more than 46 million mortgages since its inception in 1934."[2]

22.	The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

23.	To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses if a property owner defaults on their mortgage. The lenders bear less risk because FHA will pay a claim to the lender for the unpaid principal balance of a defaulted mortgage."[3]

24.	The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." Ex. 4 at 3, § III.A.1.

25.	Gateway is an FHA-approved Mortgagee.

26.	As an FHA-approved Mortgagee, Gateway must annually "acknowledge that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, **Handbooks**, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[4]

---

[2] *Id.*
[3] *Id.*
[4] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees, Changes Implemented 8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on July 30, 2020) (emphasis added).

27. HUD regulations provide that a "mortgagee may collect reasonable and customary fees and charges from the mortgagor . . . *only as provided below*." 24 C.F.R. § 203.552(a) (emphasis added).

28. A subsection of the regulation provides that the mortgagee may collect "[s]uch other reasonable and customary charges as may be authorized by the Secretary." *Id*. at § 203.552(a)(12).

29. The Secretary publishes additional specifically authorized fees and charges in the FHA Single-Family Policy Handbook ("FHA Handbook"). *See*, Handbook 4000.1: *FHA Single-Family Housing Policy Handbook*, https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed by counsel on July 30, 2020) (the "FHA Handbook").

30. The FHA Handbook "is a consolidated, consistent, and comprehensive source of FHA Single Family Housing policy" that consolidates "[h]undreds of FHA Handbooks, Mortgagee Letters, Housing Notices, and other policy documents[.]"[5]

31. In the FHA Handbook, HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration[.]" Ex. 3 at 3, § III.A.

32. These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

---

[5] United States Department of Housing and Urban Development, *Single Family Housing Policy Handbook 4000.1: SF Handbook Information Page,* https://www.hud.gov/program_offices/housing/sfh/handbook_4000-1 (last accessed by counsel on August 5, 2020).

33. These provisions are incorporated by reference into the uniform covenants of FHA-insured mortgages.

34. FHA-insured mortgages contain uniform covenants.

35. In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges *authorized* by the Secretary [of Housing and Urban Development]." Ex. 1 at ¶ 13 (emphasis added).

36. This provision incorporates by reference HUD's limits on allowable fees.

37. In a section entitled "Servicing Fees and Charges," the FHA Handbook establishes what fees and charges are authorized by HUD. Ex. 3 at 5, § III.A.1.f.

38. Specifically, the FHA Handbook defines "Allowable Fees and Charges a[s] those costs associated with the servicing of the Mortgage that are permitted to be charged to the Borrower," and defines "Prohibited Fees and Charges a[s] those costs associated with the servicing of the Mortgage that may not be charged to the Borrower." *Id*., at § III.A.1.f.i.

39. HUD permits FHA-approved Mortgagees to "collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as *authorized* by HUD below." *Id.*, at § III.A.1.f.ii.(A) (emphasis added).

40. A fee or charge is authorized if it meets three specific criteria: the fee or charge "must be" (a) "reasonable and customary for the local jurisdiction"; (b) "based on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage"; *and* (c) "within the maximum amount allowed by HUD." *Id.* at pp. 5–6, § III.A.1.f.ii.(A) (emphasis added).

41. Appendix 3.0 of the FHA Handbook contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.[6]

42. Pay-to-Pay fees are not on that list.

43. In the absence of HUD authorization, FHA-approved Mortgagees are prohibited by contract from collecting fees associated with servicing an FHA-insured mortgage.

44. Instead, if the FHA-approved Mortgagee wants authorization to collect additional fees and charges, it "may request approval . . . for any fee, charge, or unusual service not specifically mentioned in this *SF Handbook*." *Id.*, at 6, § III.A.1.f.ii.(B).

45. If the fee or charge is approved, "[t]he Homeownership Center (HOC) will determine the maximum amount of any fee based on what is reasonable and customary in the area." *Id.*

46. Because Pay-to-Pay fees do not appear on the list of servicing fees and charges and have not been assigned a "maximum amount allowed" based on what HUD deems "reasonable and customary in the area," FHA-approved Mortgagees are prohibited by contract from collecting them from the FHA borrower.

47. Moreover, even were an FHA-approved Mortgagee to receive authorization to collect a Pay-to-Pay fee, the fee to the borrower must still be "based on actual cost of the work performed or actual out-of-pocket expenses"—in short, the servicer cannot collect such fees to create a profit center. *Id.*, at 6, § III.A.1.f.ii.(A).

---

[6] In the PDF version of the FHA Handbook, the term "maximum amount allowed by HUD" contains a hyperlink that, when clicked, brings the reader to Appendix 3.0.

48. Based upon information and belief, the Pay-to-Pay fees that Gateway charges borrowers exceed its out-of-pocket costs by several hundred percent, and thus violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages.

### IV. PLAINTIFFS' ALLEGATIONS

49. Plaintiff Sanchez executed a standard form FHA deed of trust with uniform covenants to purchase her home. Ex. 1.

50. Section 13 of that form FHA-insured deed of trust, entitled "Loan Charges," states, "Lender may collect fees and charges *authorized* by the Secretary [of Housing and Urban Development]." *Id.* at 8 (emphasis added).

51. Section 15 of her form FHA-insured deed of trust provides further that "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." *Id.* at 9.

52. Plaintiff Watkins executed a standard conventional deed of trust with uniform covenants when he refinanced his home. Ex. 2.

53. Section 16 of his deed of trust provides that "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." *Id.* at 10.

54. Nowhere in his standard conventional deed of trust are Pay-to-Pay fees mentioned, much less expressly authorized.

55. As alleged above, the TDCA prohibits Gateway's collection of Pay-to-Pay fees because they are not expressly authorized in Plaintiffs' deeds of trust or otherwise legally chargeable to Plaintiffs.

56. Gateway's collection of Pay-to-Pay fees from Plaintiff Sanchez further constitutes a breach of contract because those fees are not, and have not been, authorized by the Secretary of Housing and Urban Development.

57. And even if Gateway had authorization to collect such a fee, HUD rules prohibit FHA-approved Mortgagees from passing on to borrowers more than the out-of-pocket costs for providing the service.

58. On information and belief, which can be confirmed through review of Defendant's documents, Gateway reaps a substantial profit from collecting Pay-to-Pay fees.

59. The $3.50–$10.00 it collects from its borrowers in Pay-to-Pay fees thus violates the TDCA and also violates the HUD rules restricting fees which are incorporated into Plaintiff Sanchez's FHA-insured mortgage.

60. Gateway has collected multiple Pay-to-Pay fees from Plaintiffs.

61. Before commencing this action, Plaintiffs provided Gateway written notice of their claims and an opportunity to take corrective action.

## V.   CLASS ALLEGATIONS

62. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, and predominance requirements of Rule 23(a).

63. Plaintiffs seek certification of the following classes (collectively, the "Classes"):

**The Texas Debt Collection Act Class (the "TDCA Class")**

All persons (1) who have or had a residential mortgage loan, secured by their residence located in the State of Texas, (2) that is or was serviced by Gateway, (3) who were charged one or more Pay-to-Pay fee, and (4) whose Security Instrument did not expressly authorize the collection of a Pay-to-Pay fee.

**The FHA Pay-to-Pay Class (the "FHA Pay-to-Pay Class")**:

All persons in the United States (1) with an FHA-insured mortgage secured by their residence located in the State of Texas (2) that is or was serviced by Gateway (3) who were charged one or more Pay-to-Pay fee and (4) whose mortgages provide the "Lender may collect fees or charges authorized by the Secretary," or language substantially similar.

64. Plaintiffs reserve the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

65. Excluded from the Classes are Defendant, and Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all mortgagors who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case should be assigned.

66. The members of the Classes are so numerous that joinder is impractical. While the exact number of members of the Classes cannot be determined without discovery, Plaintiffs believe that the Classes consist of thousands of members, the identity of whom, upon information and belief, can be readily determined upon review of records maintained by Defendant.

67. Plaintiffs' claims are typical of the claims of other members of the Classes, in that they arise out of the same acts of Gateway, namely assessing fees to borrowers that are not permitted by contract or Texas law. Plaintiffs have suffered the harms alleged and have no interests antagonistic to the interests of any other member of the Classes.

68. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

69. The predominating common questions of law and fact include:

      a.      Whether charging Pay-to-Pay fees violates the Texas Debt Collection Act;

      b.      What is the proper method or methods by which to measure damages caused by Gateway's violations of the TDCA;

      c.      Whether Gateway should be enjoined from collecting or attempting to collect Pay-to-Pay fees;

      d.      Whether, and in what amount, Gateway may charge a Pay-to-Pay fee to borrowers with FHA-insured deeds of trust and mortgages;

      e.      Whether charging such fees violates HUD rules and regulations;

      f.      Whether charging such fees violates provisions of the Plaintiffs' and Class members' deeds of trust and mortgages; and

      g.      What is the proper method or methods by which to measure damages caused by Gateway's breaches of the standard terms of FHA-insured mortgages.

70. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions, particularly class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the members of the Classes.

71. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each of the Class member's claims are small relative to the complexity of the litigation, and due to the financial resources of Gateway, no member of the Classes could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and Gateway's misconduct will proceed without remedy.

72. Even if members of the Classes could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

73. Alternatively, certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because it is clear that declaratory and injunctive relief is appropriate respecting the Class as a whole.

## VI. CLAIMS FOR RELIEF

### COUNT I: Violation of the Texas Debt Collection Act
### (Both Plaintiffs on behalf of the TDCA Class)

74. Plaintiffs incorporate paragraphs 1 through 73.

75. Plaintiffs gave deeds of trust to secure the notes they took out to purchase or refinance their homes in the State of Texas, and each Plaintiff is therefore, under the TDCA, a "consumer" who took out a "consumer debt."

76. Gateway is a "debt collector" under the TDCA.

77. In the process of "debt collection," by collecting or attempting to collect Pay-to-Pay fees, Gateway engaged in the "unfair or unconscionable means" of "collecting or attempting to collect . . . a charge, fee, or expense incidental to the obligation" that was not "expressly authorized by the agreement creating the obligation or legally chargeable to the" Plaintiffs and the TDCA Class.

78. As such, Gateway violated the TDCA.

79. On behalf of the TDCA Class, Plaintiffs seek an injunction restraining Gateway from collecting Pay-to-Pay fees and actual damages.

### COUNT II: Breach of Contract
**(Plaintiff Sanchez on behalf of the FHA Pay-to-Pay Class)**

80. Plaintiffs incorporate paragraphs 1 through 79.

81. Plaintiff Sanchez and members of the FHA Pay-to-Pay Class have FHA-insured security instruments that are or were serviced by Gateway.

82. Plaintiff Sanchez performed all conditions precedent to enforcing the terms of her deed of trust.

83. Gateway improperly collected Pay-to-Pay fees from its borrowers contrary to the express terms of their contracts.

84. Moreover, the Pay-to-Pay fees Gateway collected exceeded its out-of-pocket costs by several hundred percent.

85. As a proximate cause of that breach, Plaintiff Sanchez and members of the FHA Pay-to-Pay Class have paid fees that should not have been collected from them and which Gateway was not entitled to collect.

86. Gateway did not disclose to Plaintiff Sanchez or members of the FHA Pay-to-Pay class that it inflates its Pay-to-Pay fees for profit, as opposed to being a pass-through cost to a third-party processor.

87. On behalf of the FHA Pay-to-Pay Class, Plaintiff Sanchez seeks declaratory, injunctive, and compensatory relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that this Court:

    1.    Determine that this action may be maintained as a class action under Fed. R. Civ. P. 23, that Plaintiffs are proper class representatives, and that their counsel are appointed Class Counsel;

    2.    Award compensatory damages and restitution in the amount of all Pay-to-Pay fees collected from members of the FHA Pay-to-Pay Class and the TDCA Class, and interest on those fees;

    3.    Award actual damages in an amount according to proof;

    4.    Award injunctive relief requiring Defendant to cease collection of all improperly charged fees that have been charged to, but not yet collected from, Plaintiffs and members of the Classes;

    5.    Award injunctive relief to enjoin Defendant's wrongful acts and further violations of Plaintiffs' and the Classes' rights, including but not limited to requiring Defendant to implement procedures to ensure it ceases collecting and attempting to collect the improper fees identified in this Complaint;

    6.    Award pre-judgment interest at the maximum rate permitted by applicable law;

    7.    Enter a declaratory judgment that Defendant, through its wrongful actions, has kept and continues to keep for itself, benefits that are due and owed to Plaintiffs and members of the Classes;

    8.    Award reasonable attorneys' fees and costs pursuant to applicable law; and

    9.    Award such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs and members of the Classes hereby request a trial by jury.

Respectfully submitted,

*/s/ Scott R. Frieling*
Scott R. Frieling

**ALLEN STEWART P.C.**
Scott R. Frieling
Texas Bar No. 24012659
sfrieling@allenstewart.com
Allen M. Stewart
Texas Bar No. 19202030
astewart@allenstewart.com
Andrew Ross
Texas Bar No. 24079246
aross@allenstewart.com
Lee B. Lesher
Texas Bar No. 24049157
llesher@allenstewart.com
1700 Pacific Ave., Suite 2750
Dallas, Texas 75201
Telephone: (214) 965-8700
Fax: (214) 965-9701
ATTORNEYS FOR PLAINTIFFS


 */s/ Randall K. Pulliam*
**CARNEY BATES & PULLIAM, PLLC**
Randall K. Pulliam (Texas Bar No. 24048058)
rpulliam@cbplaw.com
Hank Bates (*Admitted N.D. Texas*)
hbates@cbplaw.com
E. Lee Lowther III (*Admitted N.D. Texas*)
llowther@cbplaw.com
519 W. 7th St.
Little Rock, AR 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505
ATTORNEYS FOR PLAINTIFFS