**<u>EXHIBIT B</u>**

1

## **TABLE OF CONTENTS OF EXHIBIT B**

2

| **Document Type** | **Page No.** |
|---|---|
| Class Action Complaint | 3 |
| Civil Case Cover Sheet | 45 |
| Summons | 48 |
| Certificate of Assignment | 50 |
| Notice of Trial Setting Conference | 52 |
| Proof of Service by Mail | 56 |
| Stipulation and Order re: Extension of Time to Respond to Complaint | 59 |
| Amended Class Action Complaint | 64 |
| Notice of Errata Regarding Amended Class Action Complaint | 82 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOLL AMIR & ELEY LLP

## CIV-200608-CIV-DS2010650-CASEEN-144602



### Scanned Document Coversheet

System Code:   CIV
Case Number:   DS2010650
Case Type:   CIV
Action Code:   CASEEN
Action Date:   06/08/20
Action Time:   2:46
Action Seq:   0002
Printed by:   LARIC

> THIS COVERSHEET IS FOR COURT PURPOSES ONLY, AND THIS IS NOT A PART OF THE OFFICIAL RECORD. YOU WILL NOT BE CHARGED FOR THIS PAGE

## Complaint and Party information entered



NEW FILE

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SAN BERNARDINO** E D

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JENNIFER M. LANGSTON,
on behalf of herself and
all others similarly situated,

     Plaintiffs,

v.

GATEWAY MORTGAGE GROUP, LLC,

     Defendant.

CK#200618· 0410 R    /

JUN 08 2020

LaShondra Richardson

Case No. **CIV DS 2 0 1 0 6 5 0**

### CLASS ACTION COMPLAINT

Plaintiff Jennifer M. Langston, on behalf of herself and all others similarly situated, alleges violations of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), violations of the California Unfair Competition Law ("UCL"), and breaches of contract against Gateway Mortgage Group, LLC ("Defendant" or "Gateway").

1.     Many borrowers in California struggle enough to make their regular mortgage payments without getting charged extra, illegal fees when they try to pay by phone or online ("Pay-to-Pay fees"). Federal and state debt collection laws strictly prohibit these charges unless expressly agreed to by the borrower in the mortgage contract, but these Pay-to-Pay fees are found nowhere in any standard deed of trust. Here, Gateway charges borrowers between $3.50–$10.00 for making their mortgage payments online or over the phone. On information and belief, only a small fraction of the fee is paid to a third-party payment processor, and Gateway collects the remainder as profit.

2.     Gateway services mortgages across the country and as such is aware that none of the standard loan agreements it services expressly allow Pay-to-Pay fees as a service fee that Gateway can charge.

3.     Further, Plaintiff's mortgage and those of the putative FHA Pay-to-Pay Class are guaranteed by the Federal Housing Administration ("FHA"). FHA rules and regulations, which are incorporated by reference into FHA-insured mortgages, prohibit FHA servicers, such as



1  Gateway, from charging any fee to the borrower that is not expressly allowed by the Department

2  of Housing and Urban Development ("HUD").  HUD has not authorized the collection of Pay-

3  to-Pay fees. And even for fees that are expressly allowed, FHA rules permit the mortgage servicer

4  to pass along to the borrower only its out-of-pocket costs for providing the services.

5      4.      Gateway's practice of charging, collecting, and profiting from Pay-to-Pay fees

6  violates the Rosenthal Fair Debt Collection Practices Act, and therefore the California Unfair

7  Competition Law, and breaches the uniform provisions of FHA-insured mortgages.

8                          **JURISDICTION AND VENUE**

9      5.      This Court has jurisdiction over this action because this is a civil action wherein

10  the matter in controversy, exclusive of interests and costs, exceeds the jurisdictional minimum

11  of the Court.  The acts and omissions complained of in this action took place, in whole or in part,

12  in the State of California.  Defendant's obligations and liabilities all arise in the State of

13  California.  This Court has jurisdiction over Defendant because Defendant is registered to

14  conduct business in California—and does indeed conduct business within the County of San

15  Bernardino, has sufficient minimum contacts in California, or otherwise intentionally avails itself

16  of the markets within California to render the exercise of jurisdiction by this Court proper and

17  necessary.

18      6.      Venue is proper in this county pursuant to Code of Civil Procedure § 395 because

19  Plaintiff resides in San Bernardino County, and the acts and omissions complained of herein

20  occurred in San Bernardino County.

21                                **PARTIES**

22      7.      Plaintiff Jennifer M. Langston is a natural person who is a citizen of the State of

23  California and resides in Barstow, San Bernardino County, California.

24      8.      Defendant Gateway Mortgage Group, LLC, is incorporated and has its principal

25  place of business in the State of Oklahoma.

26

27

28

**APPLICABLE LAW**

**ROSENTHAL ACT**

9.     The purpose of the Rosenthal Fair Debt Collection Practices Act, located at Cal. Civ. Code § 1788 *et seq.*, is to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts[.]" Cal. Civ. Code § 1788.1(b). The Rosenthal Act is "a remedial statute [that] should be interpreted broadly in order to effectuate its purpose." *Komarova v. National Credit Acceptance, Inc.*, 95 Cal. Rptr. 3d 880, 892, 175 Cal. App. 4th 324, 340 (Cal. App. 1 Dist. 2009) (quoting *Butler v. Resurgence Financial, LLC*, 521 F. Supp. 2d 1093, 1096 (C.D. Cal. 2007)) (alteration in original). *See also People ex rel. Lungren v. Superior Court,* 14 Cal. 4th 294, 313, 58 Cal. Rptr. 2d 855, 926 P.2d 1042 (Cal. 1996) ("[C]ivil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose.").

10.     The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." Cal. Civ. Code §1788.2(c).

11.     The Rosenthal Act defines a "consumer debt" as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code §1788.2(f).

12.     The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes." Cal. Civ. Code §1788.2(e).

13.     The Rosenthal Act makes it illegal for any entity covered by it to engage in conduct prohibited by provisions of the Fair Debt Collection Practices Act ("FDCPA"). Cal. Civ. Code § 1788.17.

14.     Relevant here is the FDCPA's prohibition on employing "unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation)

1  unless such amount is expressly authorized by the agreement creating the debt or permitted by

2  law." 15 U.S.C. § 1692f(1).

3       15.    Such prohibited conduct further includes making "any false, deceptive, or

4  misleading representation or means in connection with the collection of any debt," which

5  includes the false representation of "the character, amount, or legal status of any debt."

6  *Id.* at § 1692e.

7       16.    Gateway's past and ongoing collections and attempted collections of Pay-to-Pay

8  fees violate the Rosenthal Act.

9  **THE UNFAIR COMPETITION LAW**

10       17.    The UCL defines unfair business competition to include any "unlawful, unfair or

11  fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

12       18.    A business act or practice is "unlawful" under the UCL if it violates any other law

13  or regulation.

14       19.    Thus, Gateway's violations of the Rosenthal Act and applicable HUD regulations

15  are "unlawful" acts actionable under the UCL.

16  **FHA SERVICING RULES**

17       20.    The Federal Housing Administration, an agency within the United States

18  Department of Housing and Urban Development ("HUD"), "provides mortgage insurance on

19  loans made by FHA-approved lenders throughout the United States and its territories."[1] The FHA

20  "is one of the largest insurers of mortgages in the world, insuring more than 46 million mortgages

21  since its inception in 1934."[2]

22       21.    The FHA provides incentives to private lenders to make loans to would-be

23  homebuyers whose creditworthiness and inability to contribute a significant down payment make

24  it difficult for them to obtain a home loan on reasonable terms.

25

26

27  [1] HUD.gov – The Federal Housing Administration,

28  https://www.hud.gov/program_offices/housing/fhahistory (last visited on June 4, 2020).
   [2] *Id.*

                CLASS ACTION COMPLAINT

22. To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses if a property owner defaults on their mortgage. The lenders bear less risk because FHA will pay a claim to the lender for the unpaid principal balance of a defaulted mortgage."[3]

23. The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." Ex. B at 3, § III.A.1.

24. Gateway is an FHA-approved Mortgagee.

25. As an FHA-approved Mortgagee, during the Class Period, Gateway has "acknowledge[d] that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, Handbooks, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[4]

26. HUD regulations provide that a "mortgagee may collect reasonable and customary fees and charges from the mortgagor . . . *only as provided below*." 24 C.F.R. § 203.552(a) (emphasis added).

27. A subsection of the regulation provides that the mortgagee may collect "[s]uch other reasonable and customary charges as may be authorized by the Secretary." *Id.* at § 203.552(a)(12).

28. The Secretary publishes additional authorized fees and charges in the *FHA Single-Family Policy Handbook. See,* Handbook 4000.1: *FHA Single-Family Housing Policy Handbook*, https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed by counsel on June 4, 2020) (the "FHA Handbook").

---

[3] *Id.*

[4] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees, Changes Implemented 8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on June 4, 2020).

29.     The FHA Handbook "is a consolidated, consistent, and comprehensive source of FHA Single Family Housing policy" that consolidates "[h]undreds of FHA Handbooks, Mortgagee Letters, Housing Notices, and other policy documents[.]"[5]

30.     In the FHA Handbook, HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration[.]" Ex. B at 3, § III.A.

31.     These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

32.     These provisions are incorporated by reference into the uniform covenants of FHA-insured mortgages.

33.     In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges *authorized* by the Secretary [of Housing and Urban Development]." Ex. A at ¶ 13 (emphasis added).

34.     This provision incorporates by reference HUD's limits on allowable fees.

35.     In a section entitled "Servicing Fees and Charges," the FHA Handbook establishes what fees and charges are authorized by the HUD. Ex. B at 5, § III.A.1.f.

36.     Specifically, the HUD Handbook defines "Allowable Fees and Charges a[s] those costs associated with the servicing of the Mortgage that are permitted to be charged to the Borrower," and defines "Prohibited Fees and Charges a[s] those costs associated with the servicing of the Mortgage that may not be charged to the Borrower." *Id.* at 5, § III.A.1.f.i.

37.     HUD permits FHA-approved Mortgagees to "collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as *authorized* by HUD below." *Id.*, at § III.A.1.f.ii.(A) (emphasis added).

38.     A fee or charge is authorized if it meets three specific criteria: the fee or charge "must be" (a) "reasonable and customary for the local jurisdiction"; (2) "based on actual cost of

---

[5] United States Department of Housing and Urban Development, *Single Family Housing Policy Handbook 4000.1: SF Handbook Information Page*, https://www.hud.gov/program_offices/housing/sfh/handbook_4000-1 (last accessed by counsel on June 4, 2020).

1  the work performed or actual out-of-pocket expenses and not a percentage of either the face

2  amount or the unpaid principal balance of the Mortgage"; **and** (c) "within the maximum amount

3  allowed by HUD." *Id.* at. 5–6, § III.A.1.f.ii.(A) (emphasis added).

4      39.    Appendix 3.0 of the FHA Handbook contains an exhaustive list of the servicing

5  fees and charges authorized by HUD and the maximum amounts that may be charged for such

6  fees.[6]

7      40.    Pay-to-Pay fees are not on that list.

8      41.    In the absence of HUD authorization, FHA-approved Mortgagees are prohibited

9  by contract from collecting fees and charges associated with servicing an FHA-insured mortgage.

10      42.    Instead, if an FHA-approved Mortgagee wants authorization to collect additional

11  fees and charges, it "may request approval . . . for any fee, charge, or unusual service not

12  specifically mentioned in this *SF Handbook.*" *Id.* at 6, § III.A.1.f.ii.(B).

13      43.    If the fee or charge is approved, "[t]he Homeownership Center (HOC) will

14  determine the maximum amount of any fee based on what is reasonable and customary in the

15  area." *Id.*

16      44.    Because Pay-to-Pay fees do not appear on the list of servicing fees and charges

17  and have not been assigned a "maximum amount allowed" based on what HUD deems

18  "reasonable and customary in the area," FHA-approved Mortgagees are prohibited by contract

19  from collecting them from the FHA borrower.

20      45.    Moreover, even were an FHA-approved Mortgagee to receive authorization to

21  charge a Pay-to-Pay fee, the charge to the borrower must still be "based on actual cost of the

22  work performed or actual out-of-pocket expenses"—in short, the servicer cannot collect such

23  fees to create a profit center. *Id.*, at 6, § III.A.1.f.ii.(A).

24      46.    Based upon information and belief, the Pay-to-Pay fees that Gateway charges

25  borrowers exceed its out-of-pocket costs by several hundred percent, and thus would violate

26

27

28  [6] In the PDF version of the FHA Handbook, the term "maximum amount allowed by HUD" contains a hyperlink that, when clicked, brings the reader to Appendix 3.0.

mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages even if they were authorized, which they are not.

## FACTUAL ALLEGATIONS

47.    On or around January 12, 2017, Plaintiff Jennifer M. Langston executed a Deed of Trust to purchase her home in California. Ex. A.

48.    Since that time, Gateway has collected no less than $147.00 in Pay-to-Pay fees from Ms. Langston in increments of $3.50 and $10.00.

49.    Each time Gateway collected a Pay-to-Pay fee from Ms. Langston, her monthly mortgage payment was past due but within the grace period.

50.    Those fees are not expressly authorized by Ms. Langston's Deed of Trust.

51.    On information and belief, which can be confirmed by an examination of Defendant's records, Gateway pays a third party significantly less than it charges borrowers to process online and phone payment transactions ("Pay-to-Pay transactions").

52.    Gateway's collection of Pay-to-Pay fees is a breach of the Deed of Trust, which does not delineate Pay-to-Pay fees as one of the many charges that the lender, or loan servicer acting on behalf of the lender, may charge.  There is simply no provision in the mortgage that allows Gateway to collect Pay-to-Pay fees.

53.    Indeed, Pay-to-Pay fees are prohibited by the Plaintiff's Deed of Trust, which permits Gateway to "collect fees and charges authorized by the Secretary [of Housing and Urban Development]." Ex. A at ¶ 13.

54.    As alleged above, HUD rules do not permit collecting Pay-to-Pay fees. Even if such fees were allowed, HUD rules permit passing along to borrowers only the lender's actual costs for offering the service. By collecting, and profiting from, Pay-to-Pay fees, Gateway breached uniform covenants in Plaintiffs' Deeds of Trust.

55.    Gateway's collection of Pay-to-Pay fees is also a direct breach of Paragraph 15 of the Deed of Trust: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." *Id.,* ¶ 15. Gateway's collection of Pay-to-Pay fees violated the Rosenthal Act and HUD regulations.

56.    By violating these provisions of its form contract, Gateway has breached its contract on a class-wide basis.

57.    Before filing suit, Ms. Langston provided Gateway written pre-suit notice and a reasonable opportunity to take corrective action.

## CLASS REPRESENTATION ALLEGATIONS

58.    Plaintiff brings this action on behalf of the following classes of persons, subject to modification after discovery and case development:

**The Rosenthal Act Class**

All persons with a California address who paid a fee to Gateway for making a loan payment by telephone, IVR, or the internet during the applicable statutes of limitations for Plaintiffs' claims through the date a class is certified.

**The FHA Pay-to-Pay Class**

All persons in the United States (1) with an FHA-insured mortgage (2) originated or serviced by Gateway (3) who were charged one or more Pay-to-Pay fee and (4) whose mortgages provide the "Lender may collect fees or charges authorized by the Secretary," or language substantially similar.

**The FHA Pay-to-Pay California Subclass**

All persons in the United States (1) with an FHA-insured mortgage (2) that secures a property located in the State of California (3) originated or serviced by Gateway (4) who were charged one or more Pay-to-Pay fee and (5) whose mortgages provide the "Lender may collect fees or charges authorized by the Secretary," or language substantially similar.

59.    Members of the Classes are identifiable through Defendant's records and payment databases.

60.    Excluded from the Classes are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

61.    Plaintiff Jennifer Langston proposes that she serve as representative of the Classes.

CLASS ACTION COMPLAINT

62. Plaintiff and members of the Classes have all been harmed by the actions of Defendant.

63. Numerosity is satisfied. Gateway's servicing records will likely reveal there are hundreds of members of the Classes. Individual joinder of these persons is impracticable.

64. There are questions of law and fact common to Plaintiff and to the Classes, including, but not limited to:

    a. Whether Gateway violated the Rosenthal Act by charging Pay-to-Pay fees not due;

    b. Whether Gateway violated general provisions of the California Unfair Practices Act (Cal. Bus. & Prof. Code § 17000 *et. seq.*) by charging Pay-to-Pay fees not due;

    c. Whether Gateway breached its Deeds of Trust by charging Pay-to-Pay fees not due;

    d. Whether Gateway violated HUD regulations by collecting Pay-to-Pay fees;

    e. Whether Gateway violated FHA servicing requirements by charging Pay-to-Pay fees;

    f. Whether Gateway's costs for Pay-to-Pay transactions are less than the amount it charged to Plaintiff and Class members for Pay-to-Pay fees;

    g. Whether Plaintiff and Class members are entitled to actual damages as a result of Defendant's actions;

    h. Whether Plaintiff and Class members are entitled to an injunction and restitution; and

    i. Whether Plaintiff and Class members are entitled to attorney's fees and costs.

65. Plaintiff's claims are typical of the claims of members of the Classes. Gateway charged Plaintiff Pay-to-Pay fees in the same manner as the Class members. Gateway entered into a contract with a third party to process the Plaintiff's and Class members' Pay-to-Pay transactions. Plaintiff and members of the Classes entered into uniform covenants in their Deeds of Trust that prohibit Pay-to-Pay fees. Alternatively, if Gateway is allowed under the Deed of

Trusts to charge for Pay-to-Pay transactions as a default-related fee, such amounts are capped for Plaintiff and members of the Classes at the actual amounts disbursed by Gateway for processing the Pay-to-Pay transactions.

66.     Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members the Classes, and she will fairly and adequately protect the interests of the Classes.  Plaintiff has taken actions before filing this complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand, as necessary, on behalf of Class members to protect the interests of the Classes.

67.     Plaintiff has hired counsel that is skilled and experienced in class actions and is adequate class counsel capable of protecting the interests of the Classes.

68.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

69.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

### COUNT I: VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT § CAL. CIV. CODE §§ 1788 *et seq.* (On behalf of the Rosenthal Act Class)

70.     Plaintiff incorporates by reference paragraphs 1 through 69.

71.     The Rosenthal Act applies to Gateway because it regularly engages in debt collection within California. Cal. Civ. Code § 1788.2(c).

72.     Plaintiff Jennifer Langston purchased her home by residential mortgage for personal, family or household use and are persons who incurred a consumer debt. Cal. Civ. Code § 1788.2(e), (f).

73.     By collecting Pay-to-Pay fees from Plaintiff and class members, Gateway collected an amount incidental to the principal obligation without the amount being expressly stated in the underlying loan agreement.

74.     The Rosenthal Act makes it illegal for any entity covered by it to engage in conduct prohibited by the FDCPA. Cal. Civ. Code § 1788.17. By engaging in such prohibited conduct, Gateway violated the Rosenthal Act.

75.     Moreover, by collecting and attempting to collect Pay-to-Pay fees that were not otherwise permitted by law from Plaintiffs and class members, Gateway violated the Rosenthal Act's prohibition against "(b) Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

76.     By assessing Pay-to-Pay fees, Gateway represented to Plaintiff and class members that their debts may be increased by the addition of the Pay-to-Pay fees, even though Pay-to-Pay fees may not be legally added to the existing obligation.  These representations violated the Rosenthal Act's prohibition against representing that a consumer debt "may be increased by the addition of . . . charges if, in fact, such fees or charges may not legally be added to the existing obligation." Cal. Civ. Code § 1788.13(e).

77.     Gateway violated the Rosenthal Act because it retains for itself a portion of the Pay-to-Pay fees it collects from California borrowers.

78.     As a result of each and every violation of the Rosenthal Act, Plaintiff Jennifer Langston and members of the Rosenthal Act Class are entitled to recover from Gateway actual damages and reasonable attorney's fees and costs.

**COUNT II: VIOLATION OF THE "UNLAWFUL" PRONG OF THE CALIFORNIA UNFAIR PRACTICES ACT § 17200 *et. seq.* ("UCL")**
**(On behalf of the California Class and California FHA Pay-to-Pay Subclass)**

79.     Plaintiff incorporates by reference paragraphs 1 through 78.

80.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

81.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

82.     The Rosenthal Act applies to Gateway because it regularly engages in debt collection within California. Cal. Civ. Code § 1788.2(c).

83.     Plaintiff purchased her home by residential mortgage for personal, family, or household use and is a person who incurred a consumer debt. Cal. Civ. Code § 1788.2(e), (f).

84.     By collecting Pay-to-Pay fees from Plaintiff and Class members, Gateway collected an amount incidental to the principal obligation without the amount being expressly stated in the underlying loan agreement, in violation of the Rosenthal Act.

85.     The Rosenthal Act makes it illegal for any entity covered by it to engage in conduct prohibited by the federal FDCPA. Cal. Civ. Code § 1788.17. By engaging in such conduct, Gateway violated the Rosenthal Act.

86.     Moreover, by collecting and attempting to collect Pay-to-Pay fees that were not otherwise permitted by law from Plaintiffs and Class members, Gateway violated the Rosenthal Act's prohibition against "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b).

87.     By assessing Pay-to-Pay fees, Gateway represented to Plaintiff and Class members that their debts may be increased by the addition of the Pay-to-Pay fees, even though Pay-to-Pay fees may not be legally added to the existing obligation. These representations violated the Rosenthal Act's prohibition against representing that a consumer debt "may be increased by the addition of . . . charges if, in fact, such fees or charges may not legally be added to the existing obligation." Cal. Civ. Code § 1788.13(e).

88.     Gateway violated the Rosenthal Act because it retains for itself a portion of the Pay-to-Pay fees it collects from California borrowers.

89.     As described in detail above, Gateway's conduct described herein violates the Rosenthal Act. These violations are sufficient to support Plaintiff's claim under the "unlawful" prong of the UCL.

90.     Additionally, because the Secretary of Housing and Urban Development has not authorized Pay-to-Pay fees, Gateway has violated 24 C.F.R. § 203.552(a)(12) with respect to borrowers with FHA-insured mortgages.

91.     Gateway's violations of this regulation, too, are actionable under the "unlawful" prong of the UCL.

92.     Through its ongoing unlawful acts and practices, Gateway has improperly obtained, and continues to improperly obtain, money from Plaintiff and the Class members. As such, Plaintiff requests that the Court cause Gateway to restore the money for Pay-to-Pay fees Plaintiff and members of the Classes paid to Gateway and to enjoin Gateway from continuing its unlawful practices in the future. Otherwise, Plaintiff and the Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT III: BREACH OF CONTRACT
### (On behalf of the FHA Pay-to-Pay Class)

93.     Plaintiffs incorporate by reference paragraphs 1 through 92.

94.     On or about January 12, 2017, Gateway and Ms. Langston entered into a Deed of Trust with respect to her home.

95.     Gateway's collection of Pay-to-Pay fees violates servicing rules for FHA-insured loans, which are incorporated by reference in Paragraph 13 of Ms. Langston's standard FHA-insured Deed of Trust. HUD rules prohibit charging Pay-to-Pay fees.

96.     Even if such fees were permitted, which they are not, HUD rules would limit Gateway to passing along only their out-of-pocket costs for providing such services. Gateway's collecting, and profiting from, Pay-to-Pay fees breaches Plaintiffs' standard FHA-insured Deed of Trust. Moreover, Gateway's collection of Pay-to-Pay fees is a direct breach of Paragraph 15 of Ms. Langston's Deed of Trust: "This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located." Ex. A, ¶ 15. As pleaded above, the Rosenthal Act prohibits the collection of any amount incidental to the principle obligation unless that amount is *expressly* stated in the loan agreement.  Gateway's collection of Pay-to-Pay fees violated the Rosenthal Act.

97.  Because these provisions are contained in the "Uniform Covenants" section, Gateway has breached its contract on a class-wide basis.

98.  The Plaintiff and members of the FHA Pay-to-Pay Class have been harmed by these breaches in that they have paid fees that Gateway was prohibited from collecting.

## JURY DEMAND

99.  Plaintiff is entitled to and respectfully demands a trial by jury on all issues so triable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Jennifer M. Langston respectfully requests this Court enter judgment against Defendant and order the following:

a.  That the Court certify the classes as defined herein and appoint Plaintiff as Class Representatives and Plaintiff's counsel as class counsel;

b.  That Plaintiff and all Class members be awarded actual damages, including but not limited to all fees improperly charged, and forgiveness of all amounts not properly owed;

c.  That Gateway restore to the Plaintiff and all Class members monies it improperly collected in Pay-to-Pay fees;

d.  That the Court enjoin Defendant from further violations of California law by charging illegal Pay-to-Pay fees to Plaintiff, Class members, and the public;

e.  That Plaintiff and Class members be awarded costs and attorney's fees;

f.  That the Court enter an order that Defendant and its agents, or anyone acting on its behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

g.  That the Court certify this action as a class action under Cal. Code Civ. Proc. § 382, appoint Plaintiff as representative of the Classes, and appoint her counsel as class counsel; and

h.  Such other and further relief as the Court may deem just and proper.

Dated: June 5, 2020

Respectfully Submitted,

*/s/ Hank Bates*

Hank Bates (SBN 167688)
hbates@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR, 72201
Tel. 501-312-8500
Fax 501-312-8505

# EXHIBIT A

Recording requested by
Stewart Title of California, Inc.

WHEN RECORDED, MAIL TO:
Gateway Mortgage Group, LLC
244 South Gateway Place
Jenks, OKLAHOMA 74037-3448

This instrument was prepared by:
Gateway Mortgage Group, LLC
244 South Gateway Place
Jenks, OKLAHOMA 74037-3448
877-406-8109

Assessor's Identification Number:
0426-233-010000
NMLS# 7233 ; Originator: Bonnie ViolaHughes,
NMLS# 256537
Loan Number: 13126125



Electronically Recorded in Official Records, County of San Bernardino   1/13/2017 11:51 AM CG

**BOB DUTTON**
ASSESSOR - RECORDER - CLERK
683  Stewart Title Company

Doc #: **2017-0018731**



| | | |
|---|---|---|
| Titles: | **1** | Pages:  **11** |
| Fees | | 45.00 |
| Taxes | | .00 |
| Other | | .00 |
| PAID | | 45.00 |

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# DEED OF TRUST

FHA Case Number:
048-9353038-703

Property Address: 37105 San Bruno Ave, Barstow, CALIFORNIA 92311

MIN: 100287715001228993
SIS Telephone #: (888) 679-MERS

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated **January 12, 2017**, together with all Riders to this document.

(B) "Borrower" is Jennifer M Langston an unmarried woman. Borrower's address is 37105 San Bruno Ave, Barstow, CALIFORNIA 92311. Borrower is the trustor under this Security Instrument.

(C) "Lender" is Gateway Mortgage Group, LLC, organized and existing under the laws of Oklahoma.
Lender's address is 244 South Gateway Place, Jenks, OKLAHOMA 74037-3448.

(D) "Trustee" is Fidelity National Title Company
Trustee's address is 17911 Von Karman Ave., Ste 300, Irvine, Orange County,CALIFORNIA 92614.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **January 12, 2017**. The Note states that Borrower owes Lender ONE HUNDRED TWENTY-TWO THOUSAND SEVEN HUNDRED THIRTY-FIVE AND NO/100 Dollars (U.S. $122,735.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 1, 2047.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

FHA CALIFORNIA Deed of Trust with MERS

Page 1 of 10

1/2015

IDS, Inc. - 59422

Borrower(s) Initials _JML_



(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Planned Unit Development Rider
☐ Other(s) [specify]:

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

(S) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of San Bernardino:

**Lot 38, of Tract No. 4280, in the County of San Bernardino, State of California, as shown by Map of file in Book 79, Pages 97 and 98, inclusive of Maps, Records of San Bernardino County, California.**

which currently has the address of **37105 San Bruno Ave**
**Barstow, CALIFORNIA 92311,** ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

---

FHA CALIFORNIA Deed of Trust with MERS 1/2015

IDS, Inc. - 59422

Borrower(s) Initials _JML_



BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.



Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or



destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing

---

FHA CALIFORNIA Deed of Trust with MERS                                                                                      1/2015

IDS, Inc. - 59422                                                                  Borrower(s) Initials 

and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments



from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

---

FHA CALIFORNIA Deed of Trust with MERS                                                                                    1/2015

IDS, Inc. - 59422

Page 7 of 10

Borrower(s) Initials  JML



If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).



Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ -Witness          _____ -Witness

_____ (Seal)              _____ (Seal)
Jennifer M Langston                    -Borrower                                                   -Borrower

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

**State of CALIFORNIA**
**County of San Bernardino**                                              } ss.

On January 12, 2017 _____ before me, Belen Torrez _____ a notary public, personally appeared Jennifer M Langston, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature 

(Seal)



Belen Torrez
COMM. #2172333
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires Nov. 18, 2020

Loan originator (organization): **Gateway Mortgage Group, LLC**; NMLS #: 7233
Loan originator (individual): **Bonnie ViolaHughes**; NMLS #: 256537

**FHA CALIFORNIA Deed of Trust with MERS**                                              1/2015

IDS, Inc. - 59422                              Page 10 of 10

ILLEGIBLE NOTARY SEAL DECLARATION (GOVERNMENT CODE 27361.7)

I certify under penalty of perjury that the notary seal on this document to which this statement is attached reads as follows:

Name of Notary:                     Belen Torrez

Date Commission Expires:            November 18, 2020

Principal Office (County):          San Bernardino

Notary Commission Number:    2172333

Manufacturer Identification Number:   HDL 2

Place of Execution of this Declaration:  Riverside

Date:           January 13, 2017

Stewart Title of California, Inc.

_____
           Kris Y. Gonzalez

# EXHIBIT B



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-8000

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

| | |
|---|---|
| **Special Attention of:** | **Transmittal:** Handbook 4000.1 |
| All FHA Approved Mortgagees | **Issued:** August 14, 2019 |
| All Direct Endorsement Underwriters | **Effective Date:** October 15, 2019 |
| All Eligible Submission Sources | |
| for Condominium Project Approvals | |
| All FHA Roster Appraisers | |
| All FHA Approved 203(k) Consultants | |
| All HUD Approved Housing Counselors | |
| All HUD Approved Nonprofit Organizations | |
| All Governmental Entity Participants | |
| All Real Estate Brokers | |
| All Closing Agents | |

## 1. This Transmits:

Handbook 4000.1, FHA Single Family Housing Policy Handbook, Condominium Project Approval content.


Brian D. Montgomery
Assistant Secretary for Housing – Federal Housing Commissioner

# III.  SERVICING AND LOSS MITIGATION

## A.  TITLE II INSURED HOUSING PROGRAMS FORWARD MORTGAGES

This section provides the standards and procedures applicable to the servicing of all Single Family (one to four units) Mortgages insured under Title II of the National Housing Act, except for Home Equity Conversion Mortgages (HECM). The Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration (FHA).

## 1.  Servicing of FHA-Insured Mortgages

Only FHA-approved Mortgagees may service FHA-insured Mortgages. Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees.

### a.  Servicing in Compliance with Law

#### i.  Definition

The Mortgage Holder is the Entity who holds title to the FHA-insured Mortgage and has the right to enforce the mortgage agreement.

The Mortgage Servicer is the Entity responsible for performing servicing actions on FHA-insured Mortgages on its behalf or on behalf of or at the direction of another FHA-approved Mortgagee.

#### ii.  Standard

Holders must ensure all FHA-insured Mortgages are serviced by a Servicer in accordance with FHA requirements and all applicable laws.

Servicers must service all FHA-insured Mortgages in accordance with FHA requirements and all applicable laws.

##### (A) Laws Applicable to Mortgage Servicing Generally

Mortgagees must comply with all laws, rules, and requirements applicable to mortgage servicing, including full compliance with the applicable requirements under the purview of the Consumer Financial Protection Bureau (CFPB), including the Real Estate Settlement Procedure Act (RESPA) and the Truth in Lending Act (TILA).

FHA requirements that are more stringent or restrictive than those provided for in applicable law are set forth in this *SF Handbook* and the Mortgagee must comply with these requirements.

### (B) Contract Terms

Where mortgage contract terms are more stringent or restrictive than those provided for in applicable law, the Mortgagee must comply with the mortgage contract terms.

### (C) Nondiscrimination Policy

Mortgagees must comply with all antidiscrimination laws, rules, and requirements applicable to servicing performing FHA-insured Mortgages and FHA-insured Mortgages in Default, including full compliance with the applicable requirements of:
- Title VIII of the Civil Rights Act of 1968 (Fair Housing Act);
- the Fair Credit Reporting Act, Public Law 91-508; and
- the Equal Credit Opportunity Act (ECOA), Public Law 94-239 and 12 CFR Part 202.

The Mortgagee must make all determinations with respect to the adequacy of the Borrower's income in a uniform manner without regard to race, color, religion, sex, national origin, familial status, handicap, marital status, actual or perceived sexual orientation, gender identity, source of income of the Borrower, or location of the Property.

## b.  Responsibility for Servicing Actions

Holders are responsible for all servicing actions, including the acts of its Servicers.

Servicers are responsible for their actions in servicing FHA-insured Mortgages, including actions taken on behalf or at the direction of the Holder.

The costs associated with subservicing may not be imposed on the Borrower or passed along to HUD in a claim for mortgage insurance benefits.

### i.  Responsibility during Transfers of Servicing Rights

#### (A) Definitions

The Transferor Servicing Mortgagee is the Mortgagee that transfers servicing responsibilities.

The Transferee Servicing Mortgagee is the Mortgagee to which the servicing responsibilities have been transferred.

The Transfer Date is the date on which the Borrower's Mortgage Payment is first due to the Transferee Servicing Mortgagee.

### (c) Installment Due Date Falls on a Non-Business Day

When the Installment Due Date falls on a non-business day, the Mortgagee must consider a Borrower's Notice of Intent to Prepay or the receipt of the prepayment amount for a Mortgage closed before January 21, 2015 timely if received on the next business day.

### (3) Payoff Disclosure Requirements

When notified of the Borrower's intent to prepay, the Mortgagee must send the <u>Payoff Disclosure</u> and copy of the payoff statement directly to the Borrower, even if the Mortgagee is dealing with an Authorized Third Party.

The Mortgagee will forfeit any interest collected after the date of prepayment if these disclosure requirements are not met.

### (D) Trustee's Fee for Satisfactions

If specifically provided for in the security instrument, the Mortgagee may charge the Borrower the amount of the trustee's fee, plus any reasonable and customary fee for payment, or for the execution of a satisfaction, release or trustee's deed when the debt is paid in full.

### (E) Recording Fees for Satisfactions

The Mortgagee may charge the Borrower a reasonable and customary fee for recording satisfactions in states where recordation is not the responsibility of the Mortgagee.

## f.  Servicing Fees and Charges

### i.  Definition

Allowable Fees and Charges are those costs associated with the servicing of the Mortgage that are permitted to be charged to the Borrower.

Prohibited Fees and Charges are those costs associated with the servicing of the Mortgage that may not be charged to the Borrower.

### ii.  Standard

### (A) Reasonable and Customary Fees and Charges

The Mortgagee may collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as authorized by HUD below. All fees must be:
- reasonable and customary for the local jurisdiction;

- based on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage; and
- within the maximum amount allowed by HUD.

**(B) Requests for Approval for Other Fees or Charges**

The Mortgagee may request approval from the National Servicing Center (NSC) for any fee, charge, or unusual service not specifically mentioned in this *SF Handbook*. The Homeownership Center (HOC) will determine the maximum amount of any fee based on what is reasonable and customary in the area.

**(C) Prohibited Fees and Charges**

The Mortgagee must not charge the Borrower for the following services:
- costs of telephone calls, telegrams, personal visits with the Borrower, certified mail, or other activities that are normally considered a part of a prudent Mortgagee's servicing activity;
- Mortgagee's use of an independent contractor such as a tax service to furnish tax data and information necessary to pay property taxes or make the payments on behalf of the Mortgagee;
- preparing and providing evidence of Payoff, Reconveyance, or termination of the Mortgage;
- providing information essential to the Payoff;
- recording the Payoff of the Mortgage in states where recordation is the responsibility of the Mortgagee; or
- fees for services performed by attorneys or trustees who are salaried members of the Mortgagee's staff.

### iii.   Required Documentation

The Mortgagee must include in the servicing file:
- documentation of the amount of any fees and charges paid or payable by the Borrower; and
- documentation supporting the actual cost of any work performed or out-of-pocket expenses.

### g.   Escrow

### i.   Definition

An Escrow Account is a set of funds collected by the Mortgagee for payment of taxes, insurance, and other items required by the mortgage Note.

# APPENDIX 3.0 – POST-ENDORSEMENT FEES AND CHARGES BY HOC (APPLIES TO SERVICING ONLY)

### Philadelphia HOC

| Type of Service | CT | DE | DC | ME | MD | MA | MI | NH | NJ | NY |
|---|---|---|---|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Returned Check* | $25 | $15 | $15 | $25 | $15 | $25 | $20 | $25 | $20 | $20 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $100 | $110 | $110 | $100 | $110 | $100 | $150 | $100 | $100 | $100 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |

* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
**other than the statement or schedule provided at closing
*** after two payoff statements have been provided free of charge for the calendar year

Handbook 4000.1
Effective Date: 03/14/2016 | Last Revised: 08/14/2019
*Refer to the online version of SF Handbook 4000.1 for specific sections' effective dates

1032

**Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)**

| Type of Service | OH | PA | RI | VT | VA | WV |
|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $10 | $10 | $10 | $10 | $10 | $10 |
| Returned Check* | $20 | $15 | $25 | $25 | $15 | $15 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $100 | $110 | $100 | $100 | $110 | $110 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 |

* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
**other than the statement or schedule provided at closing
*** after two payoff statements have been provided free of charge for the calendar year

**Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)**

## Atlanta HOC

| Type of Service | AL | FL | GA | KY | IL | IN | MS | NC | PR | SC |
|---|---|---|---|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $10 | $15 | $10 | $10 | $10 | $10 | $7.50 | $7.50 | $10 | $15 |
| Returned Check* | $10 | $20 | $15 | $15 | $20 | $25 | $15 | $15 | $10 | $20 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $100 | $100 | $125 | $100 | $100 | $100 | $100 | $150 | $100 | $100 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |

* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
**other than the statement or schedule provided at closing
*** after two payoff statements have been provided free of charge for the calendar year

**Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)**

| Type of Service | TN | VI |
|---|---|---|
| Substitution of Hazard Insurance Policy | $7.50 | $10 |
| Returned Check* | $20 | $10 |
| Modification of performing Mortgage | $50 | $50 |
| Modification of the mortgaged Property | $150 | $100 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 |
| Replacement Coupon Books | $5 | $5 |
| Verification of Mortgage | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 |

\* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
\*\*other than the statement or schedule provided at closing
\*\*\* after two payoff statements have been provided free of charge for the calendar year

**Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)**

### Denver HOC

| Type of Service | AR | CO | IA | KS | LA | MO | MN | MT | NE | NM |
|---|---|---|---|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $10 | $10.50 | $10 | $10 | $10 | $10 | $10 | $10.50 | $10 | $10 |
| Returned Check* | $25 | $15 | $15 | $15 | $25 | $15 | $20 | $15 | $15 | $15 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $110 | $100 | $100 | $100 | $110 | $100 | $100 | $100 | $100 | $110 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |

\* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
\*\*other than the statement or schedule provided at closing
\*\*\* after two payoff statements have been provided free of charge for the calendar year

**Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)**

| Type of Service | ND | OK | SD | TX | WI | WY | UT |
|---|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $10.50 | $10 | $10.50 | $10 | $10 | $10.50 | $10.50 |
| Returned Check* | $15 | $25 | $15 | $25 | $20 | $15 | $15 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $100 | $110 | $100 | $110 | $100 | $100 | $100 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 | $10 |

\* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
\*\*other than the statement or schedule provided at closing
\*\*\* after two payoff statements have been provided free of charge for the calendar year

Handbook 4000.1
Effective Date: 03/14/2016 | Last Revised: 08/14/2019
*Refer to the online version of SF Handbook 4000.1 for specific sections' effective dates

1037

**Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)**

### Santa Ana HOC

| Type of Service | AK | AZ | CA | HI | ID | NV | OR | WA | Pacific Islands |
|---|---|---|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $15 | $10 | $10 | $10 | $15 | $10 | $15 | $15 | $10 |
| Returned Check* | $15 | $15 | $15 | $15 | $20 | $15 | $15 | $15 | $15 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $125 | $100 | $100 | $100 | $125 | $100 | $125 | $125 | $100 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |

\* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
\*\*other than the statement or schedule provided at closing
\*\*\* after two payoff statements have been provided free of charge for the calendar year

# CIV-200608-CIV-DS2010650-CCCS-144606



## Scanned Document Coversheet

System Code: CIV
Case Number: DS2010650
Case Type: CIV
Action Code: CCCS
Action Date: 06/08/20
Action Time: 2:46
Action Seq: 0006
Printed by: LARIC

> THIS COVERSHEET IS FOR COURT PURPOSES ONLY, AND THIS IS NOT A PART OF THE OFFICIAL RECORD. YOU WILL NOT BE CHARGED FOR THIS PAGE

## Civil Case Cover Sheet filed.



NEW FILE

**ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):**

Hank Bates, State Bar No. 167688
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR 72201

TELEPHONE NO.: (501) 312-8500   FAX NO. (Optional): (501) 312-8505

ATTORNEY FOR (Name): Plaintiff Jennifer M. Langston

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

STREET ADDRESS: San Bernardino District – Civil Division
MAILING ADDRESS: 247 West Third Street
CITY AND ZIP CODE: San Bernardino, CA 92415-0210
BRANCH NAME:

CASE NAME: Jennifer M. Langston v. Gateway Mortgage Group, LLC

*FOR COURT USE ONLY*

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 08 2020

LaShondra Richardson

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|

☑ **Unlimited** (Amount demanded exceeds $25,000)  ☐ **Limited** (Amount demanded is $25,000)

☐ Counter   ☐ Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER:
CIV DS 2 0 1 0 6 5 0

JUDGE:
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☑ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):*
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 5, 2020

Hank Bates
_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

Page 1 of 2

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

# CIV-200608-CIV-DS2010650-SIF-144604

### Scanned Document Coversheet

System Code:   CIV

Case Number:   DS2010650

Case Type:   CIV

Action Code:   SIF

Action Date:   06/08/20

Action Time:   2:46

Action Seq:   0004

Printed by:   LARIC

## THIS COVERSHEET IS FOR COURT PURPOSES ONLY, AND THIS IS NOT A PART OF THE OFFICIAL RECORD. YOU WILL NOT BE CHARGED FOR THIS PAGE

## Summons Issued and filed



NEW FILE

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 08 2020

LaShondra Richardson

**NOTICE TO DEFENDANT:** GATEWAY MORTGAGE GROUP, LLC,
*(AVISO AL DEMANDADO):* 6910 East 14th Street
Tulsa, OK 74112

**YOU ARE BEING SUED BY PLAINTIFF:** JENNIFER M. LANGSTON
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: Superior Court of California - County of San Bernardino<br>*(El nombre y dirección de la corte es):* San Bernardino District – Civil Division<br>247 West Third Street<br>San Bernardino, CA 92415-0210 | CASE NUMBER: *(Número del Caso):*<br>**CIV DS 2 0 1 0 6 5 0** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Hank Bates, CARNEY BATES & PULLIAM, PLLC, 519 W. 7th Street, Little Rock, AR  72201   |   (501) 312-8500

DATE: JUN 08 2020            Clerk, by            LaShondra Richardson            , Deputy
*(Fecha)*                  *(Secretario)*                                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*



[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*



Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

# CIV-200608-CIV-DS2010650-COA-144702



## Scanned Document Coversheet

System Code:    CIV
Case Number:  DS2010650
Case Type:       CIV
Action Code:    COA
Action Date:     06/08/20
Action Time:      2:47
Action Seq:       0002
Printed by:       LARIC

> THIS COVERSHEET IS FOR COURT PURPOSES ONLY, AND THIS IS NOT A PART OF THE OFFICIAL RECORD. YOU WILL NOT BE CHARGED FOR THIS PAGE

## Certificate of Assignment received.



NEW FILE

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

JENNIFER M. LANGSTON,
on behalf of herself and all others similarly
situated

Case No.: **CIV DS 2 0 1 0 6 5 0**

vs.

**CERTIFICATE OF ASSIGNMENT**

GATEWAY MORTGAGE GROUP, LLC,

A civil action or proceeding presented for filing must be accompanied by this Certificate. If the ground
is the residence of a party, name and residence shall be stated.

The undersigned declares that the above-entitled matter is filed for proceedings in the
_____ San Bernardino _____ District of the Superior Court under Rule131 and General Order
of this court for the checked reason:

[X]   General          [ ]   Collection
      **Nature of Action**        **Ground**

| | | |
|---|---|---|
| [ ] | 1. Adoption | Petitioner resides within the district. |
| [ ] | 2. Conservator | Petitioner or conservatee resides within the district. |
| [ ] | 3. Contract | Performance in the district is expressly provided for. |
| [ ] | 4. Equity | The cause of action arose within the district. |
| [ ] | 5. Eminent Domain | The property is located within the district. |
| [ ] | 6. Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| [ ] | 7. Guardianship | Petitioner or ward resides within the district or has property within the district. |
| [ ] | 8. Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| [ ] | 9. Mandate | The defendant functions wholly within the district. |
| [ ] | 10. Name Change | The petitioner resides within the district. |
| [ ] | 11. Personal Injury | The injury occurred within the district. |
| [X] | 12. Personal Property | The property is located within the district. |
| [ ] | 13. Probate | Decedent resided or resides within or had property within the district. |
| [ ] | 14. Prohibition | The defendant functions wholly within the district. |
| [ ] | 15. Review | The defendant functions wholly within the district. |
| [ ] | 16. Title to Real Property | The property is located within the district. |
| [ ] | 17. Transferred Action | The lower court is located within the district. |
| [ ] | 18. Unlawful Detainer | The property is located within the district. |
| [ ] | 19. Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| [ ] | 20. Other _____ | |
| [ ] | 21. THIS FILING WOULD | NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this
case for filing in the above-designed district is:
Plaintiff resides in San Bernardino County, and the acts and omissions complained of herein occurred in San
Bernardino County.

NAME – INDICATE TITLE OR OTHER QUALIFYING FACTOR                    ADDRESS
37105 San Bruno Ave
Barstow, CA  92311 (Property Address)
CITY                                        STATE              ZIP CODE

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was
executed on___ June 5, 2020 _____at___ Little Rock, AR _____,

_____
Signature of Attorney/Party

# CIV-200608-CIV-DS2010650-NI-144610



## Scanned Document Coversheet

System Code:    CIV
Case Number:   DS2010650
Case Type:       CIV
Action Code:     NI
Action Date:     06/08/20
Action Time:      2:46
Action Seq:       0010
Printed by:        LARIC

THIS COVERSHEET IS FOR COURT PURPOSES ONLY, AND THIS IS NOT A PART OF THE OFFICIAL RECORD. YOU WILL NOT BE CHARGED FOR THIS PAGE

## Notice Imaged



NEW FILE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

San Bernardino District - Civil
247 West Third Street

San Bernardino, CA. 924150210
------------------------------------------------------------------------
------------------------------------------------------------------------
CASE NO: CIVDS2010650

NOTICE OF TRIAL SETTING CONFERENCE

IN RE: LANGSTON-V-GATEWAY MORTGAGE

THIS CASE HAS BEEN ASSIGNED TO: JANET M FRANGIE IN DEPARTMENT S29
FOR ALL PURPOSES.

Notice is hereby given that the above-entitled case has been set for
Trial Setting Conference at the court located at 247 WEST THIRD STREET
San Bernardino, CA  92415-0210.

HEARING DATE: 12/08/20 at  9:00 in Dept. S29

The Trial Setting Conference will be held in chambers without the
appearance of the parties -except for good cause shown. (see Emergency
Local Rule 411.1).

Parties shall file and serve no later than 15 days prior to the trial
setting conference the mandatory Initial Trial Setting Conference
Statement form (local for #13-09001-360) included with this notice.
Prior to the date of the initial trial setting conference, the court
may entertain a written stipulation by all appearing parties to con-
tinue the initial trial setting conference if filed at least 30 days
prior to the conference.

DATE: 06/18/20  Nancy Eberhardt, Court Executive Officer
By: LASHONDRA RICHARDSON
------------------------------------------------------------------------
------------------------------------------------------------------------
CERTIFICATE OF SERVICE

I am a Deputy Clerk of the Superior Court for the County of San
Bernardino at the above listed address. I am not a party to this
action and on the date and place shown below, I served a copy of the
above listed notice:
( ) Enclosed in a sealed envelope mailed to the interested party
addressed above, for collection and mailing this date, following
standard Court practices.
( ) Enclosed in a sealed envelope, first class postage prepaid in the
U.S. mail at the location shown above, mailed to the interested party
and addressed as shown above, or as shown on the attached listing.
( ) A copy of this notice was given to the filing party at the counter
( ) A copy of this notice was placed in the bin located at this office
and identified as the location for the above law firm's collection of
file stamped documents.

Date of Mailing: 06/18/20
I declare under penalty of perjury that the foregoing is true and
correct. Executed on 06/18/20 at San Bernardino, CA

BY: LASHONDRA RICHARDSON

civ-ntsc-20130417

Notice 'NTSC' has been printed for the following Attorneys/Firms
or Parties for Case Number CIVDS2010650 on  6/18/20:


    CARNEY BATES & PULLIAM, PLLC
    519 W. 7TH STREET
    LITTLE ROCK, AR 72201



## CIV-200716-CIV-DS2010650-PSDD-085802

### Scanned Document Coversheet

System Code:  CIV

Case Number:  DS2010650

Case Type:  CIV

Action Code:  PSDD

Action Date:  07/16/20

Action Time:  8:58

Action Seq:  0002

Printed by:  NSAEN

> THIS COVERSHEET IS FOR COURT PURPOSES ONLY, AND THIS IS NOT A PART OF THE OFFICIAL RECORD. YOU WILL NOT BE CHARGED FOR THIS PAGE

## Proof of Sub-Service of Summons and Comp/Pet as to GATEWAY MORTGAGE GROUP, LLC served on 06/26/20 with fees of $0.00.



NEW FILE

| Attorney or Party without Attorney ( Name, Address and Telephone number)<br>Hank Bates (SBN 167688)<br>hbates@cbplaw.com<br>CARNEY BATES & PULLIAM, PLLC<br>519 W. 7th St.<br>Little Rock, AR, 72201<br>Tel. 501-312-8500 | For Court Use Only |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**<br><br>STREET ADDRESS    247 West Third Street<br>MAILING ADDRESS<br>CITY AND ZIP CODE    San Bernardino, CA 92415-0210<br>BRANCH NAME | **F I L E D**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN BERNARDINO<br>SAN BERNARDINO DISTRICT<br><br>JUL 1 6 2020<br><br>BY _____<br>NICOLE SAENZ, DEPUTY |
| Title of Case (abbreviated)<br><br>Langston v. Gateway Mortgage Group, LLC | |

| **PROOF OF SERVICE BY MAIL** | **CASE NUMBER:** CIV DS 2010650 |
|---|---|

Hearing Date: _____

Time:_____

I am over the age of 18 and not a party to this action.  I am a resident of or employed in the county where the mailing occurred.  My residence or business address is: _____

    519 W. 7th Street, Little Rock, AR  72201

I served a copy of the following documents (list documents):_____

    Class Action Complaint and Summons

by placing a true copy of each document in the United States mail, in a sealed envelope with the postage fully prepaid, as follows:

   a.  Date of deposit: ___6/26/2020___
   b.  Place of deposit (city and state): Little Rock, Arkansas
   c.  Addressed as follows: Corporation Service Company serving as Registered Agent to Gateway Mortgage Group, LLC
            300 Spring Building, Suite 900, Little Rock, AR 72201
At the time of service I was at least 18 years of age and not a party to this cause.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on  (date) July 16, 2020 _____ , at (place) ___Little Rock, AR___

| Hank Bates _____<br>*Type or Print Name* | _____<br>*Signature* |
|---|---|

PROOF OF SERVICE BY MAIL



RECEIVED

JUL 16 2020

SUPERIOR COURT
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

**DOLL AMIR & ELEY LLP**
HUNTER R. ELEY (SBN 224321)
heley@dollamir.com
EVAN M. LADD (SBN 323164)
eladd@dollamir.com
725 S. Figueroa Street, Suite 3275
Los Angeles, California 90017
Tel:  213.542.3380
Fax: 213.542.3381

Attorneys for Defendant,
GATEWAY FIRST BANK
(erroneously named as "Gateway Mortgage Group, LLC")

COPY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

AUG 1 0 2020

BY ~Theresa Hampside~
DEPUTY

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BERNARDINO, SAN BERNARDINO DISTRICT

JENNIFER M. LANGSTON,
on behalf of herself and
all others similarly situated,

                    Plaintiffs,

v.

GATEWAY MORTGAGE GROUP, LLC,

                    Defendant.

Case No. CIVDS2010650

*Assigned to Dept. S29*
*The Hon. Janet M. Frangie*

**STIPULATION AND [~PROPOSED~]
ORDER RE: EXTENSION OF TIME
TO RESPOND TO COMPLAINT**

Complaint Filed:  06/08/2020
Trial Date:         TBA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOLL AMIR & ELEY LLP

STIPULATION AND [PROPOSED] ORDER RE: EXTENSION OF TIME TO RESPOND TO COMPLAINT

Plaintiff Jennifer Langston ("Plaintiff") and Defendant Gateway First Bank, erroneously named in the Complaint as Gateway Mortgage Group, LLC, ("Gateway"), hereby submit this stipulation as follows:

WHEREAS Plaintiff filed a Complaint in this action on June 8, 2020;

WHEREAS Defendant Gateway was served with the Complaint on June 30, 2020, and its original deadline to respond to the Complaint was July 30, 2020;

WHEREAS Plaintiff and Gateway are engaging in ongoing discussions concerning the case and continuing to investigate the factual background of the case;

WHEREAS Plaintiff and Gateway have agreed to a 15-day extension of time, to and including August 14, 2020, for Gateway to file a responsive pleading;

**IT IS HEREBY STIPULATED** by and between the Parties that Gateway will have to and including August 14, 2020 to respond to the Complaint.

DATED: July 29, 2020                    CARNEY BATES & PULLIAM, PLLC

By: Hank Bates /eml, as authorized by 7/29/20 email
HANK BATES
Attorneys for Plaintiff
JENNIFER LANGSTON

DATED: July 29, 2020                    DOLL AMIR & ELEY LLP

By: _____
HUNTER R. ELEY
EVAN M. LADD
Attorneys for Defendant,
GATEWAY FIRST BANK
(erroneously named as "Gateway Mortgage
Group, LLC")

DOLL AMIR & ELEY LLP

2
STIPULATION AND [PROPOSED] ORDER RE: EXTENSION OF TIME TO RESPOND TO COMPLAINT

1

## [~~PROPOSED~~] ORDER

2       Based upon the Parties' stipulation above, and good cause appearing therefore, the Court

3   orders as follows:

4       1.      Defendant Gateway First Bank's deadline to respond to the Complaint is August 14,

5               2020.

6   **IT IS SO ORDERED.**

7

8   Dated: _____AUG 1 0 2020_____        _____JANET M. FRANGIE_____

9                                              Honorable Janet M. Frangie

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOLL AMIR & ELEY LLP

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is **725 S. Figueroa Street, Suite 3275, Los Angeles, California 90017**.

On July 29, 2020, I served the foregoing document described as **STIPULATION AND [PROPOSED] ORDER RE: EXTENSION OF TIME TO RESPOND TO COMPLAINT** on the interested parties in this action by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐  **BY REGULAR MAIL:**  I deposited such envelope in the mail at 725 S. Figueroa Street, Suite 3275, Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐  **BY FACSIMILE MACHINE:**  I transmitted a true copy of said document(s) by facsimile machine, and no error was reported.  Said fax transmission(s) were directed as indicated on the service list.

☐  **BY OVERNIGHT DELIVERY:**  I caused such documents to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressees.  The envelope or package was deposited with delivery fees thereon fully prepaid.

☒  **BY ELECTRONIC MAIL:**  I transmitted a true copy of said document(s) via electronic mail, and no error was reported. Said email was directed as indicated on the service list.

☐  **BY PERSONAL SERVICE:**  I caused such envelope(s) to be delivered by hand to the above addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 29, 2020, at Los Angeles, California.

_Genevieve Fenster_
Genevieve Fenster

DOLL AMIR & ELEY LLP

PROOF OF SERVICE

1

**SERVICE LIST**

2

3   Hank Bates, Esq.
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR 72201

4

T: (501) 312-8500
F: (501) 312-8505
hbates@cbplaw.com

*Attorneys for Plaintiff, Jennifer M. Langston*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

DOLL AMIR & ELEY LLP

# CIV-200811-CIV-DS2010650-ACC-145302



## Scanned Document Coversheet

System Code:   CIV

Case Number:   DS2010650

Case Type:   CIV

Action Code:   ACC

Action Date:   08/11/20

Action Time:   2:53

Action Seq:   0002

Printed by:   JLEAN

THIS COVERSHEET IS FOR COURT PURPOSES ONLY, AND THIS IS NOT A PART OF THE OFFICIAL RECORD. YOU WILL NOT BE CHARGED FOR THIS PAGE

# Amended Complaint Filed -- Amending 1st Amended COMPLAINT (UNLIMITED) of LANGSTON

NEW FILE

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SAN BERNARDINO, SAN BERNARDINO DISTRICT

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

AUG 11 2020

BY _____
JOVANNA LEANDRO, DEPUTY

JENNIFER M. LANGSTON,
on behalf of herself and
all others similarly situated,

               Plaintiffs,

v.

GATEWAY FIRST BANK,
itself and as successor by merger to
GATEWAY MORTGAGE GROUP, LLC,

               Defendant.

CASE NO. CIV-DS-2010650

*Assigned to Dept S29*
*The Hon. Janet M. Frangie*

### AMENDED CLASS ACTION COMPLAINT

    Plaintiff Jennifer M. Langston, on behalf of herself and all others similarly situated, alleges violations of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), violations of the California Unfair Competition Law ("UCL"), and breaches of contract against Gateway First Bank, itself and as successor by merger to Gateway Mortgage Group, LLC ("Defendant" or "Gateway").

    1.    Many borrowers in California struggle enough to make their regular mortgage payments without getting charged extra, illegal fees when they try to pay by phone or online ("Pay-to-Pay fees"). Federal and state debt collection laws strictly prohibit these charges unless expressly agreed to by the borrower in the mortgage contract, but these Pay-to-Pay fees are found nowhere in any standard deed of trust. Here, Gateway charges borrowers between $3.50–$10.00 for making their mortgage payments online or over the phone. On information and belief, only a small fraction of the fee is paid to a third-party payment processor, and Gateway collects the remainder as profit.

               AMENDED CLASS ACTION COMPLAINT

2.      Gateway services mortgages across the country and as such is aware that none of the standard loan agreements it services expressly allow Pay-to-Pay fees as a service fee that Gateway can charge.

3.      Further, Plaintiff's mortgage and those of the putative FHA Pay-to-Pay Class are guaranteed by the Federal Housing Administration ("FHA"). FHA rules and regulations, which are incorporated by reference into FHA-insured mortgages, prohibit FHA servicers, such as Gateway, from charging any fee to the borrower that is not expressly allowed by the Department of Housing and Urban Development ("HUD"). HUD has not authorized the collection of Pay-to-Pay fees. And even for fees that are expressly allowed, FHA rules permit the mortgage servicer to pass along to the borrower only its out-of-pocket costs for providing the services.

4.      Gateway's practice of charging, collecting, and profiting from Pay-to-Pay fees violates the Rosenthal Fair Debt Collection Practices Act, and therefore the California Unfair Competition Law, and breaches the uniform provisions of FHA-insured mortgages.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action because this is a civil action wherein the matter in controversy, exclusive of interests and costs, exceeds the jurisdictional minimum of the Court. The acts and omissions complained of in this action took place, in whole or in part, in the State of California. Defendant's obligations and liabilities all arise in the State of California. This Court has jurisdiction over Defendant because Defendant is registered to conduct business in California—and does indeed conduct business within the County of San Bernardino, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California to render the exercise of jurisdiction by this Court proper and necessary.

6.      Venue is proper in this county pursuant to Code of Civil Procedure § 395 because Plaintiff resides in San Bernardino County, and the acts and omissions complained of herein occurred in San Bernardino County.

AMENDED CLASS ACTION COMPLAINT

**PARTIES**

7.      Plaintiff Jennifer M. Langston is a natural person who is a citizen of the State of California and resides in Barstow, San Bernardino County, California.

8.      Defendant Gateway First Bank is incorporated and has its principal place of business in the State of Oklahoma. On information and belief, based on public statements made by Defendant, Gateway Mortgage Group, LLC, which was also incorporated and had its principal place of business in the State of Oklahoma, merged with Gateway First Bank in May 2019, and the successor entity is Gateway First Bank.

**APPLICABLE LAW**

**ROSENTHAL ACT**

9.      The purpose of the Rosenthal Fair Debt Collection Practices Act, located at Cal. Civ. Code § 1788 *et seq.*, is to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts[.]" Cal. Civ. Code § 1788.1(b). The Rosenthal Act is "a remedial statute [that] should be interpreted broadly in order to effectuate its purpose." *Komarova v. National Credit Acceptance, Inc.*, 95 Cal. Rptr. 3d 880, 892, 175 Cal. App. 4th 324, 340 (Cal. App. 1 Dist. 2009) (quoting *Butler v. Resurgence Financial, LLC*, 521 F. Supp. 2d 1093, 1096 (C.D. Cal. 2007)) (alteration in original). *See also People ex rel. Lungren v. Superior Court,* 14 Cal. 4th 294, 313, 58 Cal. Rptr. 2d 855, 926 P.2d 1042 (Cal. 1996) ("[C]ivil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose.").

10.      The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." Cal. Civ. Code §1788.2(c).

11.      The Rosenthal Act defines a "consumer debt" as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code §1788.2(f).

12.      The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services, or money is acquired

on credit by that natural person from the other person primarily for personal, family, or household purposes." Cal. Civ. Code §1788.2(e).

13. The Rosenthal Act makes it illegal for any entity covered by it to engage in conduct prohibited by provisions of the Fair Debt Collection Practices Act ("FDCPA"). Cal. Civ. Code § 1788.17.

14. Relevant here is the FDCPA's prohibition on employing "unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

15. Such prohibited conduct further includes making "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* at § 1692e.

16. Gateway's past and ongoing collections and attempted collections of Pay-to-Pay fees violate the Rosenthal Act.

**THE UNFAIR COMPETITION LAW**

17. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

18. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

19. Thus, Gateway's violations of the Rosenthal Act and applicable HUD regulations are "unlawful" acts actionable under the UCL.

**FHA SERVICING RULES**

20. The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development ("HUD"), "provides mortgage insurance on

loans made by FHA-approved lenders throughout the United States and its territories."[1] The FHA "is one of the largest insurers of mortgages in the world, insuring more than 46 million mortgages since its inception in 1934."[2]

21.     The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

22.     To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses if a property owner defaults on their mortgage. The lenders bear less risk because FHA will pay a claim to the lender for the unpaid principal balance of a defaulted mortgage."[3]

23.     The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." Ex. B at 3, § III.A.1.

24.     Gateway is an FHA-approved Mortgagee.

25.     As an FHA-approved Mortgagee, during the Class Period, Gateway has "acknowledge[d] that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, Handbooks, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[4]

26.     HUD regulations provide that a "mortgagee may collect reasonable and customary fees and charges from the mortgagor . . . *only as provided below*." 24 C.F.R. § 203.552(a) (emphasis added).

---

[1] HUD.gov – The Federal Housing Administration, https://www.hud.gov/program_offices/housing/fhahistory (last visited on June 4, 2020).
[2] *Id.*
[3] *Id.*
[4] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees, Changes Implemented 8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on June 4, 2020).

27.     A subsection of the regulation provides that the mortgagee may collect "[s]uch other reasonable and customary charges as may be authorized by the Secretary." *Id.* at § 203.552(a)(12).

28.     The Secretary publishes additional authorized fees and charges in the *FHA Single-Family Policy Handbook. See,* Handbook 4000.1: *FHA Single-Family Housing Policy Handbook,* https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed by counsel on June 4, 2020) (the "FHA Handbook").

29.     The FHA Handbook "is a consolidated, consistent, and comprehensive source of FHA Single Family Housing policy" that consolidates "[h]undreds of FHA Handbooks, Mortgagee Letters, Housing Notices, and other policy documents[.]"[5]

30.     In the FHA Handbook, HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration[.]" Ex. B at 3, § III.A.

31.     These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

32.     These provisions are incorporated by reference into the uniform covenants of FHA-insured mortgages.

33.     In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges ***authorized*** by the Secretary [of Housing and Urban Development]." Ex. A at ¶ 13 (emphasis added).

34.     This provision incorporates by reference HUD's limits on allowable fees.

35.     In a section entitled "Servicing Fees and Charges," the FHA Handbook establishes what fees and charges are authorized by the HUD. Ex. B at 5, § III.A.1.f.

36.     Specifically, the HUD Handbook defines "Allowable Fees and Charges a[s] those costs associated with the servicing of the Mortgage that are permitted to be charged to the

---

[5] United States Department of Housing and Urban Development, *Single Family Housing Policy Handbook 4000.1: SF Handbook Information Page,* https://www.hud.gov/program_offices/housing/sfh/handbook_4000-1 (last accessed by counsel on June 4, 2020).

AMENDED CLASS ACTION COMPLAINT

Borrower," and defines "Prohibited Fees and Charges a[s] those costs associated with the servicing of the Mortgage that may not be charged to the Borrower." *Id.* at 5, § III.A.1.f.i.

37.    HUD permits FHA-approved Mortgagees to "collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as ***authorized*** by HUD below." *Id.*, at § III.A.1.f.ii.(A) (emphasis added).

38.    A fee or charge is authorized if it meets three specific criteria: the fee or charge "must be" (a) "reasonable and customary for the local jurisdiction"; (2) "based on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage"; ***and*** (c) "within the maximum amount allowed by HUD." *Id.* at. 5–6, § III.A.1.f.ii.(A) (emphasis added).

39.    Appendix 3.0 of the FHA Handbook contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.[6]

40.    Pay-to-Pay fees are not on that list.

41.    In the absence of HUD authorization, FHA-approved Mortgagees are prohibited by contract from collecting fees and charges associated with servicing an FHA-insured mortgage.

42.    Instead, if an FHA-approved Mortgagee wants authorization to collect additional fees and charges, it "may request approval . . . for any fee, charge, or unusual service not specifically mentioned in this *SF Handbook*." *Id.* at 6, § III.A.1.f.ii.(B).

43.    If the fee or charge is approved, "[t]he Homeownership Center (HOC) will determine the maximum amount of any fee based on what is reasonable and customary in the area." *Id.*

44.    Because Pay-to-Pay fees do not appear on the list of servicing fees and charges and have not been assigned a "maximum amount allowed" based on what HUD deems "reasonable and customary in the area," FHA-approved Mortgagees are prohibited by contract from collecting them from the FHA borrower.

---

[6] In the PDF version of the FHA Handbook, the term "maximum amount allowed by HUD" contains a hyperlink that, when clicked, brings the reader to Appendix 3.0.

45.     Moreover, even were an FHA-approved Mortgagee to receive authorization to charge a Pay-to-Pay fee, the charge to the borrower must still be "based on actual cost of the work performed or actual out-of-pocket expenses"—in short, the servicer cannot collect such fees to create a profit center. *Id.*, at 6, § III.A.1.f.ii.(A).

46.     Based upon information and belief, the Pay-to-Pay fees that Gateway charges borrowers exceed its out-of-pocket costs by several hundred percent, and thus would violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages even if they were authorized, which they are not.

## FACTUAL ALLEGATIONS

47.     On or around January 12, 2017, Plaintiff Jennifer M. Langston executed a Deed of Trust to purchase her home in California. Ex. A.

48.     Since that time, Gateway has collected no less than $147.00 in Pay-to-Pay fees from Ms. Langston in increments of $3.50 and $10.00.

49.     Each time Gateway collected a Pay-to-Pay fee from Ms. Langston, her monthly mortgage payment was past due but within the grace period.

50.     Those fees are not expressly authorized by Ms. Langston's Deed of Trust.

51.     On information and belief, which can be confirmed by an examination of Defendant's records, Gateway pays a third party significantly less than it charges borrowers to process online and phone payment transactions ("Pay-to-Pay transactions").

52.     Gateway's collection of Pay-to-Pay fees is a breach of the Deed of Trust, which does not delineate Pay-to-Pay fees as one of the many charges that the lender, or loan servicer acting on behalf of the lender, may charge. There is simply no provision in the mortgage that allows Gateway to collect Pay-to-Pay fees.

53.     Indeed, Pay-to-Pay fees are prohibited by the Plaintiff's Deed of Trust, which permits Gateway to "collect fees and charges authorized by the Secretary [of Housing and Urban Development]." Ex. A at ¶ 13.

54.     As alleged above, HUD rules do not permit collecting Pay-to-Pay fees. Even if such fees were allowed, HUD rules permit passing along to borrowers only the lender's actual

1  costs for offering the service. By collecting, and profiting from, Pay-to-Pay fees, Gateway

2  breached uniform covenants in Plaintiffs' Deeds of Trust.

3        55.    Gateway's collection of Pay-to-Pay fees is also a direct breach of Paragraph 15 of

4  the Deed of Trust: "This Security Instrument shall be governed by federal law and the law of the

5  jurisdiction in which the Property is located." *Id.,* ¶ 15. Gateway's collection of Pay-to-Pay fees

6  violated the Rosenthal Act and HUD regulations.

7        56.    By violating these provisions of its form contract, Gateway has breached its

8  contract on a class-wide basis.

9        57.    Before filing suit, Ms. Langston provided Gateway written pre-suit notice and a

10  reasonable opportunity to take corrective action.

11  **CLASS REPRESENTATION ALLEGATIONS**

12        58.    Plaintiff brings this action on behalf of the following classes of persons, subject

13  to modification after discovery and case development:

14
15  **The Rosenthal Act Class**

16  All persons (1) who have or had a residential mortgage loan, secured by their
residence in the State of California, (2) that is or was serviced by Gateway, (3) who

17  were charged one or more Pay-to-Pay fee, and (4) whose Security Instrument did
not expressly authorize the collection of a Pay-to-Pay fee.

18
19  **The FHA Pay-to-Pay Class**

20  All persons in the United States(1) with an FHA-insured mortgage (2) originated
or serviced by Gateway (3) who were charged one or more Pay-to-Pay fee and (4)

21  whose mortgages provide the "Lender may collect fees or charges authorized by
the Secretary," or language substantially similar. Specifically excluded from this

22  class definition are persons whose FHA-insured mortgages secure a property in the
State of Texas.

23
24  **The FHA Pay-to-Pay California Subclass**

25  All persons in the United States (1) with an FHA-insured mortgage (2) that secures
a property located in the State of California (3) originated or serviced by Gateway

26  (4) who were charged one or more Pay-to-Pay fee and (5) whose mortgages provide
the "Lender may collect fees or charges authorized by the Secretary," or language

27  substantially similar.

28

---

Page **9** of **16**                                       AMENDED CLASS ACTION COMPLAINT

59.     Members of the Classes are identifiable through Defendant's records and payment databases.

60.     Excluded from the Classes are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

61.     Plaintiff Jennifer Langston proposes that she serve as representative of the Classes.

62.     Plaintiff and members of the Classes have all been harmed by the actions of Defendant.

63.     Numerosity is satisfied. Gateway's servicing records will likely reveal there are hundreds of members of the Classes.  Individual joinder of these persons is impracticable.

64.     There are questions of law and fact common to Plaintiff and to the Classes, including, but not limited to:

    a.   Whether Gateway violated the Rosenthal Act by charging Pay-to-Pay fees not due;

    b.   Whether Gateway violated general provisions of the California Unfair Practices Act (Cal. Bus. & Prof. Code § 17000 *et. seq.*) by charging Pay-to-Pay fees not due;

    c.   Whether Gateway breached its Deeds of Trust by charging Pay-to-Pay fees not due;

    d.   Whether Gateway violated HUD regulations by collecting Pay-to-Pay fees;

    e.   Whether Gateway violated FHA servicing requirements by charging Pay-to-Pay fees;

    f.   Whether Gateway's costs for Pay-to-Pay transactions are less than the amount it charged to Plaintiff and Class members for Pay-to-Pay fees;

    g.   Whether Plaintiff and Class members are entitled to actual damages as a result of Defendant's actions;

h. Whether Plaintiff and Class members are entitled to an injunction and restitution; and

i. Whether Plaintiff and Class members are entitled to attorney's fees and costs.

65. Plaintiff's claims are typical of the claims of members of the Classes. Gateway charged Plaintiff Pay-to-Pay fees in the same manner as the Class members. Gateway entered into a contract with a third party to process the Plaintiff's and Class members' Pay-to-Pay transactions. Plaintiff and members of the Classes entered into uniform covenants in their Deeds of Trust that prohibit Pay-to-Pay fees. Alternatively, if Gateway is allowed under the Deed of Trusts to charge for Pay-to-Pay transactions as a default-related fee, such amounts are capped for Plaintiff and members of the Classes at the actual amounts disbursed by Gateway for processing the Pay-to-Pay transactions.

66. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members the Classes, and she will fairly and adequately protect the interests of the Classes. Plaintiff has taken actions before filing this complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand, as necessary, on behalf of Class members to protect the interests of the Classes.

67. Plaintiff has hired counsel that is skilled and experienced in class actions and is adequate class counsel capable of protecting the interests of the Classes.

68. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

69. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

### COUNT I: VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT § CAL. CIV. CODE §§ 1788 *et seq.*
### (On behalf of the Rosenthal Act Class)

70. Plaintiff incorporates by reference paragraphs 1 through 69.

71. The Rosenthal Act applies to Gateway because it regularly engages in debt collection within California. Cal. Civ. Code § 1788.2(c).

72. Plaintiff Jennifer Langston purchased her home by residential mortgage for personal, family or household use and are persons who incurred a consumer debt. Cal. Civ. Code § 1788.2(e), (f).

73. By collecting Pay-to-Pay fees from Plaintiff and class members, Gateway collected an amount incidental to the principal obligation without the amount being expressly stated in the underlying loan agreement.

74. The Rosenthal Act makes it illegal for any entity covered by it to engage in conduct prohibited by the FDCPA. Cal. Civ. Code § 1788.17. By engaging in such prohibited conduct, Gateway violated the Rosenthal Act.

75. Moreover, by collecting and attempting to collect Pay-to-Pay fees that were not otherwise permitted by law from Plaintiffs and class members, Gateway violated the Rosenthal Act's prohibition against "(b) Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

76. By assessing Pay-to-Pay fees, Gateway represented to Plaintiff and class members that their debts may be increased by the addition of the Pay-to-Pay fees, even though Pay-to-Pay fees may not be legally added to the existing obligation. These representations violated the Rosenthal Act's prohibition against representing that a consumer debt "may be increased by the addition of . . . charges if, in fact, such fees or charges may not legally be added to the existing obligation." Cal. Civ. Code § 1788.13(e).

77. Gateway violated the Rosenthal Act because it retains for itself a portion of the Pay-to-Pay fees it collects from California borrowers.

78. As a result of each and every violation of the Rosenthal Act, Plaintiff Jennifer Langston and members of the Rosenthal Act Class are entitled to recover from Gateway actual damages and reasonable attorney's fees and costs.

**COUNT II: VIOLATION OF THE "UNLAWFUL" PRONG OF THE CALIFORNIA UNFAIR PRACTICES ACT § 17200 *et. seq.* ("UCL")**
**(On behalf of the California Class and California FHA Pay-to-Pay Subclass)**

79.     Plaintiff incorporates by reference paragraphs 1 through 78.

80.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

81.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

82.     The Rosenthal Act applies to Gateway because it regularly engages in debt collection within California. Cal. Civ. Code § 1788.2(c).

83.     Plaintiff purchased her home by residential mortgage for personal, family, or household use and is a person who incurred a consumer debt. Cal. Civ. Code § 1788.2(e), (f).

84.     By collecting Pay-to-Pay fees from Plaintiff and Class members, Gateway collected an amount incidental to the principal obligation without the amount being expressly stated in the underlying loan agreement, in violation of the Rosenthal Act.

85.     The Rosenthal Act makes it illegal for any entity covered by it to engage in conduct prohibited by the federal FDCPA. Cal. Civ. Code § 1788.17. By engaging in such conduct, Gateway violated the Rosenthal Act.

86.     Moreover, by collecting and attempting to collect Pay-to-Pay fees that were not otherwise permitted by law from Plaintiffs and Class members, Gateway violated the Rosenthal Act's prohibition against "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b).

87.     By assessing Pay-to-Pay fees, Gateway represented to Plaintiff and Class members that their debts may be increased by the addition of the Pay-to-Pay fees, even though Pay-to-Pay fees may not be legally added to the existing obligation.  These representations violated the Rosenthal Act's prohibition against representing that a consumer debt "may be

1   increased by the addition of . . . charges if, in fact, such fees or charges may not legally be added

2   to the existing obligation." Cal. Civ. Code § 1788.13(e).

3        88.    Gateway violated the Rosenthal Act because it retains for itself a portion of the

4   Pay-to-Pay fees it collects from California borrowers.

5        89.    As described in detail above, Gateway's conduct described herein violates the

6   Rosenthal Act. These violations are sufficient to support Plaintiff's claim under the "unlawful"

7   prong of the UCL.

8        90.    Additionally, because the Secretary of Housing and Urban Development has not

9   authorized Pay-to-Pay fees, Gateway has violated 24 C.F.R. § 203.552(a)(12) with respect to

10   borrowers with FHA-insured mortgages.

11        91.    Gateway's violations of this regulation, too, are actionable under the "unlawful"

12   prong of the UCL.

13        92.    Through its ongoing unlawful acts and practices, Gateway has improperly

14   obtained, and continues to improperly obtain, money from Plaintiff and the Class members. As

15   such, Plaintiff requests that the Court cause Gateway to restore the money for Pay-to-Pay fees

16   Plaintiff and members of the Classes paid to Gateway and to enjoin Gateway from continuing its

17   unlawful practices in the future. Otherwise, Plaintiff and the Class members may be irreparably

18   harmed and/or denied an effective and complete remedy if such an order is not granted.

19                     **COUNT III: BREACH OF CONTRACT**

20                   **(On behalf of the FHA Pay-to-Pay Class)**

21        93.    Plaintiffs incorporate by reference paragraphs 1 through 92.

22        94.    On or about January 12, 2017, Gateway and Ms. Langston entered into a Deed of

23   Trust with respect to her home.

24        95.    Gateway's collection of Pay-to-Pay fees violates servicing rules for FHA-insured

25   loans, which are incorporated by reference in Paragraph 13 of Ms. Langston's standard FHA-

26   insured Deed of Trust. HUD rules prohibit charging Pay-to-Pay fees.

27        96.    Even if such fees were permitted, which they are not, HUD rules would limit

28   Gateway to passing along only their out-of-pocket costs for providing such services. Gateway's

1  collecting, and profiting from, Pay-to-Pay fees breaches Plaintiffs' standard FHA-insured Deed

2  of Trust. Moreover, Gateway's collection of Pay-to-Pay fees is a direct breach of Paragraph 15

3  of Ms. Langston's Deed of Trust: "This Security Instrument shall be governed by Federal law

4  and the law of the jurisdiction in which the Property is located." Ex. A, ¶ 15. As pleaded above,

5  the Rosenthal Act prohibits the collection of any amount incidental to the principle obligation

6  unless that amount is *expressly* stated in the loan agreement.  Gateway's collection of Pay-to-Pay

7  fees violated the Rosenthal Act.

8       97.    Because these provisions are contained in the "Uniform Covenants" section,

9  Gateway has breached its contract on a class-wide basis.

10       98.    The Plaintiff and members of the FHA Pay-to-Pay Class have been harmed by

11  these breaches in that they have paid fees that Gateway was prohibited from collecting.

**JURY DEMAND**

13       99.    Plaintiff is entitled to and respectfully demands a trial by jury on all issues so

14  triable.

**RELIEF REQUESTED**

16       WHEREFORE, Plaintiff Jennifer M. Langston respectfully requests this Court

17  enter judgment against Defendant and order the following:

18       a.    That the Court certify the classes as defined herein and appoint Plaintiff as Class

19           Representatives and Plaintiff's counsel as class counsel;

20       b.    That Plaintiff and all Class members be awarded actual damages, including but

21           not limited to all fees improperly charged, and forgiveness of all amounts not

22           properly owed;

23       c.    That Gateway restore to the Plaintiff and all Class members monies it improperly

24           collected in Pay-to-Pay fees;

25       d.    That the Court enjoin Defendant from further violations of California law by

26           charging illegal Pay-to-Pay fees to Plaintiff, Class members, and the public;

27       e.    That Plaintiff and Class members be awarded costs and attorney's fees;

28

f.   That the Court enter an order that Defendant and its agents, or anyone acting on its behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

g.   That the Court certify this action as a class action under Cal. Code Civ. Proc. § 382, appoint Plaintiff as representative of the Classes, and appoint her counsel as class counsel; and

h.   Such other and further relief as the Court may deem just and proper.

Dated: August 11, 2020                    Respectfully Submitted,

                                          /s/ Hank Bates
                                          Hank Bates (SBN 167688)
                                          hbates@cbplaw.com
                                          CARNEY BATES & PULLIAM, PLLC
                                          519 W. 7th St.
                                          Little Rock, AR, 72201
                                          Tel. 501-312-8500
                                          Fax 501-312-8505

## PROOF OF SERVICE BY EMAIL

I am a citizen of the United States and employed in Little Rock, Arkansas. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 519 West 7th Street, Little Rock, Arkansas 72201.

I am readily familiar with Carney Bates & Pulliam, PLLC's practice for collection and processing of documents for service via email, and that practice is that the documents are attached to an email and sent to the recipient's email account.

On August 11, 2020, I caused to be served copies of the foregoing **AMENDED CLASS ACTION COMPLAINT** on the following counsel for Defendant Gateway First Bank:

Hunter R. Eley
heley@dollamir.com
Evan M. Ladd
eladd@dollamir.com
**DOLL AMIR & ELEY, LLP**
725 S. Figuerpa Street, Suite3275
Los Angeles, CA  90017

Executed on August 11, 2020

_/s/ Lee Lowther_
LEE LOWTHER

PROOF OF SERVICE BY EMAIL

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN BERNARDINO, SAN BERNARDINO DISTRICT**

JENNIFER M. LANGSTON,
on behalf of herself and
all others similarly situated,

           Plaintiffs,

v.

GATEWAY FIRST BANK,
itself and as successor by merger to
GATEWAY MORTGAGE GROUP, LLC,

           Defendant.

CASE NO. CIV-DS-2010650

*Assigned to Dept S29*
*The Hon. Janet M. Frangie*

**NOTICE OF ERRATA REGARDING**
**AMENDED CLASS ACTION COMPLAINT**

**TO THE COURT AND ALL COUNSEL OF RECORD FOR ALL PARTIES:**

**PLEASE TAKE NOTICE** that Jennifer Langston, Plaintiff, hereby respectfully submits
this Notice of Errata in the Amended Class Action Complaint.

Due to an oversight, Exhibit A and Exhibit B were omitted as attachments to the Amended
Class Action Complaint submitted to the Superior Court for the County of San Bernardino for
filing on August 11, 2020.  Exhibit A and Exhibit B to the Amended Class Action Complaint are
attached hereto.

Dated: August 11, 2020

Respectfully Submitted,

*/s/ Hank Bates*
Hank Bates (SBN 167688)
hbates@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR, 72201
Tel. 501-312-8500
Fax 501-312-8505

**PROOF OF SERVICE BY EMAIL**

I am a citizen of the United States and employed in Little Rock, Arkansas. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 519 West 7th Street, Little Rock, Arkansas 72201.

I am readily familiar with Carney Bates & Pulliam, PLLC's practice for collection and processing of documents for service via email, and that practice is that the documents are attached to an email and sent to the recipient's email account.

On August 11, 2020, I caused to be served copies of the foregoing **NOTICE OF ERRATA REGARDING AMENDED CLASS ACTION COMPLAINT** on the following counsel for Defendant Gateway First Bank:

Hunter R. Eley
heley@dollamir.com
Evan M. Ladd
eladd@dollamir.com
**DOLL AMIR & ELEY, LLP**
725 S. Figuerpa Street, Suite3275
Los Angeles, CA  90017

Executed on August 11, 2020

_/s/ Lee Lowther_____
LEE LOWTHER

# EXHIBIT A

Recording requested by
Stewart Title of California, Inc.

WHEN RECORDED, MAIL TO:
Gateway Mortgage Group, LLC
244 South Gateway Place
Jenks, OKLAHOMA 74037-3448

This instrument was prepared by:
Gateway Mortgage Group, LLC
244 South Gateway Place
Jenks, OKLAHOMA 74037-3448
877-406-8109

Assessor's Identification Number:
0426-233-010000
NMLS# 7233 ; Originator: Bonnie ViolaHughes,
NMLS# 256537
Loan Number: 13126125

Electronically Recorded in Official Records, County of San Bernardino   1/13/2017 11:51 AM CG



**BOB DUTTON**
ASSESSOR - RECORDER - CLERK
683  Stewart Title Company

Doc #: **2017-0018731**     Titles:  **1**     Pages:  **11**



| Fees | 45.00 |
| Taxes | .00 |
| Other | .00 |
| PAID | 45.00 |

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# DEED OF TRUST

FHA Case Number:
**048-9353038-703**

Property Address: **37105 San Bruno Ave, Barstow, CALIFORNIA 92311**

MIN: **100287715001228993**
SIS Telephone #: **(888) 679-MERS**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **January 12, 2017**, together with all Riders to this document.

**(B) "Borrower"** is **Jennifer M Langston an unmarried woman**. Borrower's address is **37105 San Bruno Ave, Barstow, CALIFORNIA 92311**. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is Gateway Mortgage Group, LLC, organized and existing under the laws of **Oklahoma**.
Lender's address is 244 South Gateway Place, Jenks, OKLAHOMA 74037-3448.

**(D) "Trustee"** is **Fidelity National Title Company**
Trustee's address is **17911 Von Karman Ave., Ste 300, Irvine, Orange County,CALIFORNIA 92614**.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of **Delaware**, and has an address and telephone of **P.O. Box 2026, Flint, MI 48501-2026**, tel. **(888) 679-MERS**.

**(F) "Note"** means the promissory note signed by Borrower and dated **January 12, 2017**. The Note states that Borrower owes Lender **ONE HUNDRED TWENTY-TWO THOUSAND SEVEN HUNDRED THIRTY-FIVE AND NO/100** Dollars (U.S. **$122,735.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **February 1, 2047**.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

FHA CALIFORNIA Deed of Trust with MERS

IDS, Inc. - 59422

Page 1 of 10

1/2015

Borrower(s) Initials ___JML___



**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider          ☐ Planned Unit Development Rider
☐ Other(s) [specify]:

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **San Bernardino:**

**Lot 38, of Tract No. 4280, in the County of San Bernardino, State of California, as shown by Map of file in Book 79, Pages 97 and 98, inclusive of Maps, Records of San Bernardino County, California.**

which currently has the address of   **37105 San Bruno Ave**
                                      **Barstow, CALIFORNIA 92311,** ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

---

FHA CALIFORNIA Deed of Trust with MERS                                                         1/2015

IDS, Inc. - 59422

Page 2 of 10

Borrower(s) Initials  SML



BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

---



Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or





destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing

---

FHA CALIFORNIA Deed of Trust with MERS

IOS, Inc. - 59422

Page 5 of 10

1/2015

Borrower(s) Initials _JML_



and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments



from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

---

FHA CALIFORNIA Deed of Trust with MERS

IDS, Inc. - 59422

Page 7 of 10

1/2015

Borrower(s) Initials  JML

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).





Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

---



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____  -Witness                    _____  -Witness

_____  (Seal)                       _____  (Seal)
Jennifer M Langston                          -Borrower                                                                -Borrower

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of CALIFORNIA**
**County of San Bernardino**                                          } ss.

On January 12, 2017 _____ before me, Belen Torrez _____ a notary public, personally appeared
**Jennifer M Langston**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature  Belen Torrez _____

(Seal)

> **Belen Torrez**
> COMM. #2172333
> NOTARY PUBLIC - CALIFORNIA
> SAN BERNARDINO COUNTY
> My Comm. Expires Nov. 18, 2020

Loan originator (organization): **Gateway Mortgage Group, LLC**; NMLS #: **7233**
Loan originator (individual): **Bonnie ViolaHughes**; NMLS #: **256537**

FHA CALIFORNIA Deed of Trust with MERS                                                                          1/2015

IDS, Inc. - 59422                                    Page 10 of 10



ILLEGIBLE NOTARY SEAL DECLARATION (GOVERNMENT CODE 27361.7)

I certify under penalty of perjury that the notary seal on this document to which this statement is attached reads as follows:

Name of Notary:                    Belen Torrez

Date Commission Expires:           November 18, 2020

Principal Office (County):         San Bernardino

Notary Commission Number:     2172333

Manufacturer Identification Number:   HDL 2

Place of Execution of this Declaration:  Riverside

Date:          January 13, 2017

Stewart Title of California, Inc.

Kris Y. Gonzalez

# EXHIBIT B



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-8000

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

---

**Special Attention of:**                                    **Transmittal:** Handbook 4000.1
All FHA Approved Mortgagees                          **Issued:** August 14, 2019
All Direct Endorsement Underwriters               **Effective Date:** October 15, 2019
All Eligible Submission Sources
      for Condominium Project Approvals
All FHA Roster Appraisers
All FHA Approved 203(k) Consultants
All HUD Approved Housing Counselors
All HUD Approved Nonprofit Organizations
All Governmental Entity Participants
All Real Estate Brokers
All Closing Agents

---

## 1. This Transmits:

Handbook 4000.1, FHA Single Family Housing Policy Handbook, Condominium Project
Approval content.

 

---

Brian D. Montgomery
Assistant Secretary for Housing – Federal Housing Commissioner

Case 5:20-cv-01902-VAP-KK   Document 1-2   Filed 09/14/20   Page 98 of 108   Page ID #:122

III. SERVICING AND LOSS MITIGATION
A.  Title II Insured Housing Programs Forward Mortgages
1.   Servicing of FHA-Insured Mortgages

# III.   SERVICING AND LOSS MITIGATION

## A.  TITLE II INSURED HOUSING PROGRAMS FORWARD MORTGAGES

This section provides the standards and procedures applicable to the servicing of all Single Family (one to four units) Mortgages insured under Title II of the National Housing Act, except for Home Equity Conversion Mortgages (HECM). The Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration (FHA).

## 1.  Servicing of FHA-Insured Mortgages

Only FHA-approved Mortgagees may service FHA-insured Mortgages. Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees.

### a.  Servicing in Compliance with Law

#### i.  Definition

The Mortgage Holder is the Entity who holds title to the FHA-insured Mortgage and has the right to enforce the mortgage agreement.

The Mortgage Servicer is the Entity responsible for performing servicing actions on FHA-insured Mortgages on its behalf or on behalf of or at the direction of another FHA-approved Mortgagee.

#### ii.  Standard

Holders must ensure all FHA-insured Mortgages are serviced by a Servicer in accordance with FHA requirements and all applicable laws.

Servicers must service all FHA-insured Mortgages in accordance with FHA requirements and all applicable laws.

##### (A) Laws Applicable to Mortgage Servicing Generally

Mortgagees must comply with all laws, rules, and requirements applicable to mortgage servicing, including full compliance with the applicable requirements under the purview of the Consumer Financial Protection Bureau (CFPB), including the Real Estate Settlement Procedure Act (RESPA) and the Truth in Lending Act (TILA).

FHA requirements that are more stringent or restrictive than those provided for in applicable law are set forth in this *SF Handbook* and the Mortgagee must comply with these requirements.

Case 5:20-cv-01902-VAP-KK   Document 1-2   Filed 09/14/20   Page 99 of 108   Page ID #:123

III. SERVICING AND LOSS MITIGATION
A.  Title II Insured Housing Programs Forward Mortgages
1.   Servicing of FHA-Insured Mortgages

### (B) Contract Terms

Where mortgage contract terms are more stringent or restrictive than those provided for in applicable law, the Mortgagee must comply with the mortgage contract terms.

### (C) Nondiscrimination Policy

Mortgagees must comply with all antidiscrimination laws, rules, and requirements applicable to servicing performing FHA-insured Mortgages and FHA-insured Mortgages in Default, including full compliance with the applicable requirements of:

- Title VIII of the Civil Rights Act of 1968 (Fair Housing Act);
- the Fair Credit Reporting Act, Public Law 91-508; and
- the Equal Credit Opportunity Act (ECOA), Public Law 94-239 and 12 CFR Part 202.

The Mortgagee must make all determinations with respect to the adequacy of the Borrower's income in a uniform manner without regard to race, color, religion, sex, national origin, familial status, handicap, marital status, actual or perceived sexual orientation, gender identity, source of income of the Borrower, or location of the Property.

## b.  Responsibility for Servicing Actions

Holders are responsible for all servicing actions, including the acts of its Servicers.

Servicers are responsible for their actions in servicing FHA-insured Mortgages, including actions taken on behalf or at the direction of the Holder.

The costs associated with subservicing may not be imposed on the Borrower or passed along to HUD in a claim for mortgage insurance benefits.

### i.  Responsibility during Transfers of Servicing Rights

#### (A) Definitions

The Transferor Servicing Mortgagee is the Mortgagee that transfers servicing responsibilities.

The Transferee Servicing Mortgagee is the Mortgagee to which the servicing responsibilities have been transferred.

The Transfer Date is the date on which the Borrower's Mortgage Payment is first due to the Transferee Servicing Mortgagee.

Case 5:20-cv-01902-VAP-KK   Document 1-2   Filed 09/14/20   Page 100 of 108   Page ID #:124

III. SERVICING AND LOSS MITIGATION
A.   Title II Insured Housing Programs Forward Mortgages
1.   Servicing of FHA-Insured Mortgages

### (c) Installment Due Date Falls on a Non-Business Day

When the Installment Due Date falls on a non-business day, the Mortgagee must consider a Borrower's Notice of Intent to Prepay or the receipt of the prepayment amount for a Mortgage closed before January 21, 2015 timely if received on the next business day.

### (3) Payoff Disclosure Requirements

When notified of the Borrower's intent to prepay, the Mortgagee must send the Payoff Disclosure and copy of the payoff statement directly to the Borrower, even if the Mortgagee is dealing with an Authorized Third Party.

The Mortgagee will forfeit any interest collected after the date of prepayment if these disclosure requirements are not met.

### (D) Trustee's Fee for Satisfactions

If specifically provided for in the security instrument, the Mortgagee may charge the Borrower the amount of the trustee's fee, plus any reasonable and customary fee for payment, or for the execution of a satisfaction, release or trustee's deed when the debt is paid in full.

### (E) Recording Fees for Satisfactions

The Mortgagee may charge the Borrower a reasonable and customary fee for recording satisfactions in states where recordation is not the responsibility of the Mortgagee.

## f.  Servicing Fees and Charges

### i.  Definition

Allowable Fees and Charges are those costs associated with the servicing of the Mortgage that are permitted to be charged to the Borrower.

Prohibited Fees and Charges are those costs associated with the servicing of the Mortgage that may not be charged to the Borrower.

### ii.  Standard

### (A) Reasonable and Customary Fees and Charges

The Mortgagee may collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as authorized by HUD below. All fees must be:
- reasonable and customary for the local jurisdiction;

- based on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage; and
- within the maximum amount allowed by HUD.

### (B) Requests for Approval for Other Fees or Charges

The Mortgagee may request approval from the National Servicing Center (NSC) for any fee, charge, or unusual service not specifically mentioned in this *SF Handbook*. The Homeownership Center (HOC) will determine the maximum amount of any fee based on what is reasonable and customary in the area.

### (C) Prohibited Fees and Charges

The Mortgagee must not charge the Borrower for the following services:
- costs of telephone calls, telegrams, personal visits with the Borrower, certified mail, or other activities that are normally considered a part of a prudent Mortgagee's servicing activity;
- Mortgagee's use of an independent contractor such as a tax service to furnish tax data and information necessary to pay property taxes or make the payments on behalf of the Mortgagee;
- preparing and providing evidence of Payoff, Reconveyance, or termination of the Mortgage;
- providing information essential to the Payoff;
- recording the Payoff of the Mortgage in states where recordation is the responsibility of the Mortgagee; or
- fees for services performed by attorneys or trustees who are salaried members of the Mortgagee's staff.

### iii.  Required Documentation

The Mortgagee must include in the servicing file:
- documentation of the amount of any fees and charges paid or payable by the Borrower; and
- documentation supporting the actual cost of any work performed or out-of-pocket expenses.

### g.  Escrow

### i.  Definition

An Escrow Account is a set of funds collected by the Mortgagee for payment of taxes, insurance, and other items required by the mortgage Note.

Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)

## APPENDIX 3.0 – POST-ENDORSEMENT FEES AND CHARGES BY HOC (APPLIES TO SERVICING ONLY)

### Philadelphia HOC

| Type of Service | CT | DE | DC | ME | MD | MA | MI | NH | NJ | NY |
|---|---|---|---|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Returned Check* | $25 | $15 | $15 | $25 | $15 | $25 | $20 | $25 | $20 | $20 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $100 | $110 | $110 | $100 | $110 | $100 | $150 | $100 | $100 | $100 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |

* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.

**other than the statement or schedule provided at closing

*** after two payoff statements have been provided free of charge for the calendar year

Handbook 4000.1

Effective Date: 03/14/2016 | Last Revised: 08/14/2019

*Refer to the online version of SF Handbook 4000.1 for specific sections' effective dates

1032

Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)

| Type of Service | OH | PA | RI | VT | VA | WV |
|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy* | $10 | $10 | $10 | $10 | $10 | $10 |
| Returned Check* | $20 | $15 | $25 | $25 | $15 | $15 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $100 | $110 | $100 | $100 | $110 | $110 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 |

* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
**other than the statement or schedule provided at closing
*** after two payoff statements have been provided free of charge for the calendar year

Handbook 4000.1
Effective Date: 03/14/2016 | Last Revised: 08/14/2019
*Refer to the online version of SF Handbook 4000.1 for specific sections' effective dates

1033

Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)

## Atlanta HOC

| Type of Service | AL | FL | GA | KY | IL | IN | MS | NC | PR | SC |
|---|---|---|---|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $10 | $15 | $10 | $10 | $10 | $10 | $7.50 | $7.50 | $10 | $15 |
| Returned Check* | $10 | $20 | $15 | $15 | $20 | $25 | $15 | $15 | $10 | $20 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $100 | $100 | $125 | $100 | $100 | $100 | $100 | $150 | $100 | $100 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |

* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
**other than the statement or schedule provided at closing
*** after two payoff statements have been provided free of charge for the calendar year
*Refer to the online version of SF Handbook 4000.1 for specific sections' effective dates

**Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)**

| Type of Service | TN | VI |
|---|---|---|
| Substitution of Hazard Insurance Policy | $7.50 | $10 |
| Returned Check* | $20 | $10 |
| Modification of performing Mortgage | $50 | $50 |
| Modification of the mortgaged Property | $150 | $100 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 |
| Replacement Coupon Books | $5 | $5 |
| Verification of Mortgage | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 |

\* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
\*\*other than the statement or schedule provided at closing
\*\*\* after two payoff statements have been provided free of charge for the calendar year

Handbook 4000.1
Effective Date: 03/14/2016 | Last Revised: 08/14/2019
\*Refer to the online version of SF Handbook 4000.1 for specific sections' effective dates

1035

Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)

**Denver HOC**

| Type of Service | AR | CO | IA | KS | LA | MO | MN | MT | NE | NM |
|---|---|---|---|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $10 | $10.50 | $10 | $10 | $10 | $10 | $10 | $10.50 | $10 | $10 |
| Returned Check* | $25 | $15 | $15 | $15 | $25 | $15 | $20 | $15 | $15 | $15 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $110 | $100 | $100 | $100 | $110 | $100 | $100 | $100 | $100 | $110 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |

\* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
\*\*other than the statement or schedule provided at closing
\*\*\* after two payoff statements have been provided free of charge for the calendar year
\*Refer to the online version of SF Handbook 4000.1 for specific sections' effective dates

Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)

| Type of Service | ND | OK | SD | TX | WI | WY | UT |
|---|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $10.50 | $10 | $10.50 | $10 | $10 | $10.50 | $10.50 |
| Returned Check* | $15 | $25 | $15 | $25 | $20 | $15 | $15 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $100 | $110 | $100 | $110 | $100 | $100 | $100 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 | $10 |

* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
**other than the statement or schedule provided at closing
*** after two payoff statements have been provided free of charge for the calendar year

Handbook 4000.1
Effective Date: 03/14/2016 | Last Revised: 08/14/2019
*Refer to the online version of SF Handbook 4000.1 for specific sections' effective dates

1037

Appendix 3.0 – Post-Endorsement Fees and Charges by HOC (Applies to Servicing Only)

## Santa Ana HOC

| Type of Service | AK | AZ | CA | HI | ID | NV | OR | WA | Pacific Islands |
|---|---|---|---|---|---|---|---|---|---|
| Substitution of Hazard Insurance Policy | $15 | $10 | $10 | $10 | $15 | $10 | $15 | $15 | $10 |
| Returned Check* | $15 | $15 | $15 | $15 | $20 | $15 | $15 | $15 | $15 |
| Modification of performing Mortgage | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Modification of the mortgaged Property | $125 | $100 | $100 | $100 | $125 | $100 | $125 | $125 | $100 |
| Incorporating a Borrower's name change into the Servicer's loan system | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Re-analyzing escrow accounts and providing new coupon books | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Copy of Mortgage Note | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Closing Disclosure** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |
| Copy of Amortization Schedule** | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 | $15 |
| Replacement Coupon Books | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Verification of Mortgage | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 | $20 |
| Copy of Year-End Statement | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Transmittal of Payoff Statement via Facsimile | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 | $5 |
| Additional Payoff Statements*** | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 | $10 |

* Unless prohibited by the Borrower's bank, the Mortgagee must present the check for payment twice before it can be deemed "uncollectible" when returned unpaid.
**other than the statement or schedule provided at closing
*** after two payoff statements have been provided free of charge for the calendar year

Handbook 4000.1
Effective Date: 03/14/2016 | Last Revised: 08/14/2019
*Refer to the online version of SF Handbook 4000.1 for specific sections' effective dates

1038