**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Jennifer M. Langston,

Plaintiff,

v.

Gateway Mortgage Group, LLC,

Defendant.

Case No. 5:20-cv-01902-VAP-(KKx)

**Order GRANTING
Motion for Preliminary Approval
of Class Action Settlement
(Doc. No. 43)**

Plaintiff Jennifer Langston ("Langston") filed a Motion for Preliminary Approval of Class Action Settlement ("Motion") on February 22, 2022. (Doc. No. 43.) Defendant Gateway First Bank ("Gateway"), on behalf of itself and as successor by merger to Gateway Mortgage Group, LLC, filed no opposition.

Having considered the papers filed in support of the Motion, the Court deems this matter appropriate for resolution without oral argument of counsel pursuant to Local Rule 7-15 and **GRANTS** the Motion.

## I.    BACKGROUND

### A.    Procedural History

In 2017, Langston obtained a residential loan from Gateway, secured by a Deed of Trust, to purchase a house in Barstow, California. (Compl., Doc. No. 1-2 ¶ 47.) Langston paid a monthly mortgage to Gateway, and

some payments occurred during the allowable "grace period" between the time payment is due and a late fee is assessed.  (*Id.* ¶ 49.)  In connection with these "grace period" payments, Gateway charged Langston a "Pay-to-Pay fee," a charge ranging from $3.50 to $10.00, incurred when a borrower pays her mortgage payment online or by phone.  (*Id.* ¶ 1.)  Langston contends that the fees are more than the actual costs incurred by Gateway in connection with the payment transactions.  (*Id.*)  Langston paid at least $147.00 in Pay-to-Pay fees to Gateway.  (*Id.* ¶ 48.)

On June 8, 2020, Langston filed a Class Action Complaint in the San Bernardino Superior Court.  (Doc. No. 1.)  She filed an Amended Complaint ("Compl") on August 11, 2020.  In her Amended Complaint, Langston alleges that Gateway's Pay-to-Pay fees violate California law, specifically the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), and the California Unfair Competition Law ("UCL"), and also constitute a breach of the Deed of Trust.  (Compl.)  Gateway removed the action to this Court on September 14, 2020.  (Doc. No. 1.)

The parties engaged in written discovery and participated in one, full-day mediation session before Honorable Lisa Cole (Ret.) on August 30, 2021.  (Motion at 4.)  Although unable to resolve the case at mediation, the parties eventually reached a resolution and memorialized their agreement in a Memorandum of Understanding.  (*Id.*)  Over the course of several weeks thereafter, the parties drafted the Settlement Agreement currently before the Court.  (*Id.*)

United States District Court
Central District of California

**B.     Settlement Class**

The proposed Settlement Class is defined as:

All persons who (1) were borrowers on residential mortgage loans on properties in the United States whose loans were serviced by Gateway, and (2) paid a fee to Gateway for making a loan payment by telephone, IVR, or the internet, from June 8, 2016, through the date on which the Court enters an order granting preliminary approval of the Parties' Settlement Agreement.

(*Id.*)  The proposed class consists of approximately 69,134 unique loans who paid Pay-to-Pay fees (or "Convenience Fees").  (*Id.* at 17).

**C.     Settlement Terms**

The parties prepared a joint settlement agreement ("Settlement Agreement" or "SA").  (Doc. No. 45.)  The Settlement Agreement establishes a $1,175,000 gross settlement fund.  (*Id.* § IV.A.)  There is no claims process under the Settlement Agreement.  Instead, Class Members will receive monetary benefits on a *pro rata* basis, based on the amount of Convenience Fees paid by each Settlement Class Member during the Class Period.  (*Id.* § IV.B.)  Settlement Class Members will be responsible for distributing monetary benefits among all co-account holders.  (*Id.*)

Settlement payments will be mailed by check within 30 days of final approval of the settlement.  (*Id.*)  Class Members may negotiate settlement payments for 90 calendar days after the date of issuance.  (*Id.*)  Class

United States District Court
Central District of California

United States District Court
Central District of California

members also may request exclusion from the settlement and object to the settlement.  (*Id.* § VII.)  If issued, after 180 days from the date of issuance of the settlement payments, any remaining funds shall be distributed to Class Members through a secondary distribution.  (*Id.* § IV.B.)  If the remaining funds are so minimal that a secondary distribution would be impracticable, or if any money remains after a secondary distribution, the net settlement fund will be distributed to Habitat for Humanity under the *Cy Pres* doctrine. (*Id.*)

Gateway also will cease charging Convenience Fees to all borrowers. (*Id.* § IV.C.)  Gateway shall refrain from charging or collecting Convenience Fees from borrowers for a period of at least one year after entry of the Final Approval Order.  (*Id.*)

The Settlement Agreement entitles Plaintiff Langston to a Service Award of up to $5,000.  (*Id.* § IV.D.)  Class Counsel may seek up to 25 percent of the settlement fund for attorneys' fees.  (*Id.*, § IV.E.)

Finally, Plaintiff Langston and Settlement Class Members release any future related claims against Gateway.  (*Id.* § V.)

**D.    Notice Procedures**

Within thirty days of preliminary approval, Gateway will provide the Settlement Administrator the Settlement Class Member List.  (*Id.* § VI.) Within thirty days of receiving the Class Member List, the Settlement Administrator will provide notice to the Settlement Class through mail and

email.  (Exs. A1-A2, SA.)  The Settlement Administrator will perform skip tracing for any returned mail.  (*Id.* § VI.)  The Settlement Administrator also will establish the Settlement Website containing:

> "(1) the Mailed Notice in downloadable PDF format in both English and Spanish; (2) a contact information page with contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel and Defendant's Counsel; (3) the Settlement Agreement; (4) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (5) the operative complaint in the Action; and (6) when they become available, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof."

(*Id.*)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008).  The Court's

United States District Court
Central District of California

1  review of the settlement is meant to be "extremely limited" and should

2  consider the settlement as a whole.  *Hanlon v. Chrysler Corp.*, 150 F.3d

3  1011, 1026 (9th Cir. 1998).

4

5      At the preliminary approval stage, the Court need only consider

6  whether the proposed settlement: "(1) appears to be the product of serious,

7  informed, non-collusive negotiations; (2) has no obvious deficiencies; (3)

8  does not improperly grant preferential treatment to class representatives or

9  segments of the class; and (4) falls within the range of possible approval."

10  *Harris v. Vector Mktg. Corp.*, No. 08-05198, 2011 WL 1627973, at *7 (N.D.

11  Cal. Apr. 29, 2011); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. 15-

12  01551, 2016 WL 7479380, at *8 (C.D. Cal. Sept. 12, 2016) ("At the

13  Preliminary Approval phase, the Court need only decide whether the

14  settlement is potentially fair."); *In re Tableware Antitrust Litig.*, 484 F. Supp.

15  2d 1078, 1079 (N.D. Cal. Apr. 12, 2007) (citing Federal Judicial Center,

16  Manual for Complex Litigation § 30.44 (2d ed. 1985)).

17

18            **III.**    **DISCUSSION**

19  **A.**   **Class Certification**

20      Under Rule 23(e)(1), as amended December 1, 2018, the Court must

21  direct notice to the class of a class action settlement upon determining that

22  notice is justified because the Court concludes it will likely be able to

23  approve the settlement and certify the class for purposes of judgment on the

24  settlement. When a plaintiff seeks conditional class certification for purposes

25  of settlement, the court must ensure that the four requirements of Federal

26  Rule of Civil Procedure 23(a) and at least one of the requirements of Rule

23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co*., 327 F.3d 938, 952-53 (9th Cir. 2003).

Under Rule 23(a), the plaintiff must show the class is: sufficiently numerous; there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of those of the class; and the representative parties will fairly and adequately protect the class' interests.  Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes.

Here, Langston seeks certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) allows certification where: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  (Motion at 17.)

### 1.    Rule 23(a) Requirements

#### i.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *In re Cooper Cos. Inc. Sec. Litig*., 254 F.R.D. 628, 634 (C.D. Cal. Jan. 5, 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C*., 446 U.S. 318, 330 (1980)).  "As a general matter, courts have found that numerosity is satisfied when [the] class size exceeds 40 members."  *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc*.,

United States District Court
Central District of California

7

311 F.R.D. 590, 602-03 (C.D. Cal. Nov. 16, 2015); *see Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 473-74 (C.D. Cal. Dec. 20, 2012). Additionally, it is not necessary to state the exact number of class members when the plaintiff's allegations "plainly suffice" to satisfy the numerosity requirement.  *In re Cooper*, 254 F.R.D. at 634.

Here, Langston's allegations satisfy the standard for numerosity.  The settlement class consists of approximately 69,134 persons.  (Motion at 17.)  The Court certainly may infer that more than 40 persons paid convenience fees when making payments on their monthly mortgage serviced by Gateway.  (*Id.*).  Moreover, Defendants do not dispute that the proposed class is numerous.  Accordingly, as requiring the joinder of thousands of plaintiffs would be impracticable, the Court finds the Class satisfies the numerosity requirement.

ii.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Rather, the plaintiff's claim must depend on a "common contention" that is capable of class wide resolution.  (*Id.*).  This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  (*Id.*).

The issues in this litigation present common question of law and fact that can be determined on a class wide basis: whether Gateway's collection of Convenience Fees violated the Rosenthal Act and the UCL, and whether Gateway breached each respective Deed of Trust. (Motion at 18.) Accordingly, the Court finds the Class satisfies the commonality requirement

### iii.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Langston's claims are typical of the class members' claims because every member of the class, including Langston, asserts damages based on Gateway's systematic collection of Convenience Fees. (Motion at 18-19.) Langston also notes that that the claims "are based on the same legal theories" as the other class members. (*Id.* at 19.) Accordingly, Langston's claims are "reasonably coextensive" with those of the class. *See Hanlon*, 150 F.3d at 1020; *see also Reyes v. Experian Info. Sols., Inc.*, No. 16-00563, 2019 WL 4854849, at *6 (C.D. Cal. Oct. 1, 2019) ("Because Plaintiff only seeks to represent a class of consumers whose credit reports contained this exact same 'inaccuracy,' the unnamed class members share an identical injury. Further, Plaintiff's claim is based on the same course of conduct by Defendant as the claims of the unnamed class members" satisfying the typicality requirement).

United States District Court
Central District of California

1

2                    iv.      Adequacy of Representation

3         Rule 23(a)(4) requires that "the representative parties will fairly and

4   adequately protect the interests of the class."  This factor requires: (1) a lack

5   of conflicts of interest between the proposed class and the proposed class

6   representative, and (2) representation by qualified and competent counsel

7   that will prosecute the action vigorously.  *Staton*, 327 F.3d at 957. The

8   concern in the context of a class action settlement is that there is no

9   collusion between the defendant, class counsel, and the class

10  representatives to pursue their own interests at the expense of the interests

11  of the class.  (*Id.* at 958 n.12).

12

13         There is no evidence of a conflict of interest between Langston and

14  the class.  Langston's claims are identical to those of the class, and she has

15  every incentive to pursue those claims vigorously.  (Motion at 20.)  Nor is

16  there any evidence that Langston's counsel will not adequately represent or

17  protect the interests of the class.  Langston's counsel, Lee Lowther of

18  Carney, Bates and Pulliam, PLLC, and James Kauffman of Bailey &

19  Glasser, LLC, have extensive experience litigating consumer protection

20  class actions and have relied on their experience litigating the instant action.

21  (*See* Lowther and Kauffman Decl., Doc. No. 44, ¶¶ 3-7, Exs. A-B).  Counsel

22  vigorously prosecuted this action and satisfy all the criteria to be appointed

23  as interim class counsel pursuant to Rule 23(g)(3).  *See, e.g., Reyes*, 2019

24  WL 4854849, at *7 ("As for Plaintiff's and counsel's willingness to vigorously

25  prosecute this action on behalf of the class, the Court has no doubt. The

26  Court knows only too well how actively this case has been litigated on both

United States District Court
Central District of California

sides from its inception in 2016.").  There is also no evidence of conflicts of

interest between Langston and Gateway or Langston's counsel and

Gateway.

    As Langston satisfies all of the Rule 23(a) criteria, the Court turns to

the Rule 23(b) requirements.

### 2.    Rule 23(b)(3) Requirements

    Langston seeks preliminary class certification under Rule 23(b)(3).

Rule 23(b)(3) applies where the court finds: (1) "that the questions of law or

fact common to class members predominate over any questions affecting

only individual members," and (2) "that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."

*See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957

(9th Cir. 2009).

### i.    Predominance

    "The Rule 23(b)(3) predominance inquiry tests whether classes are

sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150

F.3d at 1022.  "This analysis presumes that the existence of common issues

of fact or law have been established pursuant to Rule 23(a)(2); thus, the

presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)."  (*Id.*).

"When common questions present a significant aspect of the case and they

can be resolved for all members of the class in a single adjudication, there

is clear justification for

United States District Court
Central District of California

handling the dispute on a representative rather than on an individual basis." (*Id*.).

As discussed above, Langston demonstrated commonality amongst proposed class members as the central issues in this case are "whether [Gateway's] collection of Convenience Fees is improper and whether [Gateway] violated state law and breached its contract."  (Motion at 21.) The only individual determinations, then, are the quantification of damages for each Settlement Class member—and such individual determinations do not defeat class certification.  Langston thus demonstrates that common issues predominate over individualized concerns.

ii.   Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.  (*Id*.).

A class action appears to be superior to other available methods for adjudicating this matter fairly and efficiently.  The potential monetary relief for each Settlement Class Member ($3.50 to $10.00 for each Convenience Fee payment) is dwarfed by the cost of litigating on an individual basis. (*See* Compl. ¶ 1.)  Without class certification, it is unlikely that these claims would be litigated at all.  Accordingly, Langston satisfies Rule 23(b)(3).

1

**B.    Fairness, Adequacy, and Reasonableness of the Settlement**

Langston seeks preliminary approval of the Settlement Agreement.
Rule 23(e) "requires the district court to determine whether a proposed
settlement is fundamentally fair, reasonable, and accurate." *Staton*, 327
F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026).  To determine whether this
standard is met, courts consider factors including "the strength of the
plaintiffs' case; the risk, expense, complexity, and likely duration of further
litigation; the risk of maintaining class action status throughout the trial; the
amount offered in settlement; the extent of discovery completed, and the
stage of the proceedings; the experience and views of counsel; . . . and the
reaction of the class members to the proposed settlement."  (*Id*. (quoting
*Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003))).

At the preliminary approval stage, a full "fairness hearing" is not
required. *In re Tableware Antitrust Litig*., 484 F. Supp. 2d at 1079.  Rather,
the inquiry is whether the settlement "appears to be the product of serious,
informed, non-collusive negotiations, has no obvious deficiencies, does not
improperly grant preferential treatment to class representatives or segments
of the class, and falls within the range of possible approval."  (*Id*.).

1.    <u>Product of Serious, Informed, Non-Collusive Negotiations</u>

To approve the Settlement Agreement at this stage, the Court must
find first it is "not the product of fraud or overreaching by, or collusion
between, the negotiating parties."  *Hanlon*, 150 F.3d at 1027.  Three factors
may raise concerns of collusion: (1) "when counsel receive[s] a

United States District Court
Central District of California

disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

The Court finds that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (internal quotation marks omitted).  This case was filed on June 8, 2020 (Compl.), and since then the Parties: litigated one motion to dismiss (Doc. No. 23); produced extensive data through written discovery (Motion at 4); conducted numerous negotiations and correspondence related to the finalization of the Settlement Agreement; and reached a settlement, after a full-day mediation conducted by Honorable Lisa Cole (Ret.).  (*Id.*) Moreover, none of the three *Bluetooth* factors that raise concerns of collusion are present here.  This factor thus weighs in favor of preliminary approval.

2.      Obvious Deficiencies

The Court finds that the Settlement Agreement on its face does not have obvious deficiencies, and thus finds that this factor weighs in favor of preliminary approval.

United States District Court
Central District of California

3.    <u>Preferential Treatment to Class Representatives or Segments of Class</u>

The proposed Settlement Agreement does not improperly grant preferential treatment to class representatives.  Although the Court has some minor concerns regarding Langston's service award—as discussed below—those concerns are insufficient to make this factor weigh against preliminary approval and can be addressed in more detail at the final approval hearing.

4.    <u>Range of Possible Approval</u>

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc*., 670 F. Supp. 2d 1114, 1125 (E.D. Cal. Nov. 17, 2009).

Moreover, to evaluate whether a settlement is fundamentally fair, adequate, and reasonable, the Court considers the factors that ultimately inform final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

governmental participant; and (8) the reaction of class members to the pro-posed settlement.  *Harris*, 2011 WL 1627973, at *7 (citing *Hanlon*, 150 F.3d at 1026).

i.   <u>Strength of Plaintiff's Case and Future Risk</u>

Langston's claims allege violations of the Rosenthal Act and the UCL, and breach of the Deed of Trust.  (Compl.)  The Court denied Gateway's Motion to Dismiss each of these claims on January 15, 2021.  (Doc. No. 23.)  Although Langston was able to proceed on all three claims, Class Counsel argues that the Settlement Agreement is reasonable as Gateway demon-strated their commitment to litigate this action to its conclusion.  (Motion at 12.)  Accordingly, Langston and Class Members would face further litigation risks if the case were not settled.  (*Id.*)

As it stands, the Settlement Agreement provides automatic distribu-tions to Class Members on a *pro rata* basis from the Settlement Fund, which is the requested relief in the case.  (*Id.*)  Given the relative strength of Lang-ton's claims, and the risks and costs associated with future complex litiga-tion, the Settlement Agreement's terms appear to be reasonable.  These factors thus favor preliminary approval.

ii.   <u>Extent of Discovery Completed and Stage of the Proceedings</u>

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As noted above, the parties litigated diligently since June 2020, including briefing one motion to dismiss, conducting formal discovery, the production and review of documents, and engaging in a full-day mediation, *supra*.

Accordingly, the Court finds this factor weighs in favor of preliminary approval.  *See Linney*, 151 F.3d at 1239.

### iii.    Experience and Views of Counsel

As stated above, Class Counsel has ample experience litigating class actions similar to this case and thus have demonstrated the ability to prosecute vigorously on behalf of the class members.  (*See* Lowther and Kauffman Decl., Doc. No. 44, ¶¶ 3-7, Exs. A-B).  Accordingly, the Court finds this factor weighs in favor of preliminary approval.

### iv.    Presence of a Governmental Participant and Reaction of the Class Members to the Proposed Settlement

As there is no governmental participant in this action, and the parties have not yet provided notice to the class members, these factors are inapposite for the purposes of preliminary approval.

### v.    The Amount Offered in the Settlement

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  *Staton*, 327 F.3d at 963.

United States District Court
Central District of California

United States District Court
Central District of California

1

2              a.      Attorneys' Fees

3        When evaluating attorneys' fees, the Ninth Circuit holds "the district

4  court has discretion in common fund cases to choose either the percentage-

5  of-the-fund or the lodestar method."  *Vizcaino v. Microsoft Corp.*, 290 F.3d

6  1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec.*

7  *Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994)).

8

9        When using the percentage-of-the-fund method, "courts typically set a

10  benchmark of 25% of the fund as a reasonable fee award and justify any

11  increase or decrease from this amount based on circumstances in the

12  record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D.

13  Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d

14  268, 272 (9th Cir. 1989).  The percentage may be adjusted upward or

15  downward based on: (1) the results achieved; (2) the risks of litigation; (3)

16  the skill required and the quality of work; (4) the contingent nature of the fee;

17  (5) the burdens carried by the class counsel; and (6) the awards made in

18  similar cases.  *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at

19  1048–50).

20

21        Class Counsel here intend to seek an award of attorneys' fees of no

22  more than 25 percent of the settlement fund, which is within the Ninth

23  Circuit's 25 percent "benchmark award for attorney[s'] fees."  *Hanlon*, 150

24  F.3d at 1029.  Given the claims, stage of the action at the time of resolution,

25  results achieved, and other information presented in Langston's Motion, the

26

United States District Court
Central District of California

1  Court is likely to determine that 25 percent in attorneys' fees is warranted

2  and reasonable at the final settlement approval.

3

4                              b.      Costs

5        According to the Agreement, Class Counsel will apply to the Court for

6  reimbursement out of the settlement fund for reasonable expenses.  (SA §

7  IV.E.).  Class Counsel has not attached any accounting of past costs or

8  expenses.  Thus, the Court will revisit the costs request at the time the

9  parties seek final approval of the settlement.

10

11                          c.      Incentive Award

12       Named plaintiffs "are eligible for reasonable incentive payments."

13 *Staton*, 327 F.3d at 977.  Such awards "are intended to compensate class

14 representatives for work done on behalf of the class, to make up for

15 financial or reputational risk undertaken in bringing the action, and,

16 sometimes, to recognize their willingness to act as a private attorney

17 general."  *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958–59 (9th Cir.

18 2009).

19

20       "The district court must evaluate [incentive] awards individually, using

21 'relevant factors includ[ing] the actions the plaintiff has taken to protect the

22 interests of the class, the degree to which the class has benefitted from

23 those actions, . . . the amount of time and effort the plaintiff expended in

24 pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"

25 *Staton*, 327 F.3d at 977.

26

                                     19

Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995).  "Courts have generally found that $5,000 incentive payments are reasonable."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008) (citations omitted).

Under the proposed Settlement Agreement, Langston will receive an award of $5,000.  (SA § IV.D.)  Class counsel have not provided any information regarding the "actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of ] workplace retaliation."  *Staton*, 327 F.3d at 977.  Thus, although an incentive award of $5,000 is generally reasonable, the Court cannot preliminarily approve such an award without any evidence.

Accordingly, the Court declines to approve the incentive award at this stage and will revisit the incentive award request at the time the parties seek final approval of the settlement.

//

//

United States District Court
Central District of California

d.   Settlement Administrator Costs

The Court has concerns with the parties' proposed Settlement Administrator costs as they are currently framed.  Critically, the parties do not specify a number, but only propose to transfer $50,000 of the Gross Settlement fund as an advance of administrative costs.  (SA § IV.A.)  The Court is unlikely to approve such costs where there is no definite portion or limit that will be awarded to the Settlement Administrator.  The Court will revisit the Administrative Costs request at the time the parties seek final approval of the settlement.

e.   Conclusion Based on Review of *Hanlon* Factors

As most of the *Hanlon* factors weigh in favor of preliminary approval, the Court finds that the proposed settlement is "within the range of possible approval" and that notice should be sent to class members.  *Vasquez*, 670 F. Supp. 2d at 1125.

Nevertheless, the Court stresses that it is unlikely to approve the incentive award or the Administrative Costs in their current form at the final approval stage.

**C.    Notice Procedure**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Plaintiff must provide notice that is "timely, accurate, and informative."  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

1

2          1.      Notice Form

3          The Court accepts the proposed notice forms.  The notice form

4    explains: (1) the nature of the claims involved in the case; (2) the essential

5    terms of the Settlement, including the definition of the Settlement Class and

6    the method of distribution of settlement proceeds; (3) the rights of

7    Settlement Class Members to participate in the Settlement, to request

8    exclusion from the Settlement Class or to object to the Settlement, and

9    specifics on the dates for exercising these rights; (4) the requirements for

10   opting out, for objecting, and for making an appearance at the Final

11   Approval Hearing; (5) the time and location of the Final Approval Hearing;

12   (6) an explanation that each Settlement Class Member has the right to

13   appear at the Final Approval Hearing; and (7) the Settlement Website

14   address and a toll-free number where additional information can be

15   obtained.  (Motion at 16; Exs. A1-A2, SA.)

16

17         2.      Claims Administration

18         The Settlement Agreement states the Settlement Administrator will

19   send the notice, establish the Settlement Website, record exclusions and

20   objections to the settlement, and issue appropriate payments.  (SA § VIII.).

21   Within thirty days of preliminary approval, Gateway will provide the

22   Settlement Administrator the Settlement Class Member List.  (*Id.* § VI.)

23   Within thirty days of receiving the Class Member list, the Settlement

24   Administer will provide notice to the Settlement Class through mail and

25   email.  (Exs. A1-A2, SA.)  The Settlement Administrator shall mail payments

26

United States District Court
Central District of California

to Settlement Class Members within thirty (30) days after the final effective date.  (SA § IV.B.)

The Court finds that the notice forms and proposed administration process are adequate.

**D.    *Cy Pres* Recipient**

The parties agree that "[a]ny residual funds remaining in the Settlement Fund after an initial and secondary disbursement to Settlement Class Members and payment of all fees and costs, i.e. unclaimed funds or any portion of the Projected Administrative Costs not actually incurred, will be disbursed to Habitat for Humanity as a *cy pres* award."  (Motion at 2.)

"Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds."  *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (citing *Van Gemert v. Boeing Co*., 739 F.2d 730, 737 (2d Cir.1984)).  *Cy pres* distribution is "to put the unclaimed fund to the next best compensation use, *e.g*., for the aggregate, indirect, prospective benefit of the class."  *Masters v. Wilhemina Model Agency, Inc*., 472 F.3d 423, 436 (2d Cir. 2007) (citations omitted).  Under the *cy pres* doctrine, the donors' or parties' intent must be followed "as nearly as possible."  *In re Wells Fargo Secs. Litig*., 991 F. Supp. 1193, 1195 (N.D. Cal. Jan. 20, 1998) (citations omitted).  "The use of *cy pres* ... to distribute unclaimed funds may be considered only after a valid judgment for damages has been rendered against the defendant."  *Six (6) Mexican Workers*, 904 F.2d at 1307.

23

United States District Court
Central District of California

United States District Court
Central District of California

1

2    "While the law generally favors distributing unclaimed funds for a

3   purpose as near as possible to the legitimate objectives underlying the

4   lawsuit, a direct nexus between the injured plaintiffs and the *cy pres*

5   recipients is neither always feasible nor required."  *Hopson v. Hanesbrands,*

6   *Inc.*, No. 08-0844, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009)

7   (comparing *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 680

8   (8th Cir. 2002) (holding that the trial court had abused its discretion with

9   respect to *cy pres* distribution because there was no nexus between the

10   injured class and the local organizations receiving unclaimed funds) (citing

11   *Powell v. Georgia-Pacific Corp*,, 119 F.3d 703, 706-07 (8th Cir. 1997)

12   (approving the district court's order that nearly $1 million in remainder

13   settlement funds be distributed as scholarships to African-American high

14   school students because the scholarship program carried out the plaintiffs'

15   desire and addressed the subject matter of the lawsuit: employment

16   opportunities available to African Americans in the region)), with *Superior*

17   *Beverage Co. v. Owens-Ill., Inc.*, 827 F. Supp. 477, 479 (N.D. Ill. 1993)

18   (holding that unclaimed funds remaining after settlement of an antitrust case

19   may be distributed to other public interests not closely related to the origins

20   of the case)).

21

22    The Court finds Habitat for Humanity has a sufficient nexus to the

23   class here and thus approves the *cy pres* designation.

24   //

25   //

26

24

**E.     Class Representative and Class Counsel**

As explained above, the Court finds that Langston will fairly and adequately protect the interests of the class and that proposed class counsel, Lee Lowther of Carney, Bates and Pulliam, PLLC, and James Kauffman of Bailey & Glasser, LLC, are well equipped to represent the class.

Accordingly, the Court designates Plaintiff Jennifer M. Langston as Class Representative for the Settlement Class and appoints Lee Lowther of Carney, Bates and Pulliam, PLLC, and James Kauffman of Bailey & Glasser, LLC, as class counsel.

## IV.     CONCLUSION

For the reasons stated above, most of the factors considered by the Court favor settlement.  Although the Court declines to approve the incentive award and Settlement Administrator Costs, the proposed settlement is within the range of possible final approval. The Court thus **GRANTS** Langston's Motion for preliminary approval of class action settlement and conditionally certifies the class for settlement.

Within thirty (30) calendar days of this Order, Gateway shall provide the Settlement Administrator the Settlement Class Member List.  Within thirty (30) calendar days of receiving the Class Member List, the Settlement Administrator shall disseminate notice using the mail and email templates portrayed in Exhibits A-1 and A-2 of the Settlement Agreement and establish the Settlement Website.

Class members shall have one-hundred and five (105) calendar days from the date of this Order to object or opt out of the settlement.

The final approval hearing will be conducted on July 25, 2022 at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: _____4/25/22_____

_____
Virginia A. Phillips
United States District Judge

United States District Court
Central District of California

26