Hank Bates (SBN 167688)
hbates@cbplaw.com
Lee Lowther (admitted *pro hac vice*)
llowther@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, AR 72201
Tel. 501-312-8500
Fax 501-312-8505

Additional Counsel on Signature Page

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER M. LANGSTON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GATEWAY MORTGAGE GROUP, LLC,<br>Defendant. | Case No. 5:20-cv-01902-VAP-KK<br><br>**MOTION FOR FINAL APPROVAL OF SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**<br><br>**Date: August 29, 2022**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 8A** |

# TABLE OF CONTENTS

I. INTRODUCTION..................................................................... 1

II. SUMMARY OF THE PROCEEDINGS................................... 3

III. SUMMARY OF THE PROPOSED SETTLEMENT.................... 5

    A. Settlement Benefits................................................ 5

    B. Notice.................................................................... 7

    C. Class Counsel's Applications for (i) Attorneys' Fees and Costs and (ii) a Service Award. ........................................................ 8

IV. APPLICABLE LEGAL STANDARDS. ................................. 8

V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL. ..................................... 10

    A. Plaintiff and Class Counsel Have Adequately Represented the Class, Obtaining an Excellent Settlement to Which No Class Member of Government Entities Have Objected.................................... 10

    B. The Settlement Was the Result of Informed, Arm's Length Negotiations Between the Parties and Has No Obvious Deficiencies...................... 11

    C. The Settlement Provides Exceptional Relief for the Settlement Class.  14

        1. Continued litigation would be risky, complex, lengthy, and expensive. ........................................................... 14

        2. The Settlement provides meaningful, automatic payments to Settlement Class Members. ............................................ 15

        3. The requested attorneys' fees are reasonable and in line with similar awards approved in the Ninth Circuit. ............................. 16

        4. The Settlement provides for a non-reversionary common fund. ..... 17

    D. The Settlement Treats All Settlement Class Members Equitably......... 17

    E. The Notice Program Satisfies Rule 23 and Due Process, and Constitutes The Best Notice Practicable. ............................................. 17

VI. FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE. ........................................................ 18

VII. CONCLUSION .................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................... 10

*Compare Thomas-Lawson v. Carrington Mortg. Servs.*,
    2021 WL 1253578 (C.D. Cal. April 5, 2021) ...................................................... 15

*Corona v. PNC Financial Services Group, Inc.*,
    No. 2:20-cv-06521-MCS, 2021 WL 1218258 (C.D. Cal. 2021) ....................... 15

*Craft v. Cnty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................ 17

*Deaver v. Compass Bank*,
    No. 13-CV-00222-JSC, 2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ..... 12, 13

*Dunakin v. Quigley*,
    No. 2:14-CV-00567-JLR, 2017 WL 123011 (W.D. Wash. Jan. 10, 2017) ...... 12

*Grigoryan v. CEMEX Constr. Materials Pac., LLC*,
    No. EDCV 18-1563-R, 2019 WL 13149915 (C.D. Cal. May 21, 2019) .......... 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................... 12

*Hendricks v. Starkist Co.*,
    No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) .... 13, 17

*In re Apple Computer Sec. Litig.*,
    No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ........... 15

*In re Bluetooth*,
    654 F.3d 935 (9th Cir. 2011) ................................................................... passim

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ......................................................................... 15

-ii-

*McLeod v. Bank of Am., N.A.*,
 No. 16-CV-03294-EMC, 2019 WL 1170487 (N.D. Cal. Mar. 13, 2019)......... 10

*Noll v. eBay, Inc.*,
 309 F.R.D. 593 (N.D. Cal. 2015) ..................................................................... 14

*Pelletz v. Weyerhaeuser Co.*,
 255 F.R.D. 537 (W.D. Wash. 2009) ................................................................. 11

*Roe v. Frito-Lay, Inc.*,
 No. 14CV-00751, 2017 WL 1315626 (N.D. Cal. Apr. 7, 2017) ..................... 13

*Stanger v. China Elec. Motor, Inc.*,
 812 F.3d 734 (9th Cir. 2016) ....................................................................... 8, 13

*Steiner v. Am. Broad. Co.*,
 248 Fed. Appx. 780 (9th Cir. 2007) ................................................................ 16

*Thomas-Lawson v. Carrington Mortg. Servs., LLC*,
 No. 2:20-cv-07301-ODW-EX, 2021 WL 1253578 (C.D. Cal. Apr. 5, 2021) .. 15

*Villegas v. J.P. Morgan Chase & Co.*,
 No. CV 09-00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)
 ...................................................................................................................... 12

*West Virginia v. Chas. Pfizer & Co.*,
 314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ... 14, 15

**Statutes**
Cal. Bus. & Prof. Code § 17200 ......................................................................... 3
Cal. Civ. Code § 1715 ....................................................................................... 11
Cal. Civ. Code § 1788 ......................................................................................... 3

**Other Authorities**
MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR
 JUDGES, p. 27 (3d ed. 2010)......................................................................... 18

**Rules**
Fed. R. Civ. P. 23 ...................................................................................... passim

-iii-

Plaintiff Jennifer Langston ("Plaintiff"), by and through undersigned counsel and pursuant to the Settlement Agreement and Release, dated January 10, 2022 (ECF No. 45) (the "Settlement Agreement"), and this Court's Preliminary Approval Order, dated April 25, 2022 (ECF No. 49) (the "Preliminary Approval Order"), hereby requests that this Court grant final approval of the settlement (the "Settlement") of this action (the "Action"). More specifically, Plaintiff respectfully requests this Court enter an order, in substantial form to the proposed order attached as Exhibit C to the Settlement Agreement, (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; and (iii) finding that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances. Plaintiff further requests this Court enter final judgment, in substantial form to the proposed order attached to the Settlement Agreement as Exhibit D.

## I. INTRODUCTION.

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") and the Court's Preliminary Approval Order, Plaintiff respectfully requests that the Court grant final approval of the Settlement reached between Plaintiff and Defendant Gateway First Bank ("Defendant" or "Gateway") (collectively with Plaintiff, the "Parties").

Plaintiff firmly believes that the Settlement is in the best interest of the Settlement Class and clearly satisfies the standard of approval as discussed herein. Plaintiff and Class Counsel have adequately represented the Settlement Class, obtaining an excellent Settlement to which no class member or governmental entities have objected. The Settlement is the product of arm's-length negotiations by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses, and it was reached

-1-

only after intensive litigation, discovery, and arm's length negotiations, including a full-day mediation session.

The Settlement provides for a common fund of $1,175,000 (the "Settlement Fund") for the benefit of Settlement Class Members, with no reverter. This common fund represents 27.4% of the total amount of Convenience Fees that Plaintiff alleges were improperly collected by Defendant. There is no claims process; instead, each Settlement Class Member who does not opt out will automatically receive a payment on a pro rata basis, based upon the amount of Convenience Fees paid by the Settlement Class Member during the Class Period after any reversals or credits. Any residual funds remaining in the Settlement Fund after an initial and secondary disbursement to Settlement Class Members and payment of all fees and costs, *i.e.* unclaimed funds or any portion of the Projected Administrative Costs not actually incurred, will be disbursed to Habitat for Humanity as a *cy pres* award.

Consistent with the "benchmark" in the Ninth Circuit precedent, Class Counsel is requesting attorney's fees equal to 25% of the Settlement Fund, as well as $6,067.64 in reimbursement of litigation expenses. Also, consistent with Ninth Circuit precedent, Plaintiff will request a Service Award of $5,000 in recognition of Plaintiff's service as the Class Representative. Settlement administrative costs are estimated to be $166,947.44, which is only 14% of the Settlement Fund. *See* Declaration of Edward Dattilo Regarding Implementation of Notice and Settlement Administration ("Dattilo Decl.") at ¶ 26.

Class Counsel believe that this is an excellent result for the Settlement Class, especially when weighed against the costs, risks, and delay of continued litigation, trial, and appeal. Moreover, the Court-approved notice program has been fully implemented, with an estimated notice reach of 96.69%, which is within the range endorsed by the Federal Judicial Center. *See* Dattilo Decl. at ¶ 19. And, to date, no

objections or requests for exclusion have been received. *See id*. at ¶¶ 24-25; *see also* Declaration of Lee Lowther ("Lowther Decl.") at ¶ 13.

Accordingly, Plaintiff respectfully submits that the Settlement satisfies all criteria for final approval, and specifically requests this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) grant final certification to the Settlement Class; (iii) find that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances; and (iv) enter final judgment.

## II.    SUMMARY OF THE PROCEEDINGS.

On June 8, 2020, Plaintiff, on behalf of herself and all others similarly situated, filed a Class Action Complaint (the "Complaint") in the Superior Court of the State of California, County of San Bernadino, against Defendant, which was superseded by the filing of an Amended Class Action Complaint (the "Amended Complaint") on August 11, 2020. Defendant removed the Amended Complaint to this Court. *See* ECF No. 1. The Amended Complaint asserts three claims: (1) violation the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, *et seq*., (2) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., and (3) breach of contract. More specifically, the Amended Complaint alleges that Defendant violated the Rosenthal Act and the UCL by collecting and profiting from fees charged to borrowers when they paid their mortgages by phone or online ("Convenience Fees"). Plaintiff further alleges that Defendant breached the Deed of Trust on loans insured by the Federal Housing Administration (FHA) by collecting Convenience Fees because the Department of Housing and Urban Development ("HUD") has not authorized collection of Convenience Fees.

-3-

In its Motion to Dismiss Plaintiff's Amended Complaint, filed on October 21, 2020 (ECF No. 11), Defendant argued for dismissal of Plaintiff's complaint in its entirety upon the following grounds: (1) Plaintiff has not satisfied the "consumer debt" element of her Rosenthal Act claim or otherwise demonstrated a violation of the Rosenthal Act; (2) Plaintiff's Rosenthal Act claim is barred by the voluntary payment doctrine; (3) Plaintiff's allegations do not support an unlawful UCL claim; and (4) HUD regulations are not incorporated by reference, and, as such, cannot provide a basis for Plaintiff's breach of contract claim. *See* ECF No. 11.

Plaintiff filed her opposition to Defendant's Motion to Dismiss on November 16, 2020 (ECF No. 15). And, on January 15, 2021, the Court entered an order denying the Motion to Dismiss in its entirety (*see* ECF No. 23).

On February 12, 2021, Defendant filed its Answer to the Amended Complaint (ECF No. 31).

During the pendency of the Motion to Dismiss and thereafter, the Parties engaged in written discovery. This discovery included extensive data relevant to class size and the aggregate amount of Convenience Fees paid to Defendant by class members during the relevant time period.

On August 30, 2021, the Parties engaged in a full-day mediation session before well-respected mediator Hon. Lisa Cole (Ret.). The Parties were unable to resolve the case that day. During the weeks following the mediation, and with the mediator's assistance, the Parties reached a mutually agreeable settlement, which they memorialized in a Memorandum of Understanding. Thereafter, the Parties worked cooperatively together to use the Memorandum of Understanding to draft a comprehensive Settlement Agreement and exhibits thereto.

On February 22, 2022, Plaintiff contemporaneously filed an Unopposed Motion for Preliminary Approval (ECF No. 43), the Joint Declaration of Lee

MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 5:20-CV-01902-VAP-KK

Lowther and James Kauffman in support thereof (ECF No. 44), and the executed Settlement Agreement (ECF No. 45).

On April 25, 2022, this Court entered the Preliminary Approval Order, conditionally certifying the Settlement Class, preliminarily approving the Settlement, and approving the notice program set forth in the Settlement Agreement (ECF No. 49).

## III.   SUMMARY OF THE PROPOSED SETTLEMENT.

### A. Settlement Benefits.

Under the proposed Settlement, Defendant shall establish a cash settlement fund of $1,175,000.00 (the "Settlement Fund") for the benefit of Settlement Class Members. In accord with paragraph DD of the Settlement Agreement, the Settlement Class shall include:

> All persons who (1) were borrowers on residential mortgage loans on properties in the United States whose loans were serviced by Gateway, and (2) paid a fee to Gateway for making a loan payment by telephone, IVR, or the internet, from June 8, 2016, through the date on which the Court enters an order granting preliminary approval of the Parties' Settlement Agreement.

Unless a Settlement Class Member submits a valid and timely Request for Exclusion (*see* Settlement Agreement, Sections IV(B) and VII), he or she will automatically receive his or her *pro rata* distribution from the Settlement Fund, less any court-approved attorneys' fees and costs, service award, and costs of notice and settlement administration (the "Net Settlement Amount"), upon Court approval. A Settlement Class Member's *pro rata* distribution will be calculated based upon the amount of Convenience Fees paid by the Settlement Class Member during the Class Period after any reversals or credits ("Settlement Payment"). Co-borrowers on a single class loan shall be entitled to a single Settlement Payment

-5-

per loan account. Settlement Class Members who receive a Settlement Payment shall be solely responsible for distributing or allocating such payment between or among all co-account holders. Checks issued under the Settlement will be negotiable for 90 calendar days after the date of issuance. Settlement Payment checks that have not been negotiated within the 90 days after issuance shall be void. For good cause shown, Settlement Class Members may request that the Settlement Administrator reissue a check for one additional 90-day period. After 180 days from the date of issuance of the initial checks, any remaining funds in the Net Settlement Fund shall be distributed to Settlement Class Members via a secondary distribution. Any costs associated with the secondary distribution will be paid from the Settlement Fund. If the amount of funds remaining is so minimal that a secondary distribution would be impracticable or infeasible, then the remaining funds shall be distributed to Habitat for Humanity (the "Cy Pres Recipient"). Any funds remaining following a secondary distribution shall be distributed to the Cy Pres Recipient. In no event shall funds be returned to Defendant.

In addition to the monetary benefits, as a result of the Settlement, as of January 1, 2022, Gateway ceased charging Convenience Fees to any Settlement Class Member and to any borrower. Gateway shall refrain from the charging or collection of Convenience Fees from borrowers for a period of at least one year after entry of the Final Approval Order.

In exchange for the consideration from the Defendant, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims against the Released Entities, relating in any way to the charging, collection, or attempted collection of Convenience Fees accruing from June 8, 2016, through December 31, 2021. *See* Settlement Agreement ¶¶ Z and AA.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 5:20-CV-01902-VAP-KK

**B. <u>Notice</u>.**

In accord with Section VI of the Settlement Agreement and the Court's Preliminary Approval Order, notice to Settlement Class Members was made by (i) emailing the Email Notice to those Settlement Class Members for whom an email address was available in Defendant's records (substantially in the form attached as Exhibit A1 to the Settlement Agreement); and (ii) mailing, by first-class US mail, the Mailed Notice (substantially in the form attached as Exhibit A2 to the Settlement Agreement) (collectively with the Email Notice, referred to as the "Class Notice").[1] Skip tracing was performed by the Administrator for all returned mail. To the extent it was reasonably able to locate a more current mailing address using skip tracing, the Administrator re-mailed the returned Notice to the particular Settlement Class Member by first-class US mail. *See* Dattilo Decl. at ¶ 18; *see also* Settlement Agreement, Section IV(B). In addition, the Mailed Notice was posted on the Settlement Website. Dattilo Decl. at ¶ 20.

The Class Notice included the following information: (1) a plain and concise description of the nature of the Action and the proposed Settlement, (2) the right of Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, (3) specifics on the date, time and place of the Final Approval Hearing, and (4) information regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representative's Service Award.

Moreover, in accord with the Settlement Agreement and the Court's Preliminary Approval Order, the current motion, along with Plaintiff's Motion for Award of Attorneys' Fees, Litigation Costs, and Service Award ("Plaintiff's Motion for Attorneys' Fees"), will be posted on the Settlement Website.

---

[1] Email addresses were available for approximately 40% of the Settlement Class Members identified in Defendant's records. *See* ECF No. 44 at ¶ 12.

-7-

All costs and fees related to the Class Notice are to be paid from the Settlement Fund.

**C. Class Counsel's Applications for (i) Attorneys' Fees and Costs and (ii) a Service Award.**

In accord with the Settlement Agreement, Class Counsel is requesting an award of attorneys' fees equal to 25% of the Settlement Fund,[2] or $293,750.00, to compensate them for all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Class Counsel is also seeking reimbursement of their out-of-pocket litigation costs in the amount of $6,067.64, as well as a Service Award in the amount of $5,000 to compensate Ms. Langston for her work on behalf of the Settlement Class. *See* Plaintiff's Motion for Award of Attorneys' Fee, Litigation Costs, and Service Award, being filed contemporaneously herewith. The enforceability of the Settlement Agreement is not contingent on the Court's approval of Plaintiff's Motion for Attorneys' Fees, and any award granted by the Court will be paid out of the Settlement Fund.

**IV.    APPLICABLE LEGAL STANDARDS.**

The approval process for a class action settlement takes place in three stages: preliminary approval, notice, and final approval. *See* Fed. R. Civ. P. 23(e); *see also In re Bluetooth Headset Prods. Liab. Litig. ("In re Bluetooth")*, 654 F.3d 935 (9th Cir. 2011). On April 25, 2022, this Court granted Plaintiff's Motion for Preliminary Approval of Settlement and Incorporated Memorandum of Law in Support. ECF No. 43. In accord with the Court's Preliminary Approval Order, the Settlement Administrator timely and successfully completed the Court-approved notice plan.

---

[2] "The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-fund method." *Stanger v. China Elec. Motor, Inc*., 812 F.3d 734, 738 (9th Cir. 2016).

*See* Dattilo Decl. at ¶¶ 8-23. Now, the Court must determine whether the Settlement "taken as a whole is fair, reasonable, and adequate," warranting final approval. *In re Bluetooth*, 654 F.3d at 946. In determining whether a proposed settlement is fair, reasonable, and adequate, courts are to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FRCP 23(e)(2).

These factors are substantially similar to those adopted by both the Ninth Circuit and district courts in California. *See In re Bluetooth*, 654 F.3d at 946-47 ("[C]ourts generally must weigh '(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.'") (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2019 WL 1170487, at

MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 5:20-CV-01902-VAP-KK

*3 (N.D. Cal. Mar. 13, 2019) (adopting the factors set forth by the Ninth Circuit in *In re Bluetooth*).

Applying the venerable standards above, final approval should be granted because the Settlement and the notice program satisfy the requirements for final approval in all respects.

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL.

### A. <u>Plaintiff and Class Counsel Have Adequately Represented the Class, Obtaining an Excellent Settlement to Which No Class Member of Government Entities Have Objected.</u>

Both Plaintiff and Class Counsel have adequately represented the Settlement Class in this case. The Plaintiff has adequately represented all Settlement Class Members in this action by achieving a Settlement that provides for approximately 27.4% of the sum of all challenged Convenience Fees collected from all Settlement Class Members during the Class Period, as well as securing valuable injunctive relief that will carry on for a full year after entry of the Final Approval Order. In addition, Plaintiff has been actively involved throughout the course of the litigation and settlement, assisting Class Counsel in investigating claims on an individual basis, reviewing case documents, remaining apprised of the litigation, and overseeing settlement negotiations. Moreover, Plaintiff's efforts, including the risks she voluntarily took as well as the time she expended supporting the litigation, were crucial to achieving the result for the Settlement Class.[3]

Class Counsel have also fully and adequately represented all members of the Settlement Class. Class Counsel vigorously litigated this case including: (a)

---

[3] For her efforts, Plaintiff is requesting a service award of $5,000. Plaintiff's request is reasonable and in line with similar awards approved by district courts in this circuit. *See* Plaintiff's Motion for Attorneys' Fees at Section III(D).

-10-

extensive pre-filing investigation; (b) drafting and filing the complaints; (c) successfully defending against Defendant's motion to dismiss; (d) preparing and propounding written discovery; (e) meeting-and-conferring with Defendant's counsel regarding various case management matters; (f) drafting a comprehensive mediation statement, and participating in an all-day mediation; (g) conducting confirmatory discovery to ensure identification of all Settlement Class Members and the total amount of aggregate Convenience Fees paid during the Class Period; and (h) ultimately successfully negotiating the Settlement now before the Court. Class Counsel's efforts demonstrate that they vigorously and zealously represented the Class. It is Class Counsel's informed opinion that this Settlement represents an excellent result and is in the best interest of the Class. *See* Lowther Decl. at ¶¶ 7-16; Kauffman Decl. at ¶¶ 25-29; *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 543 (W.D. Wash. 2009) (where plaintiffs' attorneys are qualified and well informed, their opinion regarding settlement is entitled to significant weight).

Lastly, to date, no Settlement Class Member has objected to the Settlement. *See* Dattilo Decl. at ¶ 25. And, while no governmental entity is a party to this litigation, notice was issued to the appropriate federal and state officials in accordance with the 28 U.S.C. § 1715, and to date, no governmental entity has raised an objection or concern about the Settlement. *See* Lowther Decl. at ¶ 13. Accordingly, these factors weigh in favor of final approval.

## B. <u>The Settlement Was the Result of Informed, Arm's Length Negotiations Between the Parties and Has No Obvious Deficiencies.</u>

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. *Dunakin v. Quigley*, No. 2:14-CV-00567-JLR, 2017 WL 123011, at *2 (W.D. Wash. Jan. 10, 2017) ("A presumption of fairness and adequacy attaches to a class action settlement reached in arm's-length negotiations by experienced class counsel after meaningful

discovery."). The Court's role is to ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotation omitted). Courts will approve class action settlements entered into after good-faith, arm's-length negotiations. *See Grigoryan v. CEMEX Constr. Materials Pac., LLC*, No. EDCV 18-1563-R, 2019 WL 13149915, at *2 (C.D. Cal. May 21, 2019). Moreover, "[t]he use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 4999953, at *4 (N.D. Cal. Aug. 21, 2015) (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *see also Dunakin*, 2017 WL 123011, at *2 (concluding the settlement "was the result of arm's length bargaining" and "was reached in good faith with the assistance of a neutral mediator.").

Here, the Settlement was reached only after extensive factual investigation, motions practice, and fulsome discovery. Further, the Settlement was negotiated over the span of several weeks and a full-day mediation session before a well-respected mediator, Hon. Lisa Cole (Ret.). During negotiations, Class Counsel conducted confirmatory discovery regarding the total number of Settlement Class Members and the total amount of aggregate Convenience Fees paid during the Class Period. Hence, Class Counsel had a wealth of information at their disposal before entering into the Settlement. Accordingly, the Settlement was only reached after hard-fought litigation and protracted negotiations conducted by informed, experienced counsel on both sides who were thoroughly familiar with the factual and legal issues. *See* Lowther Decl. at ¶¶ 11-12; Kauffman Decl. at ¶ 13.

Additionally, there are no obvious deficiencies in the Settlement Agreement.

-12-

*See In re Bluetooth*, 654 F.3d at 947; *Deaver*, 2015 WL 4999953, at *4. Settlement Class Members who do not exclude themselves will automatically receive a *pro rata* distribution from the Settlement Fund less any court-approved attorneys' fees and costs, service awards, and costs of settlement notice and administration. Plaintiff's request for attorneys' fees, litigation costs, and service awards are reasonable and directly in line with prevailing standards in the Ninth Circuit. *Stanger*, 812 F.3d at 738 ("The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-fund method."); *Roe v. Frito-Lay, Inc.*, No 14CV-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively reasonable' in the Ninth Circuit." (collecting cases)). Furthermore, the Settlement provides for an initial and secondary distribution, with any remaining funds being disbursed to Habitat for Humanity as a *cy pres* award. Thus, there is no issue of reverter.

Additionally, the scope of the release is not overly broad as Settlement Class Members will release only those claims related to the charging, collection, or attempted collection of Convenience Fees accruing from June 8, 2016 through December 31, 2021. *See* Settlement Agreement, Section V.

Lastly, there is no unfair or preferential treatment of any Settlement Class Member. *See Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015). Here, payments to Settlement Class Members will be made on a *pro rata* basis. Thus, each Settlement Class Member is given fair and equal treatment.

In sum, the Settlement was achieved through arm's-length negotiations conducted by competent counsel, contains no obvious deficiencies, and treats Settlement Class Members equally. Accordingly, there are no grounds to doubt the Settlement's fairness.

C. **The Settlement Provides Exceptional Relief for the Settlement Class.**

When determining if the relief provided for the class is adequate, Rule 23 instructs courts to take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). Consideration of each of these sub-factors weighs in favor of final approval.

### 1. *Continued litigation would be risky, complex, lengthy, and expensive.*

While Plaintiff has calculated the maximum value of the claims in this Action to be larger than the settlement amount, when the maximum value of Plaintiff's and the Class's claims are discounted by the identifiable risks, experience dictates that the interests of the Class are better served by the proposed Settlement. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation."); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for class members now, and not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation. It has been held proper 'to take the bird in hand instead of a prospective flock in the bush.'"); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is not a guarantee of ultimate success").

MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 5:20-CV-01902-VAP-KK

Here, the risks of continued litigation are substantial. Defendant has vigorously denied Plaintiff's allegations of wrongdoing, and the law remains uncertain on the applicability of the FDCPA and the Rosenthal Act to Convenience Fees. *Compare Thomas-Lawson v. Carrington Mortg. Servs.,* 2021 WL 1253578 (C.D. Cal. April 5, 2021)  (dismissing claims); *with Corona v. PNC Financial Services Group, Inc.*, No. 2:20-cv-06521-MCS, 2021 WL 1218258, *2-*8 (C.D. Cal. 2021) (allowing claims to proceed). Further, Plaintiff anticipates that Defendant would likely have vigorously opposed class certification and moved for summary judgment if this case were to continue. Thus, continued litigation of the action would have been lengthy and expensive, and the possibility of Plaintiff litigating this case on a class basis and prevailing through judgment is uncertain.

Moreover, even if Plaintiff were to prevail through continued litigation and trial, she would still face significant risks as an appeal by Defendant would be likely. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia*, 314 F. Supp. at 743-44. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id*.

### 2. *The Settlement provides meaningful, automatic payments to Settlement Class Members.*

Under the Settlement, each Settlement Class Member is entitled to an automatic payment of his or her *pro rata* distribution unless he or she submits a timely request for exclusion. As such, the method to distribute relief is both simple and efficient.

-15-

Moreover, the relief provided to Settlement Class Members under the Settlement is significant. As previously noted, the Settlement creates a Settlement Fund of $1,175,000.00, which equates to approximately 27.4% of the total Convenience Fees allegedly wrongfully collected by Defendant. Moreover, as an additional benefit to the Settlement Class, Gateway, which stopped charging Convenience Fees in January 2022, will continue to refrain from charging them for one year after Final Approval. Thus, Class Members have already reaped months in savings from the changed practices, and will continue to enjoy additional benefits as a result of this litigation and the Settlement. This changed practice increases the value of the settlement by approximately $820,000 per year. *See* Lowther Decl. at ¶¶ 9, 18; Kauffman Decl. at ¶ 28. Thus, the Settlement provides meaningful relief with no obligation that requires a Settlement Class Member to submit a claim form in order to receive benefits.

### 3. The requested attorneys' fees are reasonable and in line with similar awards approved in the Ninth Circuit.

As detailed in Plaintiff's Motion for Attorneys' Fees, Class Counsel requests a standard benchmark award of 25%, which is in line with similar awards approved in the Ninth Circuit. *In re Bluetooth*, 654 F.3d at 942-43; *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed."); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award yielding a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher."). Moreover, a lodestar crosscheck confirms the reasonableness of Class Counsel's request, which yields a modest multiplier of 1.07 of the Settlement Fund. *See* Plaintiff's Motion for Attorneys' Fees at p. 10 and 14. Further, pursuant to the Settlement Agreement, Class Counsel will not receive any payment until

MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 5:20-CV-01902-VAP-KK

fourteen (14) days after the Effective Date. *See* Settlement Agreement at Section IV. Thus, the percentage requested and the timing of the payment also weigh in favor of final approval.

### 4.  *The Settlement provides for a non-reversionary common fund.*

As noted above, there is no claims process; instead, each Settlement Class Member who does not opt out will automatically receive a check. Any residual funds remaining in the Settlement Fund after an initial and secondary disbursement to Settlement Class Members and payment of all fees and costs, *i.e.* unclaimed funds or any portion of the Projected Administrative Costs not actually incurred, will be disbursed to Habitat for Humanity as a *cy pres* award. No funds from the Settlement will revert to Defendant. Thus, consideration of each of these four subfactors weigh in favor of final approval.

### D.  <u>The Settlement Treats All Settlement Class Members Equitably.</u>

Under the Settlement, there is no unfair or preferential treatment of any Settlement Class Member. *See Hendricks v. Starkist Co*., No. 13-CV-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015). Payments to Settlement Class Members will be made on a *pro rata* basis, to be calculated based upon the amount of Convenience Fees paid by the Settlement Class Member during the Class Period after any reversals or credits. Thus, each Settlement Class Member is given fair and equal treatment.

### E.  <u>The Notice Program Satisfies Rule 23 and Due Process, and Constitutes The Best Notice Practicable.</u>

The Court has already determined that the notice program in this case adequately satisfies Rule 23, and due process. ECF No. 49 at pp. 22-23. The Settlement Administrator has now fully implemented the notice program, providing an estimated 96.69% of Settlement Class Members with notice, which is at the high end of the range endorsed by the Federal Judicial Center. *See* Dattilo

Decl. at ¶ 19; *see also* MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, p. 27 (3d ed. 2010) (the norm is in the 70-95% range). Further, to date, there have been no requests for exclusion and no objections. *See* Dattilo Decl. at ¶¶ 24-25. What is more, the Settlement Administrator continues to maintain the Settlement Website and toll-free phone line and respond to inquiries from Settlement Class Members. Accordingly, the notice provided to Settlement Class Members fulfills all of the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## VI. FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class upon concluding all of the requirements of Rule 23(a) and (b)(3) were satisfied. Specifically, the Court found as follows: (1) the proposed Settlement Class is sufficiently numerous as it "consists of approximately 69,134 persons," and "requiring the joinder of thousands of plaintiffs would be impracticable" (ECF No. 49 at p. 8); (2) "[t]he issues in this litigation present common question of law and fact that can be determined on a class wide basis: whether Gateway's collection of Convenience Fees violated the Rosenthal Act and the UCL, and whether Gateway breached each respective Deed of Trust" (*id*. at p. 9); (3) "Langston's claims are typical of the class members' claims because every member of the class, including Langston, asserts damages based on Gateway's systematic collection of Convenience Fees" (*id*.); (4) adequacy is met as "[t]here is no evidence of a conflict of interest between Langston and the class," and "Langston's counsel, Lee Lowther of Carney, Bates and Pulliam, PLLC, and James Kauffman of Bailey & Glasser, LLC, have extensive experience litigating consumer protection class actions and have relied on their experience litigating the instant action," and "Counsel vigorously prosecuted this action and satisfy all the criteria to be appointed as

interim class counsel pursuant to Rule 23(g)(3)" (*id*. at p. 10); (5) "Langston demonstrated commonality amongst proposed class members as the central issues in this case are 'whether [Gateway's] collection of Convenience Fees is improper and whether [Gateway] violated state law and breached its contract,'" and "[t]he only individual determinations, then, are the quantification of damages for each Settlement Class member—and such individual determinations do not defeat class certification. Langston thus demonstrates that common issues predominate over individualized concerns" (*id*. at 12); and (6) "[a] class action appears to be superior to other available methods for adjudicating this matter fairly and efficiently. The potential monetary relief for each Settlement Class Member ($3.50 to $10.00 for each Convenience Fee payment) is dwarfed by the cost of litigating on an individual basis. Without class certification, it is unlikely that these claims would be litigated at all," (*id*. (internal citation omitted)). For these same reasons, this Court should grant final certification of the Settlement Class for settlement purposes only.

## VII.  CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court enter an order, in substantial form to the proposed order attached as Exhibit C to the Settlement Agreement: (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; and (iii) finding that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(e) and due process and constitutes the best notice practicable under the circumstances. Plaintiff further requests this Court enter final judgment, in substantial form to the proposed order attached to the Settlement Agreement as Exhibit D.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 5:20-CV-01902-VAP-KK

Dated: July 18, 2022

Respectfully submitted,

*/s/ Lee Lowther*
Lee Lowther (admitted *pro hac vice*)
llowther@cbplaw.com
Hank Bates, III (SBN 167688)
hbates@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St., Little Rock, AR 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

James L. Kauffman (admitted *pro hac vice*)
**BAILEY GLASSER LLP**
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2105
Facsimile: (202) 463-2103
jkauffman@baileyglasser.com

Sara D. Avila (SBN 263213)
savila@mjfwlaw.com
Marc A. Castaneda (SBN 299001)
mcastaneda@mjfwlaw.com
Gillian L. Wade (SBN 229124)
gwade@mjfwlaw.com
**MILSTEIN JACKSON FAIRCHILD
  & WADE, LLP**
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Telephone: (310) 396-9600
Facsimile: (310) 396-9635

*Counsel for Plaintiff*

MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 5:20-CV-01902-VAP-KK

1

### ***PROOF OF SERVICE***

2      I am employed in the County of Pulaski, State of Arkansas; I am over the

3  age of 18 years and not a party to the within action; my business address is 519 W.

4  7th Street, Little Rock, Arkansas 72201.

5      On July 18, 2022, I served the foregoing documents, described as:

6  **MOTION FOR FINAL APPROVAL OF SETTLEMENT AND**

7  **INCORPORATED MEMORANDUM OF LAW IN SUPPORT** on each

8  interested party in this action, as follows:

9      ☑ BY CM/ECF: I electronically transmitted a true copy of said document(s)

10  to the Clerk's Office using the CM/ECF System for filing.  I checked the CM/ECF

11  docket for this proceeding and determined that the following persons are on the

12  Electronic Mail Notice List to receive NEF transmission at the email addresses

13  stated below:

Hunter R. Eley
14            heley@dollamir.com

15      ☑ FEDERAL:  I declare that I am employed in the office of a member of

16  the bar of this court at whose direction the service was made.

17

18            */s/ Lee Lowther*
            LEE LOWTHER

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 5:20-CV-01902-VAP-KK