Hank Bates (SBN 167688)
hbates@cbplaw.com
Lee Lowther (admitted *pro hac vice*)
llowther@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, AR 72201
Tel. 501-312-8500
Fax 501-312-8505

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JENNIFER M. LANGSTON, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>GATEWAY MORTGAGE GROUP, LLC,<br>       Defendant. | Case No. 5:20-cv-01902-VAP-KK<br><br>**DECLARATION OF LEE LOWTHER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARD**<br><br>**Date: August 29, 2022**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 8A** |

I, Lee Lowther, declare and state as follows:

1.      I am an attorney with the law firm Carney, Bates and Pulliam, PLLC ("CBP"). My firm, along with co-counsel Bailey & Glasser, LLC ("Bailey Glasser") (collectively referred to with CBP as "Class Counsel"), represent Plaintiff Jennifer M. Langston ("Plaintiff") and the proposed Settlement Class in this action (the "Action").

2.      I make this Declaration in support of Plaintiff's (i) Motion for Final Approval of Settlement and (ii) Motion for Award of Attorneys' Fees, Litigation Costs, and Service Award. Except where otherwise stated, I have personal knowledge of the facts set forth in this Declaration based on active participation in all aspects of the prosecution and resolution of the Action. If called upon to testify, I could and would truthfully and competently testify as to all matters stated herein.

## BACKGROUND AND EXPERIENCE

3.      CBP's firm resume details each CBP attorney's background, as well as provides a full listing of the cases CBP has been involved in. CBP's firm resume was previously submitted to the Court in conjunction with Plaintiff's Motion for Preliminary Approval of Settlement. *See* ECF No. 44 (Joint Declaration filed in support of Preliminary Approval).

4.      To briefly highlight CBP's extensive experience in class action and

-2-

LOWTHER DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FESS, LITIGATION COSTS, AND SERVICE AWARD
CASE NO. 5:20-cv-01902-VAP-KK

complex litigation, CBP has served or is serving as co-lead counsel in the following cases:  *Caldwell, et al. v. Freedom Mortgage Co.*, No. 3:19-cv-02193-N (N.D. Tex.) (Pay-to-Pay class action, settling for $2,250,000 and receiving final approval in December 2021); *Phillips, et al. c. Caliber Home Loans, Inc.*, 19-cv-02711-WMW-LIB (D. Minn.) (Pay-to-Pay class action settling for $5,000,000, which represented 29.39% of the aggregate Pay-to-Pay fees collected from the settlement class); *Williams v. State Farm Mutual Automobile Insurance Company*, 4:11-cv-00749-KGB (E.D. Ark.) (resulting in a settlement of $21.7 million with 7,635 individuals receiving 100% recovery plus six percent prejudgment interest while releasing no claims or rights (other than named plaintiffs)); *Ebarle, et al. v. LifeLock, Inc.*, 3:15-cv-00258 (N.D. Cal.) (class action on behalf of customers of the identity theft protection service, resulting in a nationwide settlement of $81 million that was granted final approval in September 2016); *Wayne Miner et al. v. Philip Morris USA Inc.*, Case No. 60CV-03-4661 (Pulaski Co. Cir. Ct.) (class action brought on behalf of Arkansas smokers over claims that the defendant misrepresented the safety of its "light" cigarette products, which settled in 2016 for $45 million).

5.    Additionally, CBP served as lead counsel in *Econo-Med Pharmacy, Inc. v. Roche Diagnostics Corporation,* 1:16-cv-00789-TWP-MPB (S.D. Ind.), representing a class of pharmacies in a Telephone Consumer Protection Act

("TCPA") litigation resulting in a $17 million settlement, which was granted final approval on September 21, 2017. CBP also served as lead counsel in *ARcare, Inc. v. Qiagen North America Holdings, Inc., et al.*, Case No. 43CV-17-46 (Lonoke Co. Cir. Ct.), representing a class of pharmacies in a TCPA litigation resulting in a $15.5 million settlement, which was granted final approval on December 3, 2018. CBP has also been involved in such notable data breach cases as *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, 1:14-md-02583-TWT (N.D. Ga.) (serving on Plaintiffs' Steering Committee), and *In re: Target Corporation Customer Data Security Breach Litigation*, 0:14-cmd-02522-PAM-JJK (D. Minn.) (serving as counsel for lead plaintiff Umpqua Bank).

6.     In sum, CBP has extensive knowledge in class action litigation, including class litigation involving Pay-to-Pay fees, and is adequately capitalized and staffed, allowing CBP to dedicate the resources needed to vigorously pursue the claims of putative class members and to achieve the best possible result.

## THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED.

7.     As detailed in the Joint Declaration filed in support of Preliminary Approval (ECF No. 44), the Settlement in this Action creates a non-reversionary, cash settlement fund of $1,175,000 (the "Settlement Fund") for the benefit of Settlement Class Members.

8.      Based on records obtained from Defendant, the sum of all challenged Convenience Fees collected from Settlement Class Members during the Class Period is $4,280,170.88. Thus, the Settlement Fund of $1,175,000 represents roughly 27.4% of that sum.

9.      In addition to the monetary benefits, as a result of the Settlement, as of January 1, 2022, Gateway ceased charging Convenience Fees to any Settlement Class Member and to any borrower and shall refrain from charging Convenience Fees from borrowers for a period of at least one year after entry of the Final Approval Order. This practice change provides meaningful injunctive relief valued at approximately $820,000.00 per year. *See, e.g. Corker v. Costco Wholesale Corp.*, No. 2:19-CV-00290-RSL, 2021 WL 2790518, at *1 (W.D. Wash. June 25, 2021) ("[T]he settlements also provide for meaningful injunctive relief in the form of practice changes on the part of the Settling Defendants . . . .").

10.     When measured against all the relevant standards for approval of class action settlements, Class Counsel believes the results achieved are excellent and the Settlement is in the best interests of the Settlement Class.

11.     Specifically, the Settlement was reached only after Class Counsel conducted an extensive factual investigation into the Defendant's alleged misconduct and thoroughly researched the law pertinent to the Class's claims and

the Defendant's defenses. In addition to Class Counsel's extensive investigative efforts, Class Counsel performed the following tasks: drafting and filing the complaints; opposing Defendant's motion to dismiss; drafting and propounding discovery requests; reviewing documents submitted by Defendant; preparing for the deposition of Defendant's corporate representative; participating in mediation; engaging in contentious, arm's-length settlement negotiations; conducting confirmatory discovery regarding the total number of Settlement Class Members and the total amount of aggregate Convenience Fees paid during the Class Period; drafting the Settlement Agreement along with corresponding documents, including summary and long-form notices; and participating in calls with opposing counsel and the Settlement Administrator concerning the issuance of Class notice following the Court's granting the Settlement preliminary approval. The efforts undertaken by Class Counsel and Plaintiff demonstrate they have fully, vigorously, zealously and adequately represented the Settlement Class.

12.   The settlement negotiations in this Action were further informed through the mediation process, as well as the parties' exchange of information related to class size and damages issues. Here, the assistance of a trained, neutral mediator, Hon. Lisa Cole (Ret.), assisted the parties in identifying, exploring, and promoting a better understanding of the legal and factual issues involved on both sides. This, coupled with the parties' exchange of information and prior litigation

and experience, allowed Class Counsel to adequately assess the strengths and weaknesses of Plaintiff's case and balance the benefits of settlement against the risks of further litigation.

13. The Settlement enjoys the support of the Settlement Class. To date, no Settlement Class Member has objected to the Settlement or requested to be excluded. See Declaration of Edward Dattilo Regarding Implementation of Notice and Settlement Administration ("Dattilo Decl.") at ¶¶ 24-25. And, while no governmental entity is a party to this litigation, notice was issued to the appropriate federal and state officials in accordance with the 28 U.S.C. § 1715, and to date, no governmental entity has raised an objection or concern about the Settlement. *See id*. at ¶¶ 5 and 25.

14. Further, the notice program approved by the Court has now been fully implemented. *See* Dattilo Decl. at ¶¶ 5-23. According to the Settlement Administrator, the notice reached an estimated 96.69% of Settlement Class Members, which is at the high end of the range established by Federal Judicial Center, "*Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide*" (2010) (available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf) (stating a notice reach of between 70-95% is reasonable). *See* Dattilo Decl. at ¶ 19. Thus, the notice

program satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances.

15.     Moreover, the total estimated costs for disseminating notice to the Settlement Class and administration of the Settlement, as detailed in the Dattilo Declaration, is $166,947.44. This sum is approximately 14% of the Settlement Fund, which is fair and reasonable. *See, e.g., Hose v. Washington Inventory Serv., Inc.*, No. 14-CV-2869-WQH-AGS, 2020 WL 3606404, at *10 (S.D. Cal. July 2, 2020) ("Courts regularly award administrative costs associated with providing notice to the class."); *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2019 WL 13179078, at *3 (S.D. Cal. July 23, 2019) (approving $280,394.13 in total settlement administration costs).

16.     Based upon the foregoing, Class Counsel believe that the Settlement is an excellent result for the Settlement Class and is appropriate for final approval.

## CLASS COUNSEL'S FEE REQUEST IS REASONABLE AND SHOULD BE APPROVED.

17.     In accord with the terms of the Settlement Agreement, Class Counsel are seeking an award of 25% of the Settlement Fund, or $293,750.00.

18.     Class Counsel's fee request is supported by the significant relief obtained for the Settlement Class. Specifically, the Settlement provides for a common fund of $1,175,000, representing 27.4% of all Convenience Fees paid by

-8-

LOWTHER DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FESS, LITIGATION COSTS, AND SERVICE AWARD CASE NO. 5:20-cv-01902-VAP-KK

the Settlement Class during the Class Period that were allegedly improperly collected, as well as meaningful injunctive relief that Class Counsel calculates to be worth approximately $820,000 per year.

19.     Class Counsel calculates the total value of the Settlement to equal $2,544,000.[1] Thus, the requested fee award is 11.5% of the total value of the Settlement.

20.     Moreover, the negotiated releases are specifically tailored to release only those claims related to the charging, collection, or attempted collection of Convenience Fees accruing from June 8, 2016, through December 31, 2021. *See* Settlement Agreement, Section V.

21.     Class Counsel's fee request is further supported by the time and resources expended by Class Counsel, the complexity of the case, the skill and expertise needed to advance Plaintiff's claims, and the risk undertaken in prosecuting this case.

22.     Attached hereto as Exhibit A is a true and accurate summary lodestar chart, which reflects, for each CBP timekeeper: (i) their title or position (e.g., partner, associate); (ii) the total number of hours they worked; (iii) their current hourly rate; and (iv) their lodestar. As demonstrated therein, CBP has expended a total of 255.9 hours in this litigation.

---

[1] Class Counsel calculates the value of the injunctive relief based on a minimum of 1.67 years, or from Jan. 1, 2022, to August 29, 2023, to be $1,369,400 ($820,000 x 1.67).

23.     Class Counsel's requested percentage is directly in line with Ninth Circuit precedent setting "25% of the fund as a 'benchmark' award under the percentage-of-fund method." *Stanger v. China Elec. Motor, Inc*., 812 F.3d 734, 738 (9th Cir. 2016); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure"); *Steiner v. Am. Broad. Co*., 248 Fed. Appx. 780, 783 (9th Cir. 2007) (upholding 25% fee award).

24.     While not required, Class Counsel submit that a lodestar crosscheck underscores the reasonableness of Class Counsel's fee request. Class Counsel have collectively expended a total of 397 hours throughout the course of this litigation, yielding a total lodestar of $274,378.30. The time expended by Class Counsel was necessary to sufficiently address the needs of the case, to move the litigation forward in an expeditious manner, and to achieve the favorable results ultimately reached. Moreover, to ensure against duplication, tasks were assigned to specific attorneys and every reasonable effort was made to avoid repetition of work. As such, the hours expended by Class Counsel are reasonable.

25.     Moreover, based on Class Counsel's total lodestar, the fee request results in a modest multiplier of 1.07, which is reasonable. *Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1051-52 (9th Cir. 2002) (approving of 3.65 multiplier and

-10-

citing multipliers as high as 19.6); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 610 (N.D. Cal. 2015) (listing multipliers as high as 5.2 among "the range of acceptable lodestar multipliers"); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("A 2.83 multiplier falls within the Ninth Circuit's presumptively acceptable range of 1.0–4.0.")

26.     Thus, a lodestar crosscheck demonstrates the reasonableness of Class Counsel's fee request.

27.     I have personal knowledge of the hourly rates charged by CBP attorneys included in the exhibit to this declaration. The hourly rates for the attorneys and professional support staff in my firm are the usual and customary rates set by the firm for each individual. These hourly rates are the same as, or comparable to, the rates accepted by courts in other class action litigation including courts in this district and Circuit.  My firm's rates are set based on periodic analysis of rates charged by firms performing comparable work and that have been approved by courts in other class actions within this Circuit and nationwide. Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience and the rates of similarly experienced peers in the legal community.

Lowther Declaration in Support of Motion for Final Approval of Settlement
and Motion for Award of Attorneys' Fess, Litigation Costs, and Service Award
Case No. 5:20-cv-01902-VAP-KK

28.     Class Counsel's rates are consistent with the prevailing market rates in the Central District of California. *See Silveira v. M&T Bank*, Case No. 2:19-cv-06958-ODW-KS, 2021 WL 4776065 (C.D. Cal. Oct. 12, 2021) (approving as reasonable hourly rates ranging from $465 to $914) (the hourly rates can be found at Dkt. No. 37-2, ¶ 20); *Jimenez v. Allstate Ins. Co.*, 2021 WL 4316961, at *11 (C.D. Cal. Sept. 16, 2021) (approving hourly rates of $375 to $900); *see also, Durham v. Sachs Elec. Co*., No. 18-CV-04506-BLF, 2022 WL 2307202, at *8 (N.D. Cal. June 27, 2022) (approving hourly rates of $875)*; In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-md-2143-RS, 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving hourly rates of $205 to $950); *Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15–cv–00216–DMR, 2016 WL 1177950 (N.D. Cal. Mar. 22, 2016) (finding that requested hourly rates of $900, $750, $550, $500, $430, and $360 for attorneys and $225 for paralegals were "in line with the market rates charged by attorneys and paralegals of similar experience, skill, and expertise practicing in the Northern District of California"); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (approving hourly rates of $475 to $975); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2012) (finding that the district court did not abuse its discretion by awarding hourly rates between $425, $700, and $875).

29.    CBP reasonably incurred litigation expenses of $5,948.49, which are summarized in Exhibit A hereto. These costs were associated with mediation fees, pro hac vice fees, docket fees related to obtaining Plaintiff's mortgage and various documents, food for mediation, and telephone conference calling services. They were reasonably incurred in furtherance of the investigation, prosecution, and settlement of the Action. As such, they are reasonable and should be approved.

30.    Plaintiff's request for a service award of $5,000 for serving as the Class Representative is in line with similar awards approved in this district. *See Roe v. Frito-Lay, Inc*., No 14CV-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively reasonable' in the Ninth Circuit." (collecting cases)). Moreover, it is supported by the time and effort she invested in the prosecution and settlement of this Action, which included:   (1) initial factual investigation, including creating a spreadsheet cataloging every instance in which Defendant had collected a Pay-to-Pay fee dating back to April 2017; (2) researching Defendant's websites accessible only to those with Gateway login credentials for the purpose of finding fee schedules and every representation available online that Defendant made to its borrowers concerning Pay-to-Pay fees;  (3) reviewing and providing commentary to counsel on drafts of the Complaint; (4) reviewing all pleadings relating to Defendant's

-13-

Lowther Declaration in Support of Motion for Final Approval of Settlement
and Motion for Award of Attorneys' Fess, Litigation Costs, and Service Award
Case No. 5:20-cv-01902-VAP-KK

motion to dismiss; (5) working with counsel to review and respond to discovery; (6) keeping in regular contact with counsel concerning case developments and discovery; (7) participating in the mediation process and considering various settlement offers and counteroffers with counsel; and (8) reviewing and discussing the terms of the settlement reached in this case.

     I declare under penalty of perjury that the foregoing is true and correct. Executed on this 18th day of July, 2022.

By: _/s/ Lee Lowther_ _____

# Exhibit A

**Carney Bates & Pulliam, PLLC**
*Langston, et al., v. Gateway Mortgage Group, LLC,*
**Case No. 5:20-cv-01902-VAP-KK**

_____

**Time Summary**

| Timekeeper | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Lowther, Lee (P) | $590.00 | 78.70 | $46,433.00 |
| Pulliam, Randy (P) | $880.00 | 65.50 | $57,640.00 |
| Ross, Courtney (A) | $385.00 | 8.70 | $3,349.00 |
| Wyatt-Oldham, Tiffany (P) | $725.00 | 103.00 | $74,675.00 |
| **Total** | | **255.9** | **$182,097** |

(P)-Partner
(A)-Associate

**Expense Summary**

| Expense Category | Amount |
|---|---|
| Mediation Services | $4,950.00 |
| Pro Hac Vice Fees | $594.36 |
| Docket Fees Related to Obtaining Plaintiff's Mortgage and Various Documents | $341.00 |
| Food for mediation | $47.82 |
| Telephone/Facsimile | $15.31 |
| **Total** | **$5,948.49** |