**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

# JS-6

Jennifer M. Langston,

Plaintiff,

v.

Gateway Mortgage Group, LLC,

Defendant.

Case No. 5:20-cv-01902-VAP-KKx

**Order GRANTING Motion for Final Approval of Settlement and Motion for Attorneys' Fees (Dkts. 52, 53)**

Before the Court is Plaintiff Jennifer M. Langston's ("Plaintiff") unopposed Motion for Final Approval of Settlement (Mot. for Settlement Approval, Dkt. 52) and Motion for Attorneys' Fees, Litigation Costs, and Service Award (Mot. for Attorneys' Fees, Dkt. 53).

After considering all the papers filed in support of, and in opposition to, the Motions, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. The Court **GRANTS** the Motion for Final Approval of the Settlement and **GRANTS IN PART** the Motion for Attorneys' Fees, Litigation Costs, and Service Award.

## I. BACKGROUND

### A. Procedural History

This proposed class action settlement represents the outcome of nearly two years of litigation concerning Defendant Gateway Mortgage

Group, LLC's ("Defendant") collection of convenience fees from borrowers paying their home mortgages online or by phone.  Plaintiff initiated this class action lawsuit in the San Bernardino Superior Court on June 8, 2020, and Defendant removed the case to this Court on September 14, 2020.  (*See* Dkt. 1).  The operative complaint alleges that Defendant's collection of "Pay-to-Pay fees" constitute: (1) a violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, *et seq.*; (2) a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (3) a breach of contract.  (*See* Dkt. 1-2).

On October 21, 2020, Defendant moved to dismiss all of Plaintiff's claims.  (Dkt. 11).  Plaintiff opposed the motion on November 16, 2020 (Dkt. 15), and the Court denied the motion on January 15, 2021 (Dkt. 23).

The parties subsequently engaged in written discovery, and on August 30, 2021, the parties participated in a full-day mediation session before Honorable Lisa Cole (Ret.).  (Mot. for Settlement Approval, Dkt. 52, at 4).  Although unable to resolve the case at mediation, the parties eventually reached a resolution and memorialized their agreement in a Memorandum of Understanding.  (*Id.*)  Over the course of the next several weeks, the parties drafted a settlement agreement.  (Settlement Agreement, Dkt. 45).  The Court granted Preliminary Approval of the Class Action Settlement on April 25, 2022.  (Dkt. 49).  Plaintiff now moves for Final Approval of Settlement and for approval of Attorneys' Fees, Litigation Costs, and Service Award.

**B.   Settlement Class**

The Settlement Class, as defined in the Settlement Agreement, consists of:

All persons who (1) were borrowers on residential mortgage loans on properties in the United States whose loans were serviced by Gateway, and (2) paid a fee to Gateway for making a loan payment by telephone, IVR, or the internet, from June 8, 2016, through the date on which the Court enters an order granting preliminary approval of the Parties' Settlement Agreement.

(Settlement Agreement, Dkt. 45, at 7).  The Settlement Class comprises approximately 69,134 unique borrowers who paid Pay-to-Pay fees (or "Convenience Fees").  (Dkt. 43, at 17).

**C.   Settlement Terms**

The Settlement Agreement establishes a $1,175,000 gross settlement fund.  (Settlement Agreement, Dkt. 45, § IV.A).  There is no claims process specified in the Settlement Agreement.  Instead, Class Members will automatically receive monetary benefits on a *pro rata* basis, based on the amount of Convenience Fees they paid during the Class Period.  (*Id.* § IV.B).  Class Members will be responsible for distributing monetary benefits among all co-account holders.  (*Id.*)

Settlement payments will be mailed by check within 30 days of final approval of the settlement.  (*Id.*)  Class Members may negotiate settlement

United States District Court
Central District of California

3

payments for 90 calendar days after the date of issuance.  (*Id.*)  Class Members may also request exclusion from the settlement and object to the settlement.  (*Id.* § VII).  After 180 days from the date of issuance of the settlement payments, any remaining funds shall be distributed to Class Members through a secondary distribution.  (*Id.* § IV.B).  If the remaining funds are so minimal that a secondary distribution would be impracticable, or if any money remains after a secondary distribution, the net settlement fund will be distributed to Habitat for Humanity under the *Cy Pres* doctrine.  (*Id.*)

Defendant will cease charging Convenience Fees to all borrowers from January 1, 2022 until at least one year after entry of the final approval order.  (*Id.* § IV.C).

The Settlement Agreement entitles Plaintiff Langston to a Service Award of up to $5,000.  (*Id.* § IV.D.)  Class Counsel may seek up to 25% of the settlement fund for attorneys' fees.  (*Id.*, § IV.E).

Finally, Plaintiff Langston and Settlement Class Members release any future related claims against Defendant.  (*Id.* § V).

## II.   LEGAL STANDARD

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court must engage in a two-step process to approve a proposed class

action settlement.  First, the court must determine whether the proposed settlement deserves preliminary approval.  *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  Second, after notice is given to class members, the Court must determine whether final approval is warranted.  (*Id*.)  A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993); *accord In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir. 2000) (*citing Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998)).

In the Ninth Circuit, courts must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable: (1) the strength of the plaintiffs' case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of the class members to the proposed settlement.  *Torrisi*, 8 F.3d at 1375; *accord Hanlon*, 150 F.3d at 1026.  "In addition, the settlement may not be the product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d at 458.

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  When "the parties negotiate a settlement agreement before the class has been certified, settlement

approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).' " *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Because a class was not certified prior to the parties' settlement, the Court applies a "higher standard" and conducts a "more probing inquiry" in evaluating the fairness of the Settlement Agreement. Further, the Court neither presumes the Settlement Agreement is fair nor that it is the product of non-collusive, arms-length negotiations in evaluating the applicable factors. *See Saucillo v. Peck*, 25 F.4th 1118, 1131 (9th Cir. 2022).

### III.    DISCUSSION

**A.   Plaintiff's Motion for Final Approval of the Settlement**

1.    <u>Product of Serious, Informed, Non-Collusive Negotiations</u>

To approve the Settlement at this stage, the Court must first find that it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Hanlon*, 150 F.3d at 1027.

The Court has carefully scrutinized the Settlement Agreement and finds no signs of overt or subtle collusion. By the time the Settlement Agreement was signed, the parties had litigated this case for over a year. The parties engaged in written discovery, producing data related to the class size and aggregate amount of Convenience Fees paid to Defendant by class members during the relevant time period. (Mot. for Settlement Approval, Dkt. 52, at 4); *see In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) ("Extensive discovery is . . . indicative of a

United States District Court
Central District of California

1 lack of collusion, as the parties have litigated the case in an adversarial
2 manner"); *see also Hanlon*, 150 F.3d at 1026 ("the extent of discovery
3 completed and the stage of the proceedings" is relevant to fairness of
4 settlement).  The parties litigated a motion to dismiss.  (*See* Dkts. 11, 15,
5 16).  Finally, the parties conducted a full-day mediation with experienced
6 mediator Honorable Lisa Cole (Ret.) on August 30, 2021, (Mot. for
7 Settlement Approval, Dkt. 52, at 4), and continued negotiating the terms of
8 the settlement until it was finally executed months later in January 2022.
9 (Settlement Agreement, Dkt. 45, at 28); *see Burnell v. Swift Transportation*
10 *Co. of Arizona, LLC*, No. ED CV 10-00809-VAP (OPx), 2022 WL 1479506,
11 at *3 (C.D. Cal. Apr. 28, 2022) ("The length of the negotiations is further
12 evidence of a non-collusive arms-length settlement.").

13

14       The Court further finds that none of the potential "subtle signs of
15 collusion" identified by the Ninth Circuit are present in the Settlement
16 Agreement.  *Roes*, 944 F.3d at 1049.  These potential signs include "(1)
17 when counsel receive a disproportionate distribution of the settlement; (2)
18 when the parties negotiate a 'clear sailing' arrangement (i.e., an
19 arrangement where defendant will not object to a certain fee request by
20 class counsel); and (3) when the parties create a reverter that returns
21 unclaimed [funds] to the defendant."  *Id.* (quotations omitted).  As set forth
22 below, the Court is approving plaintiffs' attorneys' fees equal to 25% of the
23 Settlement Amount, which is consistent with the Ninth Circuit "benchmark"
24 and not disproportionate to the class recovery.  *See Hanlon*, 150 F.3d at
25 1029.  Additionally, the Settlement Agreement does not contain the type of
26 "clear sailing arrangement" that is cause for concern.  Only "a clear sailing

arrangement providing for the payment of attorneys' fees separate and apart from class funds" is potentially indicative of collusion. *In re Bluetooth*, 654 F.3d at 947; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009) (defendant's agreement to not contest requested attorneys' fees from a capped settlement fund "does not signal the possibility of collusion"). Under the Settlement Agreement, approved attorneys' fees are paid from a fixed Settlement Fund, and Defendant's obligations are not affected by the amount of fees awarded.  (Settlement Agreement, Dkt. 45, § IV.E).  Finally, no portion of the settlement fund can revert to Defendant.  (Id. § IV.B).

The Court therefore finds that parties engaged in arm's length, serious, informed, and non-collusive negotiations.  This factor weighs in favor of approval.

### 2.   Strength of Plaintiff's Case and Future Risk

Plaintiff's claims allege violations of the Rosenthal Act and the UCL, and breach of contract.  (*See* Dkt. 1-2).  Although Plaintiff's claims survived a motion to dismiss, Class Counsel argue that the outcome is still far from certain and that the case would likely require extensive continued litigation if a settlement were not approved.  (Mot. for Settlement Approval, Dkt. 52, at 15).  The Court agrees.  As the Court previously noted, the future litigation risks in this case weigh in favor of settlement approval.  (Dkt. 49, at 16).

### 3.   Amount Offered in the Settlement

The Settlement Agreement establishes a Settlement Fund of $1,175,000, which amounts to 27.4% of the total Convenience Fees

collected by Defendant.  (Settlement Agreement, Dkt. 45, § IV.A).  In addition, the Settlement Agreement prohibits the collection of Convenience Fees from January 1, 2022 until at least one year after the final approval order.  (*Id.* § IV.C).  Class Counsel estimates this injunctive relief to be worth $1,369,400, constituting 100% of the relief sought by Plaintiff during this time period.  (Lowther Decl., Dkt. 54, ¶ 19 n.1).  In light of the future litigation risks faced by Plaintiff, the Court finds the amount allocated for the Settlement Fund and the injunctive relief to be reasonable.

As the amount offered is offset by fees, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  As discussed in more detail below, the Court finds the fees appropriate and therefore determines that the amount offered in settlement weighs in favor of approval.

4.    <u>Extent of Discovery Completed and Stage of the Proceedings</u>

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As the Court previously noted, the parties have litigated diligently since June 2020.  (Dkt. 49, at 17).  They have briefed one motion to dismiss, conducted formal discovery, produced and reviewed documents, and engaged in a full-day mediation.  (*Id.*)  Accordingly, the Court finds this factor weighs in favor of approval.  *See Linney*, 151 F.3d at 1239.

United States District Court
Central District of California

5.      Experience and Views of Counsel

Class Counsel have ample experience litigating class actions similar to this case and have demonstrated the ability to prosecute vigorously on behalf of the class members.  (*See* Lowther and Kauffman Decl., Dkt. 44, ¶¶ 3-7, Exs. A-B).  Accordingly, the Court finds this factor weighs in favor of approval.

6.      Presence of a Governmental Participant

As there is no governmental participant in this action, this factor is irrelevant for the purposes of final approval.

7.      The Reaction of the Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.

Following preliminary approval of the settlement by the Court, the Settlement Administrator distributed the approved class notice to the Class Members.  (Mot. for Settlement Approval, Dkt. 52, at 17).  Since that time, the Settlement Administrator received no objections or requests for exclusion.  (*Id.* at 18).  Accordingly, this factor weighs in favor of approval.

/ / /

/ / /

/ / /

8.   <u>Balancing the Factors</u>

As all of the relevant factors favor approval, the Court finds that the proposed Settlement Agreement is fair, reasonable, and adequate and **GRANTS** final approval of the Settlement Agreement.

**B.  Plaintiff's Motion for Attorneys' Fees**

When evaluating attorneys' fees, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1295–96 (9th Cir.1994)).  When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The percentage may be adjusted upward or downward based on: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases.  *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50).

Here, Class Counsel request a fee award of 25% of the Settlement Fund, or $293,750.  (Mot. for Attorneys' Fees, Dkt. 53, at 1).  This amount equals the Ninth Circuit's 25% "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029.  None of the *Vizcaino* factors justify a downward

11

departure from this benchmark.  Class Counsel achieved a favorable result for Class Members in light of the risks of litigation and applied their experience litigating class actions similar to this case, *supra*.  Moreover, Class Counsel risked non-payment by working on a contingent basis.  (Mot. for Attorneys' Fees, Dkt. 53 at 9).  Class Counsel claim they spent 397 hours litigating this dispute.  (Lowther Decl., Dkt. 54, ¶ 22, Ex. A; Kauffman Decl., Dkt. 55, ¶ 11).  While the Court cannot verify these hours without a more detailed breakdown of how those hours were spent, the Court nevertheless recognizes that Class Counsel bore a non-trivial burden in litigating this case.  Finally, a fee award of 25% is well within the range of awards made in similar cases.  *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (noting that 20-30 percent is the usual common fund award).

Accordingly, the Court **GRANTS** the application for attorneys' fees equal to 25% of the Settlement Fund ($293,750).

### C.  Costs

Class Counsel seek reimbursement of $6,067.64 in litigation costs.  (Mot. for Attorneys' Fees, Dkt. 53, at 17).  These include various court fees, telephone conference expenses, delivery fees, and mediation fees totaling $6,019.82, as well as $47.82 in food costs.  (*See* Lowther Decl., Dkt. 54, ¶ 29, Ex. A; Kauffman Decl., Dkt. 55, ¶ 32).  The Court does not find the reimbursement of $47.82 in food costs to be appropriate.  The Court accepts the other stated fees and costs, and finds the reimbursement of

those expenses to be reasonable.  The Court therefore **APPROVES** the reimbursements in the amount of $6,019.82.

### D.   Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977.  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958–59 (9th Cir. 2009).

"The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977.

Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995).  "Courts have generally found that $5,000

United States District Court
Central District of California

incentive payments are reasonable." *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008) (citations omitted).

In its previous order granting Preliminary Approval of the Class Action Settlement, the Court declined to rule on the appropriateness of an incentive reward for Plaintiff Langston because Class Counsel did not provide any information regarding her involvement in the case.  (Dkt. 49, at 20).  Plaintiff and Class Counsel now aver that Plaintiff participated in the initial factual investigation by (1) creating a spreadsheet cataloging every instance where Defendant had collected a Pay-to-Pay fee from her dating back to April 2017, and (2) browsing Defendant's websites in order to obtain Defendant's fee schedules and representations concerning Pay-to-Pay fees.  (Langston Decl., Dkt. 57, ¶ 3; Lowther Decl., Dkt. 54, ¶ 30).  They further state that Plaintiff reviewed and provided feedback on drafts of the complaint and briefing related to Defendant's motion to dismiss, worked with counsel to review and respond to discovery, and participated in the mediation and settlement process.  (Langston Decl., Dkt. 57, ¶ 3; Lowther Decl., Dkt. 54, ¶ 30).  The Court finds that Plaintiff's active participation in the litigation justifies an incentive award, and accordingly **APPROVES** a $5,000 incentive award for the named Plaintiff.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion for Final Approval of the Settlement and **GRANTS IN PART** the Motion for Attorneys' Fees, Litigation Costs, and Service Award.  It awards attorneys' fees in the

amount of $293,750.00, costs in the amount of $6,019.82, and a Service Award to Plaintiff in the amount of $5,000.00.

**IT IS SO ORDERED.**

Dated:   8/26/22

Virginia A. Phillips
United States District Judge

United States District Court
Central District of California

15